# Exhibit A

VIRGINIA:

### IN THE CIRCUIT COURT OF FAUQUIER COUNTY

N.C. a minor by and through his father and mother )
And natural guardians STEVEN COSBY and )
AMY LIFSON )
                          )
            Plaintiffs )
                          )
v. )       Case No:
                          )
FAUQUIER COUNTY: FAUQUIER COUNTY )
SCHOOL BOARD )
                          )
       SERVE: )
       Tracy A. Gallehr, Esq. )
       Fauquier County Attorney )
       10 Hotel Street, 2nd Floor )
       Warrenton, VA 20186 )
                          )
And )
                          )
                          )
DR. MAJOR R. WARNER JR. )
Superintendent of Fauquier County Public Schools )
In his official capacity )
                          )
       SERVE: )
       DR. MAJOR R. WARNER JR. )
       320 Hospital Drive, Suite 40 )
       Warrenton, VA 20186 )
       And )
       TRACY A. GALLEHR, ESQ. )
       Fauquier County Attorney )
       10 Hotel Street, 2nd Floor )
       Warrenton, VA 20186 )
                          )
And )
                          )
DR. DAVID JECK )
Former Superintendent of Fauquier County Public Schools )
In his official capacity )
       SERVE: )
       DR. DAVID JECK )
       320 Hospital Drive, Suite 40 )

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

1

Warrenton, VA 20186                                      )
And                                                      )
TRACY A. GALLEHR, ESQ.                                   )
Fauquier County Attorney                                 )
10 Hotel Street, 2nd Floor                               )
Warrenton, VA 20186                                      )
                                                         )
                                                         )
And                                                      )
                                                         )
PRINCIPAL MEAGHAN BRILL                                  )
In her official capacity as principal of Kettle Run      )
Highschool                                               )
                                                         )
     SERVE:                      )
     PRINCIPAL MEAGHAN BRILL      )
     7403 Academic Avenue         )
     Nokesville, VA 20181         )
     And                          )
     TRACY A. GALLEHR, ESQ.       )
     Fauquier County Attorney     )
     10 Hotel Street, 2nd Floor   )
     Warrenton, VA 20186          )
                                                         )
And                                                      )
                                                         )
MEAGHAN BRILL,  Personally                               )
                                                         )
     SERVE:                      )
     PRINCIPAL MEAGHAN BRILL      )
     7403 Academic Avenue         )
     Nokesville, VA 20181         )
                                                         )
       Defendants.       )
                                                         )
                                                         )
                                                         )

## Complaint

     COMES NOW the Plaintiff, N.C. a minor, by and through his father and mother

Steven Cosby and Amy Lifson and for their Complaint against the Defendants, the

Fauquier County School Board, Principal Meaghan Brill, Superintendents David Jeck and

Major R. Warner, Jr. state as follows:

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

2

1.      The Plaintiff N.C. is an individual minor who resides in Fauquier County and attends Kettle Run High School.

2.      The Plaintiff's parents, and guardians, who are acting on behalf of the Plaintiff, N.C., Steven Cosby and Amy Lifson are individual residents of Fauquier County (hereinafter collectively with the Plaintiff N.C. referred to as "Plaintiff").

3.      The Defendant, the Fauquier County: Fauquier County School Board (Hereinafter the "School Board") is the governing body of the Fauquier County School District and the ultimate superior of all of the school officials discussed in this Complaint.

4.      The Defendant, Meaghan Brill (hereinafter Principal Brill), was the Principal of the Kettle Run High School.

5.      The Defendant, David Jeck (hereinafter "Mr. Jeck"), was during the times in question the Superintendent of the Fauquier County Public Schools.

6.      The Defendant, Dr. Major R. Warner, Jr. (hereinafter "Superintendent Warner") is the new, and current Superintendent of the Fauquier County Public Schools.

7.      In the spring semester/quarter of 2023, the Plaintiff was (and remains) a student at Kettle Run High School.

8.      In the Spring of 2023, the Plaintiff was a member of the Junior Varsity Kettle Run High School Lacrosse team.

9.      On or about May 8, 2023, the Plaintiff attended and played a Lacrosse game at Meridian High School in Arlington, Virginia.

10.     After the game, the Plaintiff went to use the exterior bathroom at the field and found it to be dirty, and generally unacceptable, unsanitary and unable to lock.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

3

11.     The Plaintiff therefore approached a uniformed security guard and asked if he could use the restroom inside the building

12.     The uniformed security guard agreed and allowed the Plaintiff, and one of his friends, to enter the building to use the restroom (a third teammate entered later through another door).

13.     After using the restroom, the Plaintiff and his friends noticed the spectacular view of the Washington DC monuments in a lounge (apparently a teachers lounge) and entered to see the view.

14.     The boys then left the room and returned to the Senior High game.

15.     The next morning, a teacher/or staff member of Meridian High allegedly discovered the words "nigger, nigger" drawn on the whiteboard of the lounge the boys had been in.

16.     No party has alleged that anyone other than the Meridian High teacher/staff person ever saw the alleged words, and it is undisputed that no student ever saw the alleged words.

17.     There was no damage to the building, and no damage was ever alleged by Meridian High or any other party, with no action needed other than erasing the words in question.

18.     No allegation has ever been made that the Plaintiff wrote the offending words on the whiteboard.

19.     On May 9, 2023, Meridian High officials notified Kettle Run High School officials that in surveillance footage, three Kettle Run high School players were seen on

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

4

security footage on that floor and going into the room in question and apparently sent a picture of the boys in question.

20.    There has never been a claim by any party that N.C. wrote the words on the whiteboard.

21.    N.C. did not write the words on the whiteboard and does not condone or promote the use of such word.

22.    There has never been any claim that there was any damage to the whiteboard or any other property at Meridian High School.

23.    The Plaintiff did not cause any damage to any property at Meridian High School and it is worth noting that writing on a whiteboard is a normal activity.

24.    The Plaintiff N.C. is disabled, suffers from, and has been diagnosed with a 504 federally recognized disability.

25.    As part of the recognized disability, the Plaintiff is to be subject to the "least restrictive environment" at the school as one of his accommodations is to have "teacher check-ins to initiate work and check for understanding."

26.    The Meridian officials did not ask for any particular punishment but simply asked that Kettle Run officials (Paul Frye) "reiterate the importance of remaining with the team at away events and any discussion you have on the matter with the students in the picture." They further suggested it could be a learning experience.

27.    Meridian High officials had no pictures of anyone writing the words in question on the board, but simply noted that they had pictures of the Kettle Run students in the area and that they did not have other parties renting space that night, and that the words were found the next morning.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

5

28.     The next day, Tuesday May 9, 2023, before any investigation had been performed, before any conversation with the Plaintiff, with the Plaintiffs' parents, or with any of the other students who had been in the building, the Defendant, Principle Meaghan Brill, emailed the Meridian High official Brian Parke an apology and assured him that the issue would be addressed with "**consequences related to both school and extra-curricular activities**."

29.     From her own words, the Defendant Ms. Brill and the Fauquier Public Schools, had determined that she, on behalf of the Fauquier County Public School Board, would levy punishments and had decided what those punishments would be, based on the allegations, prior to finding out if her students were even involved, prior to determining which students were involved (if any) and prior to hearing any defense or conducting any hearing or interview with the Defendant as required by the schools own regulations (and the Constitution).

30.     School officials had been previously informed that they were not to talk to or question the Plaintiff, N.C. without the presence of his parents.

31.     The Plaintiff, N.C., was questioned on Wednesday May 10, 2023 by Assistant Principal Jesse Rivera, Head of Athletics Paul Frye, and Principal Meaghan Brill without any parental notice or presence.

32.     At that time, the Plaintiff, N.C., told school officials that he did not write the words on the whiteboard and could not say who did.

33.     The Plaintiff was pressured strongly by the school officials and then demanded that he sign an incident report that was not factually correct.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

6

34.     The Plaintiff N.C. refused to sign the incorrect incident report and asked that the school officials call his parents.

35.     At that point, the school officials did finally contact the Plaintiff, N.C.'s, parents and falsely told the Plaintiff's parents that no punishment had been determined and they were investigating and that no charges had been decided.

36.     The Plaintiff, and his parents, had no official paperwork on the incident until it was repeatedly requested by the Plaintiff's parents and provided on Monday, May 15, 2023.

37.     On Friday, May 12, 2023, Kettle Run High School Office Manager, Kristianna Tapscott, called the Plaintiff's father, Mr. Cosby, to inform him over the phone that N.C. was put on out-of-school suspension for 3 days and suspended from all school activities for the 2023-2024 school year, which included athletics.

38.     The Defendants and the school issued its orders and suspensions without first giving the Plaintiff a chance to defend himself or even telling him the specific allegations against him.

39.     Ms. Tapscott, in her conversation with the Plaintiff's parents, said that the basis of the suspension was that N.C. had entered the Meridian High School without permission.

40.     The Plaintiff's parents objected immediately and noted that they had not received anything about the situation in writing, and they noted their desire to appeal and requested an appeal with the Principal and any other relevant school officials.

41.     The Plaintiff, Father, Steven Cosby further requested to know what the charges were by email as they were not at all clear and did not make sense.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

7

42.     Principal Meaghan Brill responded by email and adding to the charges stated that the Plaintiff was being charged with unauthorized entrance and hate speech that was written while he was in the building.

43.     The Plaintiff's parents immediately requested an appeal through e-mail. The Plaintiff's Father, Steven Cosby asked Principal Brill to share any knowledge of the Plaintiff actually committing the infractions he was charged with and for which he had already been suspended in the email notice.

44.     The Defendants did not respond to the Plaintiff's Fathers' request for the basis of the suspension.

45.     The Requested "appeal" hearing was originally set for May 15, 2023 at 9:00 a.m. but was rescheduled for May 16, 2023 at 2:00 p.m.

46.     On Monday, May 15, 2023, the Plaintiff's Father, Mr. Cosby, again requested that the Defendant, Principal Brill, provide the written policy that supported her and the schools' actions.

47.     Neither, Principal Brill, nor any other school official responded to Mr. Cosby's request.

48.     On or about 12:39 p.m., the Plaintiff's Mother, Amy Lifson, requested the written suspension notice and the rationale for the activity suspension, which are required by the Code of Conduct but which had not been provided.

49.     From the internal emails of the school employees in question, and upon information and belief, the documents setting out the written suspension notice and the activity for the Plaintiff's suspension were only begun, and certainly were not finished

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

until days after the suspension was announced and after being requested by Plaintiff's parents.

50.     The Plaintiff's punishment and suspension was improperly decided even under its own rules, and the Plaintiff was notified of his suspension, before he was even interviewed, days before the Defendants determined the charges against him or provided the official "Written Notice of Short-Term Suspension," the "Report of Facts", "Rational for Activity Suspension", or "Petition for Review or Hearing" form.

51.     The required documentation was not even begun until after it was requested by the Plaintiff's parents and was sent piecemeal, presumably as the documents were finished, on the afternoon of the date initially set for the initial hearing (May 15, 2023. Specifically, the "Written Notice of Short-Term Suspension (No Danger or threat)" signed by Jesse Rivera, along with the FCPS-Office Discipline Referral form that includes the Codes used to report to the VDOE, and the "Report of Facts" was emailed to the Plaintiff's parents at 3:29 p.m. The "Petition for Review" and the community-based intervention resources were delivered in an email at 4:29 p.m. and the "Rationale for Activity Suspension" was not sent to the Plaintiff's, parents until 5:21 p.m. in an email directly from Principal Brill.

52.     There is no question that the Plaintiff was authorized by a uniformed Meridian School official to enter the building to use the restroom (after he tried to use the field house, which was unsanitary). This fact is clear in all documentation in the Defendants' possession.

53.     Hate speech was not supportable as a basis for the already decided penalty levied on the Plaintiff as it is simply not mentioned even once in the Code of Student

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

9

Conduct (for good reason, as any attempt to label any particular state as "hate speech" would likely fall afoul of the First Amendment of the Constitution).

54.     The Plaintiff's parents pointed these problems out to the Defendants and the other school personal, and upon information and belief, the initial appeal "hearing" was delayed to allow the Defendants to come up with some potentially supportable basis for the punishment already levied improperly on the Plaintiff.

55.     On May 15, 2023, the written notice of the suspension was finally provided to the Plaintiff's parents, Mr. Cosby and Ms. Lifson, at 3:29 p.m. In that notice, dated May 15, 2023, the Defendants once again changed the charges from the unsupportable hate speech and unauthorized entry to the following alleged violations of the student Code of Conduct: "level 3, letter h: Harassment, level 1, letter e: Failure to follow school rules, and level 2 letter f: Vandalism." These allegations were also the allegations that were officially entered into the Schools Report of Facts Dated May 15, 2023 (despite the fact that the school had decided to suspend N.C. on May 10, 2023, before the determination of facts was made.)

56.     The continuous changes to support the already determined penalty clearly demonstrate that the Defendants had absolutely no interest in following the School Code of Conduct or determining the truth. Rather the Defendants were determined to turn the facts and allegations to accomplishing the goal of supporting the punishment they had already levied against the Plaintiff.

57.     The Student Code of Conduct which governs the actions of the School officials and the students, and from which the violations and levels describes/defines "Harassment" by stating as, "A student shall not threaten or harass another student or any

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

10

school employee, volunteer, student teacher or any other person present in school facilities or at school functions because of race, color, gender, age, religion, disability, appearance, national origin, sexual orientation, or marital status. Threatening and harassing include, but are not limited to, inappropriate verbal, written, (including social media messages or e-mail), or physical conduct that creates an intimidating, hostile or offensive environment."

58.     The Code of Student Conduct describes and defines Vandalism by stating, "Students shall not maliciously or willfully damage, injure, deface, or destroy school property or other property owned or under the control of the School Board, or the personal property of others, to include electronic data. This category includes graffiti."

59.     Failure to follow school rules does not appear to be defined.

60.     The Plaintiff, by his parents, immediately prepared and properly filed/transmitted to the Defendants a Petition for Review or Hearing (Appeal of Discipline Matter) to the Defendants on May 16, 2023.

61.     The Plaintiff was informed of his suspension of 3 days and one year activity suspension before the final charges (after multiple changes) were even determined, and without the chance to even know what he was accused of and before he had a chance to respond to those charges.

62.     There was no damage to any property at Meridian High School.

63.     Meridian High School never claimed that there was any damage to their property or to any other property.

64.     There is no dispute that the Plaintiff, N.C. did not write the words on the whiteboard (with an erasable marker).

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

11

65.     There is no dispute that upon discovery, the words written on the whiteboard at Meridian High School were simply erased leaving no damage.

66.     The Plaintiff unquestionably did not cause any damage, injury, or defacement to school property or to any other property.

67.     Under the Defendants' own rules and definitions, as set out in the Fauquier School District Code of Conduct, the first element of vandalism requires damage to property. See Page 13 of the Fauquier Code of Student Conduct.

68.     As there was no damage to property, it is impossible to support a claim/cause of action/or contention that the Plaintiff committed vandalism.

69.     Additionally, under the Defendants' own rules and definitions, as set out in the Fauquier School District Code of Conduct, a claim of vandalism requires that a student "maliciously and intentionally" caused the damage in question.

70.     There has never been any finding or suggestion that the Plaintiff caused the "writing/alleged damage" to the whiteboard.

71.     There is not now and has never been a finding or claim that the Plaintiff maliciously and intentionally intended to cause any damage to the whiteboard.

72.     As it has never been suggested and cannot be claimed that the Plaintiff personally caused the writing/alleged damage to the whiteboard the second element of vandalism under the Fauquier County School District Code of Conduct cannot be supported.

73.     As it has never been suggested and cannot be claimed that the Plaintiff maliciously intended to cause damage to the whiteboard, the second element of

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

12

vandalism under the Fauquier County School District Code of Conduct cannot be supported.

74.     Under the Defendants own rules and definitions as set out in the Fauquier School District Code of Conduct, a finding of Harassment requires "inappropriate verbal, written, (including social media messages or e-mail), or physical conduct that creates an intimidating, hostile or offensive environment." See Page 12 of the Fauquier Code of Student Conduct.

75.     There is not now and has never been any allegation by the Defendants or otherwise that the alleged words on the whiteboard were directed at anyone.

76.     There is not now and has never been any allegation by the Defendants or otherwise that anyone was intimidated, or that the words on the whiteboard created a hostile environment. In fact, only one or two Meridian employees ever saw the words in person and there is no suggestion that anyone was ever intimidated or subjected to a hostile environment.

77.     To support a claim of harassment it is of utmost importance that the alleged actions actually cause a hostile environment or that someone is actually subjected to intimidation as otherwise any restriction on the Plaintiffs speech would be void as a restriction on his First Amendment and Virginia Constitutional rights to free speech.

78.     In fact, the Fauquier Code of Student Conduct even acknowledges that, "A student has all rights expressed and guaranteed by the United States Constitution and by federal, state, and local laws," And that "students have the right to: A public education without regard to gender, race, religion, or national origin; an orderly school and classroom environment that will allow optimum learning, emphasizing the values of

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

13

responsibility, kindness, fairness, and safety; and express themselves in speech, writing, or symbols, consistent with their constitutional rights and School Board policy." See Page 5 of the Fauquier Code of Student Conduct.

79.     As noted above, upon receiving the school's letter by email, Mr. Cosby and Ms. Lifson immediately appealed, in writing on May 16, 2023, noting that the facts did not support a single one of these allegations. They specifically noted that there was no damage to property, even assuming that all charges were accurate, so vandalism was simply untrue; that no one even saw the alleged slurs, other than a teacher, so no one could have been harassed (not to mention First Amendment freedom of speech protections which are absolute unless the offensive words are used in a situation or manner that causes a clear and present danger, which this most assuredly did not); and that he broke no rule as the school noted he was admittedly allowed into the building by the security guard. See Appeal which is attached and made a part hereof as Exhibit 1.

80.     In response to the Plaintiff's, by his parents, appeal of the suspension, in a letter Dated May 15, 2023, Principal Brill provided Nick Napolitano the Executive Director of Student Services and Special Education, who the Plaintiff understands was acting on behalf of the Superintendent, a justification letter where she set out the school's position on the dispute and the reasons for the excessive activity suspension.

81.     The Defendant, Principal Brill, provided her, and the schools', decision and rational to the Superintendent's office before even meeting with the Plaintiff's parents for the appeal hearing, which had been moved to May 16, 2023, again demonstrating the Defendants total lack of concern regarding the actual facts of the situation.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

14

82.     In that letter, Principal Brill essentially restates the school's position, but with some expansion and bringing in an adulterated code of conduct language. She claimed that the Plaintiff had caused a:

- Level 1, Offense E – Failure to follow school rules.
- Level 2, Offense F – Vandalism (Purposefully cutting, defacing, tampering with or otherwise damaging in any way property belonging to the school division or to other persons. Includes confirmed intent to vandalize or tamper with property).
- Level 3, Offense H – Harassment (Annoying or attacking a student or group of students or personnel that creates an intimidating or hostile educational or work environment. This includes engaging in verbal, written or electronic abuse such as name-calling, ethnic or racial slurs, or derogatory statements addressed publicly to others that may precipitated disruption of the school program or incite violence. Harassment may also be non-verbal and may include, but is not limited to, embarrassing others; photographs that are offensive to others, etc.)

83.     Of important note, Principal Brill added the language regarding vandalism when she stated, "Includes confirmed intent to vandalize or tamper with property" which Plaintiff cannot find in any place in the Fauquier County Code of Student Conduct. Additionally, there is no confirmed or even alleged intent to harm property included in any of the facts alleged by the Defendants. This was a point fabricated by Ms. Brill simply to justify the improper and excessive activity suspension.

84.     In fact, her description of Vandalism in the Code of Student Conduct is entirely incorrect and is not the definition of Vandalism in the Code of Student Conduct which reads "Students shall not maliciously or willfully damage, injure, deface, or destroy school property or other property owned or under the control of the School Board, or the personal property of others, to include electronic data." See The Code of Student Conduct for 2022-2023 which is attached and made a part hereof as Exhibit 2.

85.     Principal Brill's description of Harassment also differs from that set out in the Fauquier County Code of Student Conduct (See Exhibit 2, Page 12).

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

15

86.     However, her description of Harassment was even more problematic for the Defendants as it required statements to be, "addressed publicly to others that may precipitated disruption of the school program or incite violence."

87.     The words on the whiteboard were never addressed publicly to others and there was never any chance or possibility that they could precipitate a disruption to the school program or incite violence (once again the school sets out carefully worded regulations so as to avoid First Amendment and Virginia Constitutional violation).

88.     Principal Brill's statement of her belief of the facts was limited in her letter to:

- Kettle Run High School (KRHS) participated in a boy's lacrosse game at Meridian High School (MHS) on Monday, May 8, 2023
- JV players were instructed, by their coach, to stay on the field unless a parent/guardian was picking them up and to use the outdoor restroom, if necessary
- After the JV lacrosse game concluded and during the varsity game, ███ was provided building access by the security guard for the purpose of using the restroom
- When he did not return, MHS staff attempted to locate him
- Upon entry into a staff lounge the following morning (Tuesday, May 9), the word "nigger" was found written on a whiteboard twice
- In reviewing surveillance footage, three JV KRHS lacrosse players were seen throughout the upper level of MHS at approximately 8:30pm on May 8, 2023; ███ was one of the student athletes visible via camera
- There were no other occupants in the building during the time this incident occurred

89.     Notably, the there was still no finding that there was any damage to any property of Meridian High School, that the Plaintiff intended to cause any harm to the whiteboard, that the Plaintiff actually wrote the words on the whiteboard, that the words were directed to any person, that there was any chance or probability that the words on the whiteboard would cause a disruption in the school program, or incite violence, all of which were necessary to support the schools position and punishment of the Plaintiff.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

16

90.     Despite Principal Brill having already sent the schools position to the Superintendent office before the "appeal" hearing, on or about May 16, 2023, the Plaintiffs parents attended a meeting with the Defendant Principal Brill.

91.     At the meeting with Principal Brill, on May 16, 2023, was asked why the Plaintiff was being punished for something he did not do and which the school does not even allege that did.

92.     Ms. Brill would not comment at all or provide any further facts, instead she literally read from her justification letter to Mr. Napolitano, which she had composed the previous afternoon, after the suspensions had already been determined.

93.     At no point during the meeting on May 16, 2023, did any school staff member state that they actually believed that the Plaintiff had written the words on the whiteboard and Principal Brill refused to address the Plaintiffs' parent's concerns that the Plaintiff was being punished for an offence he did not commit. In fact, the school officials turned the burden of proof backwards on the Plaintiff and told them to prove that N.C. did not do it. Mr. Riveria even challenged the Defendants parents to show, "what are your facts that N.C. didn't do it?" during their meeting with the school officials.

94.     On or about May 18, 2023, the Plaintiff, through his mother, Ms. Lifson, did contact the school administrators to confirm that the school had passed their appeal on to the Superintendent office for further review and appeal.

95.     On or about May 19, 2023, Mr. Napolitano (for some reason instead of the Superintendent who is the proper party to address an appeal under the school's regulations) provided the Plaintiff, through his parents, a letter stating that he was

**LAW OFFICES**
**PURNELL,**
**MCKENNETT**
**& MENKE, PC**
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

17

upholding the decision of the school staff. See Exhibit 3 which is attached and made a part hereof.

96.     Mr. Napolitano further stated that ▮N.C.▮ had been suspended on May 10, 2023 (despite the Plaintiff and his parents having no notice until May 12, 2023) and further stated that "In regards to the activity suspension there is no appeal beyond that of the building principal."

97.     Mr. Napolitano further stated that the Plaintiff was being suspended "for using slurs, vandalism, and being in an unauthorized area."

98.     Oddly, no one other than Mr. Napolitano had ever even alleged that the Plaintiff had written the alleged words on the whiteboard. Regardless, the charge had never been the use of a slur but rather harassment so Mr. Napolitano's findings were incorrect on their face.

99.     Additionally, all of the school's facts agree that the Plaintiff had been authorized to enter Meridian High School by the Meridian uniformed guard and the charge had simply been failure to follow instructions. Once again Mr. Napolitano's findings were even inconsistent with the charges against the Plaintiff.

100.    Finally, Mr. Napolitano like the rest of the school personnel used the word "vandalism" but continued to fail to set out a single thing that was damaged, let alone that the Plaintiff had been the one to cause any damage that might have occurred (but which was not identified).

101.    Mr. Napolitano did note and acknowledged that the Plaintiffs appeal was timely.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

18

102.    According to Mr. Napolitano's letter, under Fauquier County School Board policy there was no further appeal opportunities, and his decision was final.

103.    There was no potential appeal for a suspension under 10 days to the school board and the school board did not make any determination on the case and according to the school officials, there was no review by the School Board.

104.    According to Mr. Napolitano's letter, and the Fauquier County Schools Code of Student Conduct (See Pages 18 and 31) there is/was no potential for appeal, or any other review of Ms. Brill's decision on the activity's suspension, past the Principal of Kettle Run High School. See Exhibit 2, Pages 18 and 31.

105.    However, all of the other Defendants, and all school personnel, acted as agents or employees for the School Board and the School Board remains their principal and a proper party to this action.

106.    Since that time school officials agreed to reduce the activities suspension to 6 months and then ended the activity suspension on October 31, 2023, as a result of the Plaintiff's notice of his intent to bring this action.

107.    The Fauquier County Schools Code of Student Conduct requires that when suspending a student, the principal or assistant principal "may suspend the student after giving the student oral or written notice of the charges against him/her."

108.    The Plaintiff was not given notice of the charges against him until May 15, 2023, either 5 or 3 days after his suspension was announced.

109.    The Plaintiff was not given an opportunity to present his version of what occurred at all in the short conversation with the school officials when they attempted to have him sign a preprepared statement of facts.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

19

110.    The Plaintiff was never given a chance to present his version of events until either 4 or 6 days after the suspension had been announced (at the May 16, 2023 meeting with his parents).

111.    The Plaintiff was not provided, the actual charges against him, as the charges changed twice, or the facts as known to school personal until May 15, 2023, either 3 or 5 days after his suspension had been decided and announced.

112.    The Fauquier County Public Schools Code of Student Conduct (2022-2023) states regarding appeals of a suspension:

> The parent or guardian has three (3) school days following written notice of suspension in which to appeal the suspension to the superintendent. Upon receipt of a written request for appeal, (Petition for Review or Hearing), the superintendent will give the principal an opportunity to address the appeal. If the appeal is not resolved by the principal, the superintendent shall review the action taken by the principal and uphold, modify or deny such action based on an examination of the record of the student's behavior. The superintendent will determine if there is agreement regarding the material facts as reported by school administration and whether the discipline consequence assigned by school administration aligns with the *Code of Student Conduct*. The building principal will determine whether the student will be placed in class, in in-school detention or will stay at home pending the appeal determination. The decision of the superintendent is final. See Exhibit 2, at page 32-33.

113.    The Defendants did not follow the required procedure and the appeal was not decided by the Superintendent.

114.    The Fauquier County Schools Code of Student Conduct requires the appeal to be decided by the Superintendent and makes no provision for a substitute designee.

115.    Mr. Napolatano had no authority to make any determination on the appeal.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

20

116.    Additionally, Mr. Napolatano did not determine if the facts and punishments aligned with the Code of Student Conduct as they clearly do not on their face.

117.    The Code of Student Conduct notes three levels of potential responses.

118.    Level 1 offenses only allow for corrective actions that include:

☐ Opportunities to reflect on constructive next steps
☐ Restorative Practices and Problem Solving
☐ Coaching options
☐ Skill instruction for self-management, study skills, interpersonal skills, problem-solving
☐ Structured support plans

119.    No suspension is allowed for Level 1 offenses. In fact, the child can only be removed from class when a student exhibits ongoing behavior issues and <u>does not respond to interventions</u> or presents safety concerns. See Exhibit 2, Page 14 (emphasis added).

120.    Not following instructions is at most a Level 1 offense and does not allow a possible punishment of suspension.

121.    The alleged claim of vandalism was classified by the Defendants as a Level 2 offense.

122.    A Level 2 offense under the Code of Student Conduct does not allow for an out of school suspension punishment but does allow for an activity's suspension. See Exhibit 2, Page 17-18.

123.    The alleged charge of harassment was classified by the Defendants as a Level 3 offense.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

21

124.   A Level 3 offense under the Code of Student Conduct does allow for an out of school suspension punishment, and the use of Level 1 punishments, but does not allow for an activity's suspension. See Exhibit 2, Page 17-18.

125.   Though not supported by the facts, only the allegations of vandalism supported the Defendants imposition of an activity's suspensions, and only the Defendants allegations of harassment supported their imposition of an out of school suspension, and in all cases the Defendant should have been allowed to respond to interventions (which were not provided) prior to removal from class.

126.   The Defendants allegations and/or factual findings do not support the punishments levied by the Defendants on the Plaintiff.

127.   The Defendants failed to follow their own rules and regulations and improperly suspended the Plaintiff from school for 3 days and from activities for months.

128.   The Plaintiff has been damaged significantly by the Defendants' actions.

129.   The Plaintiff was removed from school during a time that tests and grades were being taken and his grades were significantly affected.

130.   The Plaintiff was improperly deprived of his right to education by the actions of the Defendants.

131.   The Plaintiff has been damaged by the Defendants' placement of the three day out of school suspension and the activities suspension on his permanent educational record, both at Kettle Run High School and at the state level in Richmond, as it creates reputational damage, is a hinderance to college entrance, is damaging to his academic future, his potential for future income, and to his reputation and social interactions with his peers.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

22

132.    The Plaintiff has been significantly damaged by the Defendants actions by his suspension from after school activities and sports.

133.    The Plaintiff has been significantly damaged by the Defendants actions by his loss of at least a year of sports, of his opportunity to improve in sports, of his loss of opportunity to compete and potentially earn college admission, scholarships, and other opportunities based upon his athletic and after school activities.

134.    The Plaintiff has been significantly damaged by the Defendants actions due to his loss of social interaction, team building, friendships, social benefits and has suffered ostracization and alienation from positive school activities, which are absolutely necessary and critical - especially considering his disability - for his emotional and learning development, by his inability to participate in after school activities and athletics.

135.    Alternatively, the Plaintiff has suffered nominal damages due to the Defendants' actions.

136.    The Defendants initial claim that the Plaintiff was being punished for hate speech is telling and demonstrates the actual intent and motivation of the Defendants to punish the Plaintiff for the content of the statements allegedly made in his presence.

137.    The Plaintiff was not treated the same as he would have been if another word or symbol had been found on the whiteboard (such as go Kettle Run or even a rainbow, a peace sign or a perhaps "black lives matter").

138.    The Plaintiff was not punished as he would have been for any other similar action but was punished specifically for the content of the message written on the whiteboard.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

23

139.    The Punishment levied against the Plaintiff for words that did not incite to violence, was not seen by any student, did not cause any intimidation to any other person, was levied specifically to censor, and chill the use of the words that were used and to punish the Plaintiff for their use, or just for his being present when they were written.

140.    The Plaintiff was punished for words that the Defendants allege that he was present for their expression purely based upon their content.

141.    The alleged writing contained no threat or incitement to violence and was not directed to any person whatsoever.

142.    On or about September 7, 2023, the Plaintiff sent a "Notice of Claim and of Anticipated Legal Action to the Defendants and all Defendants received that notice on or about September 11, 2023, or September 12, 2023, which was delivered by certified mail return receipt requested. See Exhibit 4.

## Count 1 – Declaratory Judgment

143.    The Plaintiff hereby incorporates Paragraphs 1 – 142 as if set forth in full herein.

144.    Under Virginia Code Section 8.01-184, this Court has the authority to, "In cases of actual controversy… have the right to make binding adjudications whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, and other instruments of writing, statutes, municipal ordinances and other governmental regulations, may be so determined." *Emphasis added.*

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

24

145.    The Appellant/Plaintiff has been aggrieved by the actions of the Defendants who are government employees acting under governmental regulations.

146.    There is an actual and justiciable controversy as to the rights of the parties under the Fauquier County Schools Code of Student Conduct, the Virginia Code and Constitution and the United Sates Constitution as described above and below.

147.    There are numerous actual and justiciable controversies in this matter as to the rights of the parties under the Fauquier County Schools Code of Conduct including but not limited to, whether the Defendants properly complied with their own regulations; as to whether the Defendants can punish the Plaintiff even though their own facts, as set out in their own allegations, do not support the punishments rendered; as to whether the Defendants can simply substitute another individual for the Superintendent in an appeal when he is specifically required to render a determination in the Code of Conduct; as to whether the Defendants can suspend the Plaintiff from school and activities before allowing him to present his position under the terms of the Code of Conduct; as to whether the Defendants can suspend the Plaintiff under different charges from what they originally alleged, which new charges were provided multiple days after the suspension was levied; as to whether the Defendants can suspend the Plaintiff for an offence without ever alleging or determining that he committed the offence in question; whether the Defendants can suspend the Plaintiff from school and activities for vandalism despite their admittedly being no allegation of damage to property; whether the Defendants can suspend the Plaintiff from school and activities for harassment when no person was threatened, no activity disrupted, and the writing in question was never directed to any individual; and finally whether the Defendants can suspend the Plaintiff from school and

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

25

activities simply because the content of the words in question constituted "automatic" harassment just because of their use.

148.    There is an actual and justiciable controversy as to the applicability of the Defendants' Code of Conduct regarding vandalism as it applies to the Plaintiff and the facts before the Court as there was no damage done to any property, no damage claimed to have been done to any property, and no damage described in any finding of the school whatsoever. Additionally, if no vandalism occurred, there is an actual controversy as to whether the Fauquier County Schools Code of Conduct allows for an activity's suspension based solely on harassment.

149.    There is an actual and justiciable controversy as to the applicability of the Fauquier County Schools Code of Conduct regarding harassment as it applies to the Plaintiff and the facts before the Court when no person was threatened, no activity disrupted, no student saw the writing in question, the writing in question was never directed to any individual, and most importantly, the school never alleged, showed, or even stated that the Plaintiff actually wrote the words on the board. Additionally, if no harassment occurred there is an actual controversy as to whether the Fauquier County Schools Code of Conduct allows for an out of school suspension for vandalism (a tier two offense) alone.

150.    There is an actual controversy as to the rights of the Plaintiff to have the suspensions in question revoked as improper under the law and the Fauquier County Schools Code of Student Conduct and his right to have the negative notations removed from his Kettle Run High School and his permeant Virginia Department of Education records.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

26

151.    The ordinances and regulations noted in the preceding paragraphs are "statutes, municipal ordinances and other governmental regulations" the rights thereunder which this Court may declare and make adjudication under Virginia Code 8.01-184.

152.    This Court may enter a declaratory judgment of the rights of the parties under Virginia Code 8.01-184.

153.    The Plaintiff respectfully requests that this Court declare that the Fauquier County Schools Code of Conduct requires that, for the Plaintiff to be found guilty of vandalism, there must be some damage to property, and therefore the Plaintiff is not guilty of vandalism under the Fauquier County Schools Code of Conduct, and that the activities suspension levied against him is vacated, and his local Kettle Run and Statewide Virginia Department of Education record should be expunged of any reference thereto.

154.    The Plaintiff respectfully requests that this Court declare that the Fauquier County Schools Code of Student Conduct requires some allegation and proof that the offending action claimed actually caused a hostile environment or that someone is/was actually subjected to intimidation to support a finding of harassment, and that as no such allegation was ever made by the Defendants in this case, and certainly no such evidence was ever described or mentioned, the Defendants cannot support a claim of harassment, and therefore, the Plaintiff is not guilty of harassment under the Fauquier County Schools Code of Student Conduct and that the three day out of school suspension levied against him should be vacated and his local Kettle Run and Statewide Virginia Department of Education record should be expunged of any reference thereto.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

27

155. The Plaintiff respectfully requests that this Court declare that the Superintendent must review all appeals for short term suspensions and therefore to further declare that the Defendants failed to properly review the Plaintiffs appeal and therefore the Plaintiff's  punishment for harassment under the Fauquier County Schools Code of Conduct and the three day out of school suspension levied against him should be vacated and his local Kettle Run and Statewide Virginia Department of Education record should be expunged of any reference thereto.

156. The Plaintiff respectfully requests that this Court declare that the Defendants must provide the Plaintiff, and all other students, with the charges against him/them and provide the Plaintiff, and any other student, an opportunity to present his/her version of events before levying any out of school or activity suspension against him (them) under the terms of the Fauquier County School's Code of Student Conduct and to additionally declare that the Defendants cannot change the charges against the Plaintiff, or any other student, after the "hearing" to support a suspension levied multiple days before the charges are provided.

157. The Plaintiff respectfully request that this Court declare that as the Defendants did not follow the rules and regulations set out in the Fauquier County Schools Code of Student Conduct as declared in the preceding paragraph that both the three day out of school suspension and the activities suspensions levied against him be vacated and his local Kettle Run and Statewide Virginia Department of Education record should be expunged of any reference thereto.

158. The Plaintiff respectfully requests that this Court declare that there is no "conspiracy" or "accessory" allowance for any punishment for harassment or vandalism

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

28

to be levied against a student in the Fauquier County Schools Code of Student Conduct. Therefore, to support such a claim, the school and the Defendants must, at the very least, allege and determine that the student in question was the person actually committing the allegedly improper activity. Therefore, the Plaintiff respectfully requests that this Court further declare that, as the Plaintiff in this case is only alleged to have been "in the room," the Defendants findings of harassment and vandalism against the Plaintiff are not appropriate under the terms of the Fauquier County Schools Code of Student Conduct, and to declare that both the three day out of school suspension and the activities suspensions levied against him be vacated and his local Kettle Run High School and Statewide Virginia Department of Education records be expunged of any reference thereto.

159.    The Plaintiff respectfully requests that this Court declare that under the Fauquier County Schools Code of Student Conduct and the Virginia Constitution (and U.S. constitution) the school is barred from making content based regulations and as it appears that that the Plaintiff is being suspended simply because of the specific word written on the whiteboard, such punishment is improper, and to therefore, further declare that both the three day out of school suspension and the activities suspensions levied against him was improper and should be vacated and that his local Kettle Run High School and Statewide Virginia Department of Education records should be expunged of any reference thereto.

160.    The Plaintiff respectfully requests that this Court declare that to enforce discipline against a student for not following instructions, the instruction violated must be enumerated and/or have not been countermanded by another school official.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

161.    All allegations against the Plaintiff specifically note that a uniformed security guard for Meridian High School allowed the Plaintiff to enter the building and told the Plaintiff he could use the restroom.

162.    There is an actual controversy between the parties as to whether the Defendants may punish the Plaintiff for failing to follow instructions when he was specifically given permission for entry into Meridian High School and further whether he can be suspended from school and activities for the Level 1 offense of failing to follow instructions.

163.    The Plaintiff respectfully requests that this Court declare that since the Plaintiff was given express permission for entry into Meridian High School, punishment for the Level 1 offense of failing to follow instructions cannot be supported by the facts and allegations as set forth by the Defendants.

164.    The Plaintiff respectfully requests that this Court further declare that under the Fauquier County School's Code of Student Conduct, the Level 1 offense of failing to follow instructions does not support either activity or out of school suspensions and therefore the Plaintiff cannot be suspended based upon this charge; and to therefore, further declare that both the three day out of school suspension and the activities suspensions levied against him should be vacated and his local Kettle Run High School and Statewide Virginia Department of Education records should be expunged of any reference thereto.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

30

## **Count II - Request for Entry of Injunction**

165.   The Plaintiff hereby incorporates Paragraphs 1 – 164 as if set forth in full herein.

166.   As the three day out of school suspension and the activities suspension levied against the Plaintiff was improper and should be vacated, rescinded and removed, as described previously herein, the Plaintiff has a right to the removal and/or vacation of the suspensions in question.

167.   The Plaintiff further has a right, as set out previously herein, to the removal and or expungement of any reference to the improper three day out of school suspension and the activity suspension improperly enforced against the Plaintiff from the local Kettle Run High School, Fauquier County and Statewide Virginia Department of Education records.

168.   To the extent that any portion of the activity's suspension may remain when this matter is determined, the Plaintiff further has the right to the vacating of that activity's suspension and respectfully asks this Court to order the Defendants to vacate the suspension and allow the Plaintiff to once again take part in after school activities and athletic activities.

169.   The actions of the Defendants make it clear that they have no concern for the legal rights of the Plaintiff, and that a simple judgment will not result in the removal and expungement of the improper suspension records from the Plaintiff's records.

170.   The Plaintiff's rights will not be adequately protected absent an order of this Court setting forth the rights and duties of the parties and further ordering the Defendants to remove and expunge the improper suspension records from the Plaintiff's

LAW OFFICES
**PURNELL,
MCKENNETT
& MENKE, PC**
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

31

records at Kettle Run High School, Fauquier County and from the Statewide Virginia Department of Education records.

### Count III: Violation of Virginia Constitution Freedom of Speech Article 1, Section 12; U.S. Constitution, Amendment 1 (and 42 U.S.C. § 1983)

171.    The Plaintiff hereby incorporates Paragraphs 1 – 170 as if set forth in full herein.

172.    As the Virginia Constitution States, "That the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; that the General Assembly shall not pass any law abridging the freedom of speech or of the press," and as the U.S. Supreme Court stated in Tinker v. Des Moines, students do not shed their constitutional rights at the schoolhouse gate. (For simplicity hereafter in this Complaint, "unconstitutional" or variations thereof shall refer to the Virginia Supreme Court. However, it will also be used interchangeably with the United States Constitution with regard to Freedom of Speech rights, as they are very similar and the Virginia supreme Court has held that the Virginia Constitution is "coextensive with the free speech provisions of the federal First Amendment" though noting that the Virginia Constitution could potentially be _more_ stringent in its protections of Virgina citizens, than the U.S. Constitution. In fact, as recently as December 14, 2023, the Virginia Supreme Court confirmed that the Virginia Constitution is _at least_ as protective of free speech as the US Constitution, stating in _Vlaming v. West Point School Board, (2023)_ (attached, as not yet

LAW OFFICES
**PURNELL,
MCKENNETT
& MENKE, PC**
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

32

in reporter),  "When we interpret the protection given to free speech by the Constitution of Virginia as being "coextensive with the free speech provisions of the federal First Amendment," Elliott v. Commonwealth, 267 Va. 464, 473-74, 593 S.E.2d 263 (2004), we are not outsourcing to the federal courts our decision-making power over the Constitution of Virginia. See Richmond Newspapers, Inc. v. Commonwealth, 222 Va. 574, 588, 281 S.E.2d 915 (1981). We are merely acknowledging that the then-existing interpretation of the First Amendment by the United States Supreme Court matches our own understanding of Article I, Section 12 of the Constitution of Virginia."). Thus, all claims and allegations made herein are brought under the Virginia Constitution, but as a violation of the Virginia Constitution, in this situation, is also a violation of the United States Constitution, the claims are also brought under the U.S. Constitution and U.S. Code 42 U.S.C. § 1983.

173.    All of the acts of the Defendants, their board members, officers, agents, employees, and servants were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the Commonwealth of Virginia.

174.    N.C. is suffering irreparable harm from the conduct of the Defendants.

175.    Alternatively, N.C. has no adequate or speedy remedy at law to correct or redress the deprivation of his rights by the Defendants.

176.    Alternatively, unless the Defendants' definition and/or application of its Harassment Policy is changed to not include the use of specific words (including but not limited to "nigger") to constitute per-se harassment (and vandalism) and unless the

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

33

practices(s) challenged herein are enjoined, N.C. will continue to suffer irreparable injury.

177.    The fact that the harassment charge is being used to punish for the words themselves is clear as the initial charge was "hate speech" a specific and clearly content based determination that the words used were in themselves punishable.

178.    The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, and also its interpretation being made applicable to the Virginia Constitution by the Virginia Supreme Court, prohibits censorship of protected expression.

179.    Non-disruptive, private student expression is protected by the Constitution.

180.    Alternatively, if this Court determines that the Defendants reasonably found that the Plaintiff did write the words in question on the whiteboard (despite having never alleged so) and this Court finds that the Plaintiff did write the words, such speech is protected speech under the Constitution.

181.    Alternatively, if this Court determines that the Defendants reasonably found that the Plaintiff did write the words in question on the whiteboard (despite having never alleged so) and this Court further finds that the Plaintiff did write the words on the whiteboard, such writing did not and does not materially and substantially interfere with the orderly conduct of educational activity at Meridian High School or Kettle Run High School.

182.    Alternatively, if this Court determines that the Defendants reasonably found that the Plaintiff did write the words in question on the whiteboard (despite having

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

34

never alleged so) and this Court finds that the Plaintiff did write the words, the messages expressed would be exclusively the writers (in this case attributed to the Plaintiff) private expression and are not school-sponsored speech.

183.   However, pursuant to the Defendants' application and use of the harassment portion (and Vandalism) of the Fauquier County School's Code of Student Conduct, the Defendants have singled out the Plaintiff's alleged expression and have prevented him and anyone else from writing or using the word in question.

184.   Viewpoint-based restrictions, whether in a public or nonpublic forum, are unconstitutional.

185.    Content-based restrictions on speech in a public forum are presumptively unconstitutional and are subject to strict scrutiny.

186.    Time, place, and manner restrictions on speech must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

187.   The Defendants' censorship of the words alleged to have been written by the Plaintiff, while they would not have done the same if a "peace sign" had been written on the board, a cross,  or even "black" or "blue lives matter" had been written on the board is clearly not a content neutral response to what was written and is viewpoint discrimination, which is unconstitutional in any type of forum.

188.   The Defendants have expressly interpreted their policy in a viewpoint discriminatory manner, drastically punishing the Plaintiff with suspension and activities suspension for simply being in a room where the word in question was written on the

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

whiteboard as harassment and vandalism despite the situation otherwise demonstrating none of the elements of either claim.

189.    The Defendants in practice have interpreted their rules (which are intentionally facially written to not allow for content discrimination) to allow them to punish the Plaintiff for the alleged expression of certain viewpoints without regard to whether the expression materially or substantially disrupts the school, its operations, or its environment, or the achievement of any legitimate pedagogical objective.

190.    Defendants' unequal treatment of the Plaintiffs alleged expression amounts to a content-based restriction of his alleged speech in an otherwise open forum.

191.    Pursuant to their other policies, the Defendants allow many other types of political and social messages (such as peace, gender neutrality, pro-life/pro-choice, black lives matter, support Israel, support Palestine, Ukraine, etc.) to be worn on shirts, displayed on books, badges, or to be discussed in class or after school clubs.

192.    Defendants' policies and practice on restrictions of speech have imposed unconstitutional restriction on the Plaintiff's alleged speech (or speech in his presence) as they have permitted and propounded a restriction on the Plaintiff's alleged speech merely because the school officials deem the Plaintiff's alleged expression (or presence when an expression was made) "offensive" to others.

193.    Prior restraints on speech may not delegate overly broad discretion to government decision-makers may not allow for content-based restrictions, must further a compelling government interest, must be narrowly tailored, and must be the least restrictive means available.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

194.     Defendants' practice and actions herein with regard to the use of the word in question imposes an unconstitutional prior restraint on speech as they have allowed the school officials in questions to practice unlimited discretion to permit, deny or punish students words and expression based on no specific standard or guideline other than their believe that the word itself is harassing (or constitutes vandalism) and thereby allows for and in this case has caused, content and viewpoint based enforcement of the School Policies.

195.     The Defendants practice and interpretation of their Code of Student Conduct has allowed them to forbid the use of words which they deem to be "hate speech," by instead relabeling what they at first tried to deem "hate-speech," as "harassment" and "vandalism", despite there being no actual basis for that finding in the Code of Student Conduct itself.

196.     Defendants' practice with regard to the use of the words in question and their definition of harassment and vandalism are overbroad because they fall directly within the realm of expression that is protected by the Constitution.

197.     The Defendants' practice with regard to of their Code of Student Conduct which has resulted in their forbidding the use of words which they deem to be "hate speech," by instead relabeling what they at first tried to deem "hate-speech," as "harassment" and "vandalism" is overbroad because they restrict student speech that does not, and will not, materially and substantially disrupt the educational process.

198.     Defendants' practice with regard to their Code of Student Conduct, which has resulted in their forbidding the use of words which they deem to be "hate speech" by instead relabeling what they at first tried to deem "hate-speech," as "harassment" and

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

37

"vandalism," is not content neutral because it restricts specific, disfavored, student speech that does not and will not materially and substantially disrupt the education process.

199.    The Defendants' practice with regard to speech they deem to be "hate-speech" being relabeled as "harassment" and/or "vandalism" chills the speech of students who might otherwise wish to or attempt to engage in private expression through writing of notes, messages or otherwise expressing their opinions in writing.

200.    Defendants have no compelling or legitimate reason that would justify their censorship of the words which they allege that the Plaintiff was in the room when written.

201.    Worse, the Defendants' practice of punishing students for merely being in the vicinity of the use of words they deem to be "hate speech", by relabeling it as "harassment" and/or "vandalism", is so draconian and overbearing as to be a prime example of the dystopian big brother, and dictatorial tyranny, that our State and National Constitutions were intended to protect the people of Virginia from. Particularly in the sense that the Plaintiff is being punished not for writing supposedly "offensive" words, but for simply being in their vicinity.

202.    The Defendants' practice of punishing students for merely being in the vicinity of the use of words they deem to be "hate speech" by relabeling it as "harassment" and/or "vandalism" is not the least restrictive means of achieving any compelling interest which they may allege.

203.    The Defendants practice of punishing students for merely being in the vicinity of the use of words they deem to be "hate speech" by relabeling it as

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

38

"harassment" and/or "vandalism" is not reasonably related to any legitimate pedagogical concern.

204.    Censoring students' protected speech cannot be a legitimate pedagogical concern as it is per-se content-based censorship.

205.    The Defendants' practice of punishing N.C. for merely being in the vicinity of the use of words they deem to be "hate speech" by relabeling it as "harassment" and/or "vandalism" violates the Free Speech Clauses of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and applied to the Virginia Constitution by the Virginia Supreme Court.

206.    The Defendants practice of punishing students, and N.C., for merely being in the vicinity of the use of words they deem to be "hate speech" by relabeling it as "harassment" and/or "vandalism" similarly violates the Constitution's protection of Freedom of Speech.

207.    The requirements of free speech and the inability of the school, and school officials, to interpret rules and regulations to restrict speech based on viewpoint, and content, is so well known and defined in the law, and has been fully described by the U.S. Supreme Court in numerous cases including but not limited to, *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969); *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 681 (1986),."; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 393–94 (1992) (it is a "certainty" that viewpoint discrimination is impermissible, even when regulating

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

39

speech that is otherwise "categorically excluded from the protection of the First Amendment"); *Bowler v. Town of Hudson*, No. CV 05-11007-PBS, 2007 WL 9797643, at *3 (D. Mass. Dec. 18, 2007) (holding that the "prohibition of viewpoint discrimination" in K-12 schools is "clearly established"). Thus, the Defendants' acts here were so obviously wrong, in the light of preexisting law, that only a plainly incompetent school official or one who was knowingly violating the law would have done such a thing.

208.    The Plaintiff has been damaged by the Defendants' breach of his rights to free speech, as the placement of the improper and unconstitutional three day out of school suspension and the activities suspension on his permanent educational record, both at Kettle Run High School and at the state level in Richmond, creates reputational damage, is a hinderance to college entrance, is damaging to his academic future, his potential for future income, and to his reputation and social interactions with his peers.

209.    The Plaintiff has been significantly damaged by the Defendants' breach of his rights to free speech by his suspension from after school activities and sports. Those damages are estimated to exceed $50,000.00.

210.    The Plaintiff has been significantly damaged by the Defendants' improper breach of his rights to free speech by his loss of at least a year of sports, of his opportunity to improve in sports, of his loss of opportunity to compete and potentially earn college admission, scholarships, and other opportunities based upon his athletic and after school activities.

211.    The Plaintiff has been significantly damaged by the Defendants' improper breach of his rights to free speech due to his loss of social interaction, team building, friendships, social benefits and has suffered ostracization and alienation from positive

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

40

school activities, which are absolutely necessary and critical - especially considering his disability - for his emotional and learning development, by his inability to participate in after school activities and athletics.

212.    Alternatively, the Plaintiff has suffered nominal damages due to the Defendants actions.

213.    As set out in Paragraph 207 above, the law is so well settled that only a plainly incompetent school official or one who was knowingly violating the law would have done such a thing. Therefore, the Defendants' conduct was knowing, reckless or callously indifferent to the state constitutional and federally protected rights of the Plaintiff, or worse, the Defendants were motivated by an evil intent, such as personal animosity, intentionally chilling of the Plaintiffs right to free speech, or the censoring of what they personally find to be repugnant and unpopular and/or offensive speech, because they personally do not want to allow such speech despite the Plaintiffs rights.

214.    Due to the knowing, reckless, or callously indifferent actions of the Defendants the Plaintiffs respectfully request that this Court enter judgment for punitive damages against the Defendants in the maximum amount allowed under Virginia Law ($350,000.00).

215.    The Plaintiff has suffered significant damage due to the costs and attorney's fees necessary to bring this action.

216.    The Plaintiff is entitled to recover for his damages and any punitive damages which the Court finds appropriate due to the deprivation of his rights, privileges, and immunities them under color of state law under 42 U.S.C. § 1983.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

41

## Count IV: Violation of Virginia Constitution Article 1 Section 11: Due Process, and Fourteenth Amendment: Due Process (and 42 U.S.C. § 1983)

217.    The Plaintiff hereby incorporates Paragraphs 1 – 216 as if set forth in full herein.

218.    The Due Process Clause of the Virginia Constitution and the Due Process Clause of the Fourteenth Amendment both prohibit the government from censoring speech pursuant to vague standards that allow officials unbridled discretion in enforcement decisions and from enforcing punishments in opposition to the law and rules by which they are governed. The Virginia Supreme Court has generally read the Due Process Clause of the Virginia Constitution to be at least as restrictive as the U.S. Constitution.  (In fact, as recently as December 14, 2023, the Virginia Supreme Court stated in *Vlaming v. West Point School Board, (2023)* (attached as not yet in reporter), "On several levels, Article I, Section 11 parallels the procedural due-process protections in the Fifth and Fourteenth Amendments to the United States Constitution. While interpreting and applying the former, we review, as persuasive (but not binding) authority, United States Supreme Court opinions construing the latter. In this respect, we hold that the protections of Article I, Section 11 are at least as strong as the existing understanding of procedural due-process rights secured by the United States Constitution.") Thus, all claims and allegations made herein are brought first under the Virginia Constitution, but as the violation of the Virginia Constitution, in this situation, is also a violation of the United States Constitution, the Plaintiff's claims are also brought under the U.S. Constitution, and U.S. Code 42 U.S.C. § 1983.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

42

219.    The Virginia Supreme Court has long held that a vague or arbitrary law is unconstitutional and that if it touches on the right to free speech, it must be scrutinized strictly. In fact, again on December 14, 2024, in *Vlaming,* the Court noted that:

> Under settled procedural due-process principles, a government requirement "is unconstitutionally vague if persons of 'common intelligence must necessarily guess at [the] meaning [of the language] and differ as to its application." Tanner v. City of Va. Beach, 277 Va. 432, 439, 674 S.E.2d 848 (2009) (quoting Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). A provision without "ascertainable standards" fails to provide "'fair notice' to citizens as required by the Due Process Clause." Id. at 440, 674 S.E.2d 848. This principle is particularly important when "vague language" implicates free-speech concerns because of the risk that individuals will self-censor "based on a fear that they may be violating an unclear law." Id. at 439, 674 S.E.2d 848. Vague statutes that touch "'upon sensitive areas of basic First Amendment freedoms' inevitably lead citizens to 'steer far wider of the unlawful zone' 'than if the boundaries of the forbidden areas were clearly marked.'" Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (quoting Baggett v. Bullitt, 377 U.S. 360, 372, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)). While "[v]ague laws in any area suffer a constitutional infirmity," courts "look even more closely" at vagueness that implicates freedom of expression. Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); see also FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253-54, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012) (recognizing that the "requirement of clarity in regulation is essential to the protections provided by the Due Process Clause" and that "[w]hen speech is involved, rigorous adherence to [due-process] requirements is necessary to ensure that ambiguity does not chill protected speech"). These principles are not limited to penal statutes. Even though "[s]chool disciplinary rules need not be as detailed as a criminal code," Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist., 83 F.4th 658, 668 (8th Cir. 2023), "a proportionately greater level of scrutiny is required [when] the regulation reaches the exercise of free speech. *Id.*

220.    Regardless of the words that actually make up the school's rules and regulations, how those rules are applied to an individual (or individuals) is equally subject to Constitutional violation and review by the Court's of Virginia. See *Id.* Where the Virginia Supreme Court notes that it reviews the school boards policy "As Applied" as opposed to simply as written.

LAW OFFICES
**PURNELL,
MCKENNETT
& MENKE, PC**
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

43

221.    The arbitrary decision by the Defendants and school officials, of what they can label and define as first "hate speech" and then redefine what speech or non-damage causing expression constitutes "harassment" and/or "vandalism" because they find the words objectionable, as applied, violates both the Due Process Clause of the Constitution and the simple language of the Fauquier County Schools Code of Conduct itself.

222.    People of high intelligence, let alone students of common intelligence, have no choice but to guess as to whether their expression will be deemed "hate speech" and/or deemed or redefined as "harassment" or "vandalism" and thus subject to censorship and punishment as there is nothing to address these issues in the Fauquier County Schools Code of Conduct and all determination must be "as applied" with no clarity.

223.    Defendants' practice of punishing students for merely being in the vicinity of the use of words (or alternatively writing those words) they deem to be "hate speech" by relabeling it as "harassment" and/or "vandalism" are vague and create a situation where the Defendants and school officials have unlimited discretion in determining what student speech is permissible.

224.    Defendants' practice of punishing students for merely being in the vicinity of the use of words (or alternatively writing those words) they deem to be "hate speech" by relabeling it as "harassment" and/or "vandalism" allows school officials to act with absolute discretion when determining if a student's expression is "harassment," or "vandalism" (used in place the clearly unconstitutional "hate speech"  which is what they wanted to use).

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

44

225.   The discretion given to, or more accurately which the Defendants and

school officials have been allowed to co-opt, leaves students open to censorship and

punishment on the whim of the Defendants and school officials.

226.   Worse, the Defendant, even under the facts as alleged by the Defendants',

did not perform any actions that could be defined as vandalism (there was no damage to

the whiteboard) and he performed no action that could be harassment under the definition

of harassment in the Fauquier County Schools Code of Conduct (First, there is no

allegation that he actually wrote the words, and second, there was no statement by anyone

addressed publicly to others that may precipitate disruption of the school program or

incite violence as no one saw the writing but the school official who erased it and the

words were not disruptive or inciting to violence).

227.   Defendants' and school officials, practice of punishing students for merely

being in the vicinity of the use of words (or alternatively writing the words) they deem to

be "hate speech" by relabeling it as "harassment" and/or "vandalism," as applied, violates

the Due Process Clause of the Constitution.

228.   As applied in this situation, the Fauquier County Schools Code of Conduct

does not provide fair notice as required by the Due Process Clause of the Constitution

that the alleged actions the Plaintiff was punished for could somehow be considered

vandalism or harassment and neither the Plaintiff nor the public could have determined

beforehand what the regulation on vandalism prohibits, according to the schools

interpretation, or the standard to which they must conform from either the language of the

rules or any properly promulgated official guidance provided prior to the rule being

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

45

enforced against the Defendant, but rather only after the fact from the result of an arbitrary exercise of discretion by the Defendants.

229.    From a plain meaning of the words of the rule, any person of regular intelligence would not have believed that the rules of the Fauquier County Schools Code of Conduct that were applied to the Plaintiff could have applied to the Plaintiffs actions.

230.    The law of due process is so well known and defined in the law, and has been fully described by the Constitution and the Virginia Supreme Court, and the Fauquier County Schools Code of Conduct is clear enough on its face, that the Defendants' actions in this case were so obviously wrong, in the light of preexisting law and the plain wording of the text of the Fauquier County Schools Code of Conduct and that only a plainly incompetent school official or one who was knowingly violating the law would have applied the alleged actions of the Plaintiff to the charges of vandalism and/or harassment.

231.    The Plaintiff has been damaged by the Defendants' violation of the Plaintiff's due process rights and the placement of the improper and unconstitutional three day out of school suspension and the activities suspension on his permanent educational record, both at Kettle Run High school and at the state level in Richmond, as it creates reputational damage, is a hinderance to college entrance, is damaging to his academic future, his potential for future income, and to his reputation and social interactions with his peers.

232.    The Plaintiff has been significantly damaged by the Defendants breach of the Plaintiff's due process rights and by his resulting improper suspension from after school activities and sports. These Damages are estimated to exceed $50,000.00.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

46

233.    The Plaintiff has been significantly damaged by the Defendants' breach of the Plaintiff's due process rights and by his resulting improper loss of at least a year of sports, of his opportunity to improve in sports, of his loss of opportunity to compete and potentially earn college admission, scholarships, and other opportunities based upon his athletic and after school activities.

234.    The Plaintiff has been significantly damaged by the Defendants' breach of the Plaintiff's due process rights due to his loss of social interaction, team building, friendships, social benefits and has suffered ostracization from positive school activities, which are absolutely necessary and critical - especially considering his disability - for his emotional and learning development, by his inability to participate in after school activities and athletics.

235.    The law of due process and the plain wording of the text of the Fauquier County Schools Code of Conduct is so clear and so well settled that only a plainly incompetent school official or one who was knowingly violating the law would have instituted the punishments levied on the Plaintiff. Therefore, the Defendants' conduct was knowing, reckless, or callously indifferent to the state constitutional and federally protected rights of the Plaintiff and the actual acts punishable under the plain wording of the text of the Fauquier County Schools Code of Conduct, or worse, the Defendants were motivated by an evil intent, such as personal animosity, intentionally chilling of the Plaintiffs' right to free speech, the censoring of what they personally find to be repugnant and unpopular and/or offensive speech, or the desire to enforce their own beliefs onto the Plaintiff by whatever means necessary despite the Plaintiff's rights to proper due process.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX  703-361-0092

47

236.    Due to the knowing, reckless, or callously indifferent actions of the Defendants, the Plaintiffs respectfully request that this Court enter judgment for punitive damages against the Defendants in the maximum amount allowed under Virginia Law ($350,000.00)

237.    The Plaintiff is entitled to recover for his damages and any punitive damages which the Court finds appropriate due to the deprivation of his rights, privileges, and immunities them under color of state law under 42 U.S.C. § 1983.

238.    Alternatively. the Plaintiff has suffered nominal damages due to the Defendants' actions.

239.    The Plaintiff has suffered significant damage due to the costs and attorney's fees necessary to bring this action.

### Damages

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, and provide Plaintiff with the following relief:

A.    That this Court issue a Preliminary and Permanent Injunction enjoining Defendants, their officials, agents, employees, and all persons in active concert or participation with them, from enforcing their activity suspension on the Plaintiff; and

B.    That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy in order that such declarations shall have the force and effect of final judgment; and

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

C.      That this Court enter an order setting forth the rights and duties of the parties and

further ordering the Defendants to remove and expunge the improper three day out of

school and activity suspension records from the Plaintiff's records at Kettle Run High

School, Fauquier County Public School records, and from the Statewide Virginia

Department of Education records.

D.      That this Court retain jurisdiction of this matter for the purpose of

enforcing this Court's order;

E.      That this Court grant an award of actual damages in the amount of at least

$50,000.00; and

F.      That this Court also, or alternatively, enter an award of damages against

Defendants and to Plaintiff in an amount this Court deems appropriate including but not

limited to nominal damages; and

G.      That the court grant an award of Punitive damages against the Defendants and on

behalf of the Plaintiffs in an amount up to $350,000.00

H.      That this Court grant the Plaintiff an award of his reasonable costs and attorney's

fees under and in accordance with the provisions of 42 U.S.C. § 1988.

I.       That this Court grant the requested injunctive relief without a condition

of bond or other security being required of Plaintiff; and

J.       That this Court set forth such other relief as this Court deems reasonable and

proper.

LAW OFFICES
PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

49

Respectfully Submitted
N.C. a minor,
by and through his father and mother
Steven Cosby and Amy Lifson

David G. McKennett, Esquire VSB #71257
PURNELL, MCKENNETT & MENKE, PC
9214 Center Street, Suite 101
Manassas, Virginia 20110
Phone 703-368-9196
Fax 703-361-0092
Counsel for Plaintiffs

LAW OFFICES

PURNELL,
MCKENNETT
& MENKE, PC
P.O. Box 530
MANASSAS, VIRGINIA 20108
703-368-9196
FAX 703-361-0092

50

Suspension Form S-4
Revised 2/2022

## PETITION FOR REVIEW OR HEARING
### (Appeal of Discipline Matter)

Name of Student: __N.C._____    School: __Kettle Run High School_____

Name(s) of Person(s) Requesting Review: __Amy Lifson and Steven Cosby_____

### INSTRUCTIONS

1. Please read this entire form before you begin to address the items below.

2. You should not complete this form until you have reviewed a copy of the school administrator's *Report of Facts* concerning the suspension. If you have not received the *Report of Facts*, please contact the school immediately.

3. This form must be:

   - Filed within three (3) school days after the date of written notification of the offense for suspensions of 10 days or less

   - Filed within five (5) school days of written notification of long-term suspension (suspensions of more than 10 days)

   - Delivered, faxed, or e-mailed to the superintendent's designee at the following location:

     Mr. Nicholas Napolitano, Executive Director of Student Services
     Fauquier County Public Schools
     430 E. Shirley Ave., B-1
     Warrenton, VA 20186-3037
     (Phone: 540-422-7141 or 540-422-7100)
     (Fax: 540-422-7136)
     nnapolitano@fcps1.org

4. For suspensions of ten (10) days or less, no hearing will be conducted. The superintendent or his designee will review the suspension based upon your statements provided in this form and contact you with his/her decision. Principals will be given an opportunity to address your *Petition for Review or Hearing*.

5. For suspensions of more than ten (10) days, a hearing will be conducted. The superintendent's office will notify you of the location, date, and time of the hearing.

6. If more than one person is requesting the review or hearing, please designate one person who may be contacted regarding the review or hearing and provide day and evening telephone numbers.

7. In order to permit the superintendent's office to make a full review of the suspension, please answer the questions below as completely as possible.

8. You may include additional information on sheets that you attach to this form. If you are attaching additional sheets, please indicate how many in the space provided on the last page of this form.

9. If you require assistance or accommodation in completing this form, you may contact Student Services at 540-422-7100.

### DESIGNATION OF CONTACT

Name and telephone numbers of person who may be contacted regarding this review:

Name: __Steven Cosby_____

Day: __[redacted]_____    Evening: __same_____

EXHIBIT
1

Suspension Form S-4
Page 2
2/2022

**GROUNDS FOR PETITION** (please attach additional pages if necessary)    ☐

1.  Does the student deny the charges that have been stated as the basis for the suspension?  (circle one) **YES**   NO

2.  What is the student's version of the incident or occurrence(s) stated in the *Report of Facts* as the basis for the suspension?
    N.C. was admitted entrance of the building by the security guard to use a bathroom. He had to deficate and reported that the bathrooms by the field were unsanitary and the stall did not lock. After using the bathroom, he innocently wandered to the top floor of the building to look at the view of the capital. Another teammate came in through the same security guard.

3.  State any reason(s) why the *Report of Facts* is inaccurate or incomplete.
    N.C. did not engage in any vandalism or harassment and had no intention to cause harm or damage any property or to harass anyone. He went in the building to use the bathroom, and did not believe he did anything wrong as he was allowed into the building by a security guard, an authority official. He took an innocent picture of the view of DC from the top floor of the buiding because he though it was amazing. There is no evidence of vandalism or intent of vandalism, and he committed none.

4.  State any additional facts about the incident or occurrence(s) that you believe should be considered in a decision about how, if at all, the student should be disciplined.
    N.C. innocently wanted to deficate in a sanitary bathroom and was granted access to an unlocked open building to do that from an authority official. It is not credible in any way to call that harassment or vandalism and it is even a stretch to call it not following school rules since he had authorization from a security guard to enter an open door to a public building. His intent was innocent and he should not be punished for charges that he did not commit or intend. The first language we heard of his charges were unauthorized access, not factual, and hate speech, also that he didn't commit. Over a weekend, the charges changed to not following school rules, harassment, and a new invented charge of vandalism. The punishments were the same. It appears that staff was trying to find a charge to fit the punishment that was already decided. We believe that he should not be punished for crimes he didn't commit.

5.  Explain your objection to the suspension.
    If a child is to learn better judgment and impulse control, he/she needs the pro-social activities that high school has to offer. Especially as a student with a disability, N.C. needs the school activities to relieve and recover from extra stress from school work, as children with dyslexia have to mentally and emotionally work at least twice as hard as others to accomplish the same work. The school activities are an important part of his success as a student at Kettle Run and to become an invested member of its community. As part of the student conduct handbook, suspension from school and school activities occurs for a level 2 offense, which N.C. has not committed.

**RESOLUTION SOUGHT**

6.  What result are you asking for in this review?
    N.C. is a smart, good kid, and should not be punished for charges that he did not do. The staff says they have lost trust in N.C. to behave, but there is no direction for him to try to regain trust with staff and coaching. He should have level one appropriate problem solving or skills instruction to help him better control impulses and practice good judgment. What is the plan for him to be reintegrated into pro-social school activities after a year of ostracization? This level of radical punishment in search of a crime does not further educational goals to help a student's success. It appears punitive for its own sake and not in the spirit of an institution of learning.

7.  Do you wish to suggest a different resolution of the situation that is acceptable to the student? If so, please specify.
    Skills instructioin, combined with another type of restorative justice we feel would be appropriate for a level one offense. Even for illegal drugs and alcohol, the activity suspension is maxed at 45 calendar days. I stress that N.C. should not be punished for charges that he did not do, he should not have out-of-school suspension and he should be able to participate in the pro-social activities that he needs for his educational and emotional development.

5/16/2023
Date

5/16/2023
Date

Signature of Person Requesting Review/Hearing

Signature of Person Requesting Review/Hearing

No. of Attachments _____

# Code of Student Conduct
# 2022-2023



*Excellence by Design*

## www.fcps1.org





# Fauquier County Public Schools

**David C. Jeck, Ed.D., Division Superintendent**
**320 Hospital Drive, Suite 40**
**Warrenton, VA  20186-3037**
**(540) 422-7000-phone**
**(540) 422-7059-fax**
**djeck@fcps1.org**

*Excellence by Design*                                                   **www.fcps1.org**

July 1, 2022

Dear Parents and Students,

One of the most important responsibilities of our school division is to provide each student with the opportunity to learn and grow in a safe and secure school environment. We believe that students, parents and school staff must work cooperatively to ensure that a respectful climate exists at school, where educational and extracurricular programs thrive. The *Code of Student Conduct* (Code) is a guide to clarify expectations for student behavior at school and the range of responses that may be used if those expectations are not met.

In addition to describing the rights and responsibilities of students and parents, the *Code* defines in detail prohibited behaviors, the range of responses available to principals in addressing those behaviors, and the procedures approved by the School Board for use by the division in administering the *Code*. This *Code* has been established as a guide; discretion for addressing student behavior at school rests with the building principal.

The *Code of Student Conduct* applies to students while on school property, while at any school activity, while under the supervision of school authority (including going to and coming from school), and, in certain circumstances, while off school grounds and after school hours. It is important that parents and students review this *Code* together and discuss the importance of following school rules and meeting the division's behavioral expectations at all times. **After you have read the *Code*, please acknowledge that you reviewed the *Code* with your student either via on-line annual registration, or by signing the form on the reverse side of this letter. If your student is in grades 6 through 12, have your student sign as well. If you are submitting a paper copy of the form, please return the signed form to school by Friday, August 19, 2022.**

The School Board and our school staff believe that the safety and the emotional well-being of our students are paramount in ensuring a quality educational program and that providing a safe and secure school environment is a responsibility shared between home and school. The School Board and I appreciate your continued support. If you have any questions regarding the administration of the *Code of Student Conduct*, please call your child's principal.

Please accept my best wishes for a rewarding and successful school year.

Respectfully,

Dr. David C. Jeck
Division Superintendent

**CODE OF STUDENT CONDUCT**
**Statement of Receipt**

**Please use this paper form <u>ONLY</u> if it is not possible for you to complete annual registration on line.  For online assistance, email <u>CampusHelp@fcps1.org</u>.**

This document contains the *Code of Student Conduct*, the *Code of Virginia Parental Responsibility and Involvement Requirements*, and the *Code of Virginia Compulsory School Attendance* law.  The Code of Virginia requires this information be provided to parents at the beginning of each school year.

All parents/guardians of students enrolled in Fauquier County Public Schools, and all middle and high school students are required to sign this page, certifying that they have received this information, and read and understand the rights and exceptions in this document.  *Receipt of this information may also be acknowledged on-line if updating information using the Parent Portal in Infinite Campus.*  If further clarification is needed, please contact the principal of your child's school.

**If not completing this form online, please complete and return this form to school no later than Friday, August 19, 2022.**

I am the parent of the below named child, and by signature acknowledge receipt of the *Code of Student Conduct*, the *Code of Virginia Parental Responsibility and Involvement Requirements*, and the *Code of Virginia Compulsory School Attendance* law, which are included in this document.  I have read the *Code of Student Conduct*, and have reviewed it with my child.

By signing this Statement of Receipt, I do not waive or abdicate, but do expressly reserve, any rights protected by the constitution or laws of the United States or the Commonwealth of Virginia.  I further understand that I have the right to express disagreement with the school division's policies or decisions.

Name of Student  _____

Parent/Guardian Signature  _____ Date_____

Student Signature _____Date_____
(Grades 6 – 12)

Home Room Teacher _____

# Table of Contents

Philosophy ................................................................................................................................5

Student and Parent Rights and Responsibilities ....................................................................5

  Student Rights ......................................................................................................................5

  Student Responsibilities ......................................................................................................5

  Students with Disabilities ....................................................................................................5

  Parental Responsibilities ....................................................................................................6

Responsibilities for Staff in Managing Behavior....................................................................6

Definitions................................................................................................................................6

Prohibited Behaviors ..............................................................................................................8

  Alcohol, Drugs and Inhalants ............................................................................................8

  Arson ..................................................................................................................................8

  Bomb Threat/False Fire Alarm ..........................................................................................8

  Bullying...............................................................................................................................8

  Defiance of the Authority of School Personnel/Disrespect................................................9

  Dishonesty .........................................................................................................................9

  Disruptive Behavior............................................................................................................9

  Fighting/Assault/Battery ....................................................................................................9

  Gambling............................................................................................................................9

  Gang Activity ....................................................................................................................10

  Hazing ..............................................................................................................................10

  Medication and Prescription Drugs..................................................................................10

  Possession, Distribution and/or Sale of Pornography and/or Pornographic Materials .........10

  Unauthorized Possession or Use of Portable Electronic Devices...................................10

  Profane, Obscene, Abusive, or Threatening Language ..................................................11

  Stalking.............................................................................................................................11

  Student Dress and Grooming...........................................................................................11

  Technology Violations ......................................................................................................12

  Theft.................................................................................................................................12

  Threatening Behavior, Harassment, Sexual Harassment................................................12

  Tobacco............................................................................................................................12

  Trespassing ......................................................................................................................12

  Truancy ............................................................................................................................13

  Vandalism.........................................................................................................................13

  Weapons...........................................................................................................................13

  Virginia Tiered Systems of Support (VTSS).....................................................................13

Administrative Options for Addressing Misconduct ..............................................................14

Level 1 Responses................................................................................................................14

Instructional Measures and Problem-Solving Options..................................................................14
    Opportunities to reflect on constructive next steps...............................................................15
        Supervised Focus and Recovery..................................................................................15
        Counseling ..................................................................................................................15
        Parent Contact ............................................................................................................15
    Restorative Practices and Problem Solving............................................................................15
        Informal Restorative Problem-Solving Conference .......................................................15
        Formal Restorative Problem-Solving Conference .........................................................15
        Community or School Service.........................................................................................15
    Coaching Support ...................................................................................................................15
        Basic Check-In/Check-Out (CICO) with Coaching & Monitoring..................................15
        CICO – Self-Monitor Only..............................................................................................15
    Skills Instruction ....................................................................................................................16
        Targeted Instruction: Self-Regulation/Self-Management Skills......................................16
        Targeted Instruction: Study Skills.................................................................................16
        Targeted Instruction: Interpersonal Skills, Problem-solving, or for Specific Need ..........16
    Structured Support Plans........................................................................................................16
        Attendance/Graduation Support Plan.............................................................................16
        Response to Intervention (RTI) Support Plan/Function-based Support Plan ......................16
        Formal FBA/BIP............................................................................................................16
        FAPT/Wraparound Support Plan ...................................................................................16
        Threat/Risk Assessments (ref. policy 7-5.6)..................................................................16
Level 2 Responses.........................................................................................................................17
Corrective Actions .........................................................................................................................17
    Student Contracts...................................................................................................................17
    Time Out .................................................................................................................................17
    Warning ..................................................................................................................................17
    Before or After-School Detention ..........................................................................................17
    In-School Suspension.............................................................................................................17
    Parent Conference .................................................................................................................17
    Restitution ..............................................................................................................................17
    Retained in Office ..................................................................................................................18
    Saturday School .....................................................................................................................18
    Suspension from Extracurricular or Co-curricular Activities.....................................................18
    Teacher Removal of Student from Class..................................................................................18
    Bus Suspension ......................................................................................................................18
Level 3 Responses.........................................................................................................................18
    Out-of-School Suspension ......................................................................................................18
Level 4 Responses.........................................................................................................................18
    Recommendation for Long-Term Suspension ..........................................................................19

Level 5 Responses...................................................................................................19
   Long-Term Suspension......................................................................................19
   Expulsion..........................................................................................................19
   Mandatory Expulsion .......................................................................................19
   Referral to Alternative Education Program .......................................................19
   Participation in a Drug, Alcohol, or Violence Intervention, Prevention or Treatment
   Program...........................................................................................................19
Administrative Requirements for Addressing Bullying, Harassment and Misconduct .............20
Corporal Punishment...................................................................................................20
Conduct Violations and Accompanying Consequences (7-3.1 A) ..................................21
   Level 1 Offenses...............................................................................................21
   Level 2 Offenses...............................................................................................21
   Level 3 Offenses...............................................................................................22
   Level 4 Offenses...............................................................................................23
    Serious Offenses ...........................................................................................23
   Level 5 Offenses...............................................................................................24
    Drugs, Alcohol and Anabolic Steroids ...........................................................24
    Substance Abuse Counseling and Drug Testing............................................25
    Interscholastic Athletics and Anabolic Steroid Use .......................................25
    Weapons........................................................................................................25
   Exceptions........................................................................................................26
Search and Seizure......................................................................................................26
Use of Metal Detectors................................................................................................27
Investigations and Questioning of Students ..................................................................28
   School Incidents...............................................................................................28
   Non-school Incidents........................................................................................28
Expectations and Consequences for School Bus/Vehicle Passengers ...........................29
   Expectations for Behavior of Bus Passengers ...................................................29
Teacher Removal of Students from Class .......................................................................30
Suspensions and Expulsions.........................................................................................31
   Activity Suspension...........................................................................................31
   In-School Suspension........................................................................................31
   Short-Term Suspensions (1-10 days).................................................................31
   Sending Students Home.....................................................................................32
   Suspension and School Closings.........................................................................32
   Responsibility for School Work ..........................................................................32
   Trespassing .......................................................................................................32
   Short-Term Suspension Appeals Process (Suspensions of 10 days or less)............32
   Long-Term Suspensions (11-45 days) ................................................................33

Long-Term Appeals Process - First Level of Appeal (Appeal of Principal's Recommendation)................................................................................................33

Long-Term Appeals Process - Second Level of Appeal (Appeal of Superintendent's Decision)..............................................................................................34

Expulsions (365 days or more) ............................................................................34

Readmission following Expulsion ........................................................................35

Exclusion and Alternative Placement...................................................................35

Exclusion ..............................................................................................................35

Alternative Placement - Criminal Matters............................................................37

Alternative Placement – Discipline Matters.........................................................37

Reporting Procedures...........................................................................................37

Conduct: Extracurricular/Co-curricular Activities................................................37

Guidelines for Student Participation in Extracurricular and Co-curricular Activities ...........38

Eligibility Relative to Court Disciplinary Action(s) ..............................................39

Compulsory Attendance.......................................................................................39

General Requirements..........................................................................................39

Exemptions............................................................................................................39

Requesting Exemptions........................................................................................41

Attendance Philosophy.........................................................................................41

Other Attendance Requirements..........................................................................41

Truancy..................................................................................................................42

Additional Attendance Requirements ..................................................................43

4

## Fauquier County Public Schools
### *Code of Student Conduct*

### Philosophy

Recognizing the importance of the dignity and worth of each individual, the Fauquier County School Board strives to provide a respectful atmosphere in all schools that is conducive to successful teaching and learning. The Board believes that in such an atmosphere the intellectual, physical, emotional, and social needs of students and teachers are met. The Board further believes that students, parents, administrators, teachers and all other staff members must work together to maintain a respectful school environment in which educational and extracurricular programs thrive.

It is the primary responsibility of students to preserve a climate of mutual respect and trust so the dignity of the individual can be protected and the pursuit of opportunities for each student may be realized. It is Fauquier County Public School's (FCPS) responsibility to provide instruction to students regarding behavioral expectations. FCPS has adopted Positive Behavioral Interventions and Supports (PBIS) as a model for providing instruction and support for students. It is the responsibility of administrators, teachers, and all other school staff to enforce this *Code of Student Conduct* and to be consistent and fair in the application of all School Board policies and all school rules and regulations. (Ref. 7-3.1)

### Student and Parent Rights and Responsibilities

#### *Student Rights*

A student has all rights expressed and guaranteed by the United States Constitution and by federal, state, and local laws. These rights do not permit a student to disrupt the educational process, to break school rules, to present a health or safety hazard, or to disregard directions of those in authority. Individual rights do not include infringing upon the rights of others in the school community. To the extent permitted by applicable law, students have the right to: A public education without regard to gender, race, religion, or national origin; an orderly school and classroom environment that will allow optimum learning, emphasizing the values of responsibility, kindness, fairness, and safety; and express themselves in speech, writing, or symbols, consistent with their constitutional rights and School Board policy.

#### *Student Responsibilities*

It is the responsibility of students to preserve a climate of mutual respect and trust in order that the dignity of the individual is protected and the pursuit of opportunities for each student may be realized. Students are responsible for: knowing and complying with any rules or regulations of the School Board, as well as local, state, and federal laws; attending school regularly, equipped with the materials needed to attend class and complete class assignments and/or requirements; and contributing to a climate of mutual respect for all within each school so that the hopes and ambitions of all individuals may be realized.

The Fauquier County School Board has set behavioral expectations for students to keep them safe and to provide a school environment that promotes learning. Each student is responsible for knowing and meeting the behavioral expectations, which are explained in the student code of conduct. When students experience problems in managing their own behavior, school staff may impose disciplinary sanctions and/or provide instruction, problem-solving support, and interventions to help the student meet those expectations.

#### *Students with Disabilities*

Students with disabilities will be disciplined consistent with all applicable law.

5

*Parental Responsibilities*

Each parent has the responsibility to assist the school in enforcing the *Code of Student Conduct* and the attendance policies in order that education may be conducted in an atmosphere free of disruption and the threat to persons or property. A school principal may request that a student's parent or parents, if both parents have legal and physical custody of such student, meet with the school administration to review the School Board's *Code of Student Conduct* and the parent's or parents' responsibility to participate with the school in providing appropriate consequences for behavior.

Within one calendar month of the opening of school, the Fauquier County School Board shall, simultaneously with any other materials customarily distributed at that time, send to the parents of each enrolled student: (i) a notice of the requirements of *Code of Virginia* §22.1-279.3 regarding "Parental Responsibility and Involvement Requirements," (ii) a statement acknowledging the receipt of the School Board's *Code of Student Conduct*; and (iii) a copy of the Virginia compulsory school attendance law. These materials shall include a notice to the parents that by signing the statement of receipt, parents shall not be deemed to waive, but to expressly reserve, their rights protected by the constitutions or laws of the United States or the Commonwealth of Virginia and that a parent shall have the right to express disagreement with a school's or the school division's policies or decisions. These documents are available online during annual online registration. Parental requirements may be fulfilled by completing annual online registration.

Each parent of a student shall either acknowledge receipt during annual online registration, or sign and return to the school in which the student is enrolled, a statement acknowledging the receipt of the *Code of Student Conduct*, the notice of the requirements of *Code of Virginia* §22.1-279.3, and the Virginia compulsory school attendance law. This obligation may be met via annual on-line registration. Each Fauquier County school shall maintain records of such signed documents.

In accordance with all due process requirements in applicable Virginia law, the school principal may notify the parents of any student who violates a School Board policy or the compulsory school attendance requirements when such violation could result in the student's suspension or the filing of a court petition, whether or not the school administration has imposed such disciplinary action or filed a petition. The notice shall state: (i) the date and details of the violation; (ii) the obligation of the parent to take actions to assist the school in improving the student's behavior and ensuring compulsory school attendance compliance; (iii) that, if the student is suspended, the parent may be required to accompany the student to meet with school officials; and (iv) that a petition with the juvenile and domestic relations district court may be filed under certain circumstances to declare the student a child in need of supervision.

No suspended student shall be admitted to the regular school program until such student and his parent have met with the administration to discuss improvement of the student's behavior, unless the principal determines that readmission, without parent conference, is appropriate for the student.

Upon failure of a parent to comply with these provisions of *Code of Virginia* §22.1-279.3, Parental Responsibility and Involvement Requirements, the School Board may, by petition to the juvenile and domestic relations district court, proceed against such parent for willful and unreasonable refusal to participate in efforts to improve the student's behavior or school attendance. (Ref 7-3.1)

## Responsibilities for Staff in Managing Behavior

When students experience problems in managing their own behavior, staff shall provide instruction and problem-solving supports designed to improve behavior. Staff will ensure that students have received sufficient behavioral instruction and are able to demonstrate the expected behavior. Administrators shall consider mitigating factors before selecting options for addressing misconduct.

## Definitions

For the purposes of this *Code of Student Conduct*, and unless the context clearly indicates otherwise:

6

*"Alternative education program"* shall include, but not be limited to, adult education, Southeastern Alternative School, homebased instruction, or any other education program designed to offer instruction to students for whom the regular program of instruction may be inappropriate.

*"Destructive device"* means: (1) any explosive, incendiary, or poison gas, bomb, grenade, rocket having a propellant charge of more than four ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, mine, or other similar device; (2) any weapon, except a shotgun or a shotgun shell generally recognized as particularly suitable for sporting purposes, by whatever name known which will, or may be readily converted to, expel a projectile by the action of an explosive or other propellant, and that has any barrel with a bore of more than one-half inch in diameter that is homemade or was not made by a duly licensed weapon manufacturer, any fully automatic firearm, any sawed-off shotgun or sawed-off rifle as defined in Va. Code §18.2-299 or any firearm prohibited from civilian ownership by federal law; and (3) any combination of parts either designed or intended for use in converting any device into any destructive device described in this subsection and from which a destructive device may be readily assembled. "Destructive device" shall not include any device which is not designed or redesigned for use as a weapon, or any device originally designed for use as a weapon and that is redesigned for use as a signaling, pyrotechnic, line-throwing, safety, or other similar device, nor shall it include any antique firearm as defined in *Code of Virginia* §18.2-308.2:2(G).

*"Disruptive behavior"* means a violation of School Board policies or regulations governing student conduct that interrupts or obstructs the learning environment.

*"Exclusion"* means the School Board's denial of school admission to a student who has been expelled or has been placed on a long-term suspension of more than thirty calendar days by another school board or a private school, in either Virginia or another state, or for whom admission has been withdrawn by a private school in Virginia or another state.

*"Expulsion"* means any disciplinary action imposed by the School Board or a committee thereof, whereby a student is not permitted to attend school within the school division and is ineligible for readmission for 365 calendar days after the date of the expulsion.

*"Firearm"* for purposes of mandatory expulsion, means: (1) any weapon, including a starter gun, that will, or is designed or may readily be converted to, expel  single or multiple projectiles by the action of an explosion of a combustible material; (2) the frame or receiver of any such weapon; or (3) any unloaded firearm in a closed container. "Firearm" does not include any pneumatic gun as defined in this document.

*"Long-term suspension"* means any disciplinary action whereby a student is not permitted to attend school for more than ten school days but less than 46 calendar days.  A long-term suspension may extend beyond a 45 school day period but shall not exceed 364 calendar days if (i) the offense is one described in *Code of Virginia* § 22.1-277.07 or 22.1-277.08 or involves serious bodily injury or (ii) the School Board or Superintendent or his designee finds that aggravating circumstances exist, as defined by the Department of Education.

*"One year"* means 365 calendar days.

*"Parent"* means the natural parent(s) and/or legal guardian(s) of the student.

*"Pneumatic gun"* means any implement, designed as a gun that will expel a BB or a pellet by action of pneumatic pressure.  "Pneumatic guns" include, but are not limited to, paintball guns, air guns, Airsoft guns, pellet guns and BB guns.

*"Principal"* as used in School Board policy means the principal or designee.

7

*"School property"* means any real property owned or leased by the School Board, any vehicle owned or leased by the School Board or operated by or on behalf of the School Board, school bus stops or a Drug-Free School Zone as per *Code of Virginia* §18.2-255.2.

*"Short-term suspension"* means any disciplinary action whereby a student is not permitted to attend school for a period not to exceed ten school days.

*"Superintendent"* as used in School Board policy means the superintendent or designee.
(Ref 7-3.1)

## Prohibited Behaviors

No student shall violate, while on school property, while at any school activity, or while under the supervision of school authority (including going to and coming from school), any laws and/or rules and regulations of the School Board and the school. The following are general categories of prohibited conduct. Specific conduct violations and accompanying consequences are listed elsewhere in this *Code of Student Conduct.*

### *Alcohol, Drugs and Inhalants*
The unlawful manufacture, distribution, dispensation, possession, use, or being under the influence of alcohol, anabolic steroids, any narcotic drug, hallucinogenic drug, amphetamine, barbiturate, marijuana, inhalant, or other controlled substance as defined in the Drug Control Act, Chapter 34, Title 54.1 of the *Code of Virginia*, or as defined in schedules I through V of 21 U.S.C. 812, or imitation controlled substances or drug paraphernalia while on school property or while engaged in or attending any school sponsored or school approved activity or event, shall result in suspension and/or expulsion from school in accordance with all applicable laws and School Board policy. "Drug paraphernalia" shall mean those items described in §18.2-265.1 of the *Code of Virginia* and "imitation controlled substance" shall mean a pill, capsule, tablet or other item that is not a controlled substance, an alcoholic beverage, anabolic steroid, or marijuana, but which by overall dosage unit, appearance, including color, shape, size, marking or package, or by representations made, is intended to lead or would lead a reasonable person to believe that such a pill, capsule, tablet or other item is a controlled substance, an alcoholic beverage, anabolic steroid, or marijuana. Inhalant use is the intentional breathing of chemical vapors or gas. Inhalants include but are not limited to, computer dusters, solvent-based markers, solvent-based correction fluid, fingernail polish remover, aerosols, gasoline and butane.

### *Arson*
Unlawfully and intentionally damaging or attempting to damage any school or personal property by fire or incendiary device. Firecrackers, fireworks, and trashcan fires may be included in this category, if they are contributing factors to a damaging fire.

### *Bomb Threat/False Fire Alarm*
Students shall not make a false threat or the intent to create a false threat, including, but not limited to a bomb threat or false fire alarm.

### *Bullying*
Bullying means any aggressive and unwanted behavior that is intended to harm, intimidate, or humiliate the victim; involves a real or perceived power imbalance between the aggressor or aggressors and victim; and is repeated over time or causes severe emotional trauma. Bullying does not include ordinary teasing, horseplay, argument or peer conflict. Bullying occurs when a person or group of people exposes another person, repeatedly and over time, to negative actions, which include the following three components:

1. Aggressive behavior that involves unwanted, negative actions;
2. A pattern of behavior repeated over time; and,
3. An imbalance of power or strength.

8

Types of bullying actions include:

1. Verbal bullying (including derogatory comments; name calling)
2. Social exclusion or isolation
3. Physical bullying (hitting, kicking, shoving, spitting, etc.)
4. Bullying through lies and false rumors
5. Bullying by having money or possessions taken or damaged
6. Threats or coercion to do things one doesn't want to do
7. Racial bullying
8. Sexual bullying

Cyber-bullying (bullying through email, social media, instant messaging (IMing), chat room exchanges, Web site posts, or digital messages or images sent to a cellular phone or personal digital assistant (PDA) Cyber-bullying, like traditional bullying, involves an imbalance in power, aggression, and a negative action that is often repeated.) The principal shall notify the parent of any student involved in an alleged incident of bullying, as defined in School Board policy and the Code of Conduct, of the status of any investigation within five school days of the allegation of bullying.

### *Defiance of the Authority of School Personnel/Disrespect*
Students shall comply with any oral or written instructions made by school personnel, volunteers, or law enforcement personnel within the scope of their authority as provided by School Board policies and regulations. Students may immediately seek guidance from school personnel in situations where they believe their safety or well-being is being compromised. In other cases, the students should make an appointment with a school administrator to discuss their concerns. Students shall communicate in a respectful manner with all school personnel, volunteers and law enforcement personnel. Disrespect and defiance of authority may result in disciplinary action.

### *Dishonesty*
Honesty shall be practiced in the entire educational experience. Cheating, plagiarism, forgery (including computer forgery), lying, stealing, or any other acts of dishonesty shall not be tolerated. This includes unauthorized or illegal use of computers or computer networks.

### *Disruptive Behavior*
Students shall not behave in a disorderly manner or in any other manner that materially or substantially disrupts or disturbs the safe and orderly operation of the classroom, the school, the ongoing educational process, or any school activity.

### *Fighting/Assault/Battery*
Students shall not fight, display, or contribute to aggressive behavior that is disruptive or dangerous. All students have the right to be educated in an atmosphere that is free from violence, fear, intimidation, harassment and abuse. Assault is an attempt to inflict or actual infliction of physical harm, or the touching of another person without his or her consent. Battery involves any physical confrontation that may result in no injury, minor injury, or serious injury that includes, but may not be limited to, kicking, shoving, pushing, or hitting. Battery normally involves one aggressor. Fighting is the touching or striking of another person with the intent to bring about harmful or offensive contact to another person. Fighting involves two or more persons. Students are expected to avoid conflicts of this nature. Assault, battery and fighting are all violations of School Board policy.

### *Gambling*
Gambling in any form is prohibited on school property or in association with any school activity. Students shall not bet money or other things of value or knowingly play or participate in any game involving such a bet, on school property or during any school-related activity.

### *Gang Activity*

Students shall not engage in gang activity on school grounds, on any school bus, or at any school sponsored activity. A gang is defined as any group of two or more persons whose organized purpose includes some or all of the following: (1) commission of illegal acts, (2) participation in activities that threaten the safety of persons or property of others, (3) disruption of school activities, and (4) creation of an atmosphere of fear and intimidation. Gang activity includes, but is not limited to:

1. Wearing, using, distributing, displaying, or selling any clothing, jewelry, emblem, badge, symbol, sign, or other thing that is evidence of membership or affiliation with any gang
2. Committing any act or omission, or using any speech, either verbal or nonverbal (such as gestures or handshakes) showing membership or affiliation in a gang
3. Using any speech or committing any act or omission in furtherance of the interests of any gang, including:

    a. Soliciting, hazing and initiation of others for membership in any gang
    b. Requesting any person to pay for protection or otherwise intimidating or threatening any person
    c. Committing any other illegal act or other violation of school policy
    d. Inciting other students to act with physical violence
    e. Inappropriate congregating, bullying, harassment, abuse, intimidation, degradation, disgrace and/or related activities which are likely to cause bodily danger, physical harm, or mental harm to students, employees or visitors

### *Hazing*

Students shall not participate in the hazing of other students. Hazing is the reckless or intentional endangerment of the health or safety of a student or students or the infliction of bodily harm on a student or students in connection with or for the purpose of initiation, admission into or affiliation with or as a condition for continued membership in a club, organization, association, fraternity, sorority, or student body regardless of whether the student or students so endangered or injured participated voluntarily in the relevant activity. The principal of any Fauquier County School at which hazing causes bodily injury shall report the hazing to the local Commonwealth Attorney.

Hazing, as defined herein, is a Class I misdemeanor, which may be punished by confinement in jail for up to 12 months and a fine of up to $2,500, or both, in addition to any disciplinary consequences which may be imposed under this policy. In addition, any person receiving bodily injury by hazing has a right to sue, civilly, the person or persons guilty thereof, whether adults or infants. See *Code of Virginia* §18.2-56.

### *Medication and Prescription Drugs*

"Medication" refers to any drug, including prescription and over-the-counter drugs and supplements. A student shall not have in his possession any medication or supplement except approved self-administered medication when written permission is on file from the parent and physician. Other medications may be delivered to the school clinic in accordance with School Board policy for safekeeping and to administer to the student when permission is received from the parent for over-the-counter drugs, and from the parent and physician for prescription drugs.

### *Possession, Distribution and/or Sale of Pornography and/or Pornographic Materials*

Students shall not possess, distribute, give and/or sell pornography and/or pornographic materials in any format, nor shall students procure or attempt to procure pornography and/or pornographic materials. This includes, but is not limited to, written, photographic and pornographic images stored and/or shared on electronic devices such as cell phones.

### *Unauthorized Possession or Use of Portable Electronic Devices*

This includes Smartphones, Laptop Computers, Tablets, Cellular Telephones, Personal Digital Assistants (PDA's), Portable Music or Video Devices, and/or Other Portable Communication and Electronic Devices.

Students may possess personal portable electronic devices during posted school hours and may use them during non-instructional time as designated by the building principal/school administration and while on the school bus at the discretion of transportation staff. Students are strictly prohibited from taking photographs, making videos or making audio recordings on school property, or school buses, unless authorized to do so by a staff member for instructional purposes. Students may only use a personal electronic device in class if specifically instructed to do so by a staff member. If a student violates the *Code of Student Conduct* or Acceptable Use Policy using an electronic device, in addition to other disciplinary sanctions that may be imposed, the device may be confiscated from the student and returned only to the student's parent or parent's designee. The student may also lose the privilege to use personal electronic devices in the future.

### *Profane, Obscene, Abusive, or Threatening Language*

Cursing, threatening, or using abusive language or remarks intended to demean or intimidate a person, including derogatory language related to race, religion, sex, national origin, disability, sexual orientation, or intellectual ability is prohibited. This violation includes action, displays, or written material of an obscene, violent, or inappropriate nature and the wearing of clothing or adornments, including inappropriate jewelry, that convey either violent or sexually suggestive messages or offensive statements towards school personnel and students (e.g., vulgar language).

### *Stalking*

Stalking means willful, malicious and repeated following or similarly harassing a person over an extended period. Stalking can also include seeking and obtaining the person's personal information in order to contact them. Stalking may include such acts as:

1. Repeated physical following
2. Unwanted contact (by letter or other means of communication)
3. Observing a person's actions closely for an extended period of time
4. Contacting family members, friends, or associates inappropriately
5. Cyber-stalking (a. Using the Internet, through chat rooms, social media and e-mail, to find, identify, and arrange to meet a person whom one intends to victimize. b. Sending multiple e-mails, often on a systematic basis, to annoy, embarrass, intimidate, or threaten a person or to make the person fearful that he/she or a member of her family or household will be harmed. Also called e-mail harassment.)

### *Student Dress and Grooming*

A student's dress and appearance shall not be such that it causes disruption, distracts others from the educational process or creates a health or safety problem. All students are expected to dress appropriately. Apparel worn to school should be neat and clean. Items of clothing with language that is vulgar, obscene, or discriminating, or that promotes or depicts weapons, drugs, alcohol, tobacco, drug paraphernalia, themes of violence, or gang symbols are prohibited.

Students will not be prohibited from wearing religiously and ethnically specific or significant head coverings or hairstyles. School administration will maintain gender neutrality by subjecting all students to the same set of rules and standards regardless of gender. Student dress and grooming standards may not have a disparate impact on students of a particular gender. School employees are prohibited from enforcing the dress/grooming standards by direct physical contact. School employees are prohibited from requiring a student to undress in front of any individual to comply with the dress or grooming code.

Examples of unacceptable dress include, but are not limited to:

1. "See through" shirts, spaghetti-strap tank tops, or muscle shirts. These may only be worn with an additional shirt of a different type underneath or over
2. Hats, head covers (except for religious purposes), headbands, and sunglasses are not to be worn in a school building

3.  Clothing that exposes undergarments, the midriff, chest, back, or buttocks is inappropriate for school and is not permitted
4.  Pajamas and other sleepwear
5.  Absence of shoes or appropriate footwear
6.  Clothing with inappropriate slogans, sexual innuendo, sexual content, themes of violence, or negative gestures, especially as they relate to alcohol, drugs, illegal substances, or tobacco products may not be worn
7.  Any student's dress that is determined by school administration to be disruptive to the learning environment is not acceptable
8.  Pants worn below the normal waistline and/or at a length that may cause walking on the hem of the garment

### *Technology Violations*
Violations of the Fauquier County Public Schools computer use policy are not permitted.

### *Theft*
Students shall not take property from the possession of another person or from the school division without the consent of the owner.

### *Threatening Behavior, Harassment, Sexual Harassment*
A student shall not threaten or sexually harass another student or any school employee, volunteer, student teacher or any other person present in school facilities or at school functions. Sexual harassment includes any unwelcome sexual advances, requests for sexual favors, and other inappropriate verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment. A student shall not threaten or harass another student or any school employee, volunteer, student teacher or any other person present in school facilities or at school functions because of race, color, gender, age, religion, disability, appearance, national origin, sexual orientation, or marital status. Threatening and harassing include, but are not limited to, inappropriate verbal, written, (including social media messages or e-mail), or physical conduct that creates an intimidating, hostile or offensive environment. Students are urged to immediately seek guidance from school personnel in situations where they believe their safety or well-being is being compromised. In other cases, the student should make an appointment with a school administrator to discuss their concerns. (FCPS Policy 5-1.7)

### *Tobacco*
The possession, use, and/or distribution of tobacco or tobacco products, including nicotine vapor products and alternative nicotine products on school premises (including school vehicles) in school property, on school premises (parking lots/athletic fields), in or on school vehicles, at school-sponsored activities and on and away from school grounds, or at any other time that students are under the authority of school personnel, on or off site is strictly prohibited at all times including non-school hours (24/7). (This includes, but is not limited to, cigarettes, blunts, bidis, electronic cigarettes, cigars, pipe tobacco, snuff, chewing tobacco, electronic smoking devices, and any other products containing nicotine, as well as any component or accessory used in the consumption of a tobacco product, such as filters, rolling papers, pipes, and liquids used in electronic smoking devices, whether or not they contain nicotine. "Tobacco use" includes smoking, chewing, dipping, electronic smoking device use, or any other use of tobacco products.

Referrals to resources to help students overcome tobacco addictions shall be provided to those who are found to be in violation of this policy.

### *Trespassing*
Students shall not enter upon school property or use school facilities without the proper authority or permission. Students are not allowed to be on school property during a period of suspension or expulsion. Students who are expelled may not be on school property or attend any school event at any time during the period of expulsion. Such students who are not readmitted to school after 365 days of expulsion continue to be prohibited from being on school property or at school-sponsored events. Should said student wish to

have the prohibition removed, a formal request must be made to the principal of the school of attendance where the suspension or expulsion took place. For expulsion, if supported by the principal, such request to remove the prohibition must be approved by the School Board after a hearing. This policy does not preclude the individual from being on school property for non-school sponsored groups using the property; however, the individual must have approval from the superintendent for this purpose.

### *Truancy*
Students are to be in their assigned classes and on the school grounds during the entire school day. Students must obtain permission from the principal to leave the school grounds before the designated closing of the school day.

### *Vandalism*
Students shall not maliciously or willfully damage, injure, deface, or destroy school property or other property owned or under the control of the School Board, or the personal property of others, to include electronic data. This category includes graffiti. In addition to criminal sanctions against offending students, the *Code of Virginia* allows the School Board to seek reimbursement from the student or the student's parent for the destruction of school property.

### *Weapons*
Students shall not use or possess any weapons as defined in this *Code of Student Conduct*.
(Ref 7-3.1)

### *Virginia Tiered Systems of Support (VTSS)*
The Virginia Tiered Systems of Support (VTSS) is a data-informed decision making framework for establishing the academic, behavioral, and social-emotional supports needed for a school to be an effective learning environment.

The VTSS systemic approach allows Fauquier County Public Schools and communities to provide multiple levels of supports to students in a more effective and efficient, clearly defined process. Implementing the VTSS requires the use of evidence-based, system wide practices with fidelity to provide a quick response to academic, behavioral, social, and emotional needs. The practices are progress-monitored frequently to enable educators to make sound, data-based instructional decisions for students.

VTSS functions under the anchor process of integrating data, practices and systems to affect outcomes. The essential elements of an effective VTSS framework are:

- Aligned organizational structure
- Data informed decision-making
- Evidence-based practices
- Family, school, and community partnerships
- Monitoring student progress
- Evaluation of outcomes and fidelity

13

### Administrative Options for Addressing Misconduct

Students are subject to discipline by the staff for any misconduct that occurs in school or on school property; in a school vehicle; while participating in or attending any school sponsored activity or trip; and on the way to and from school.  Students may be subject to discipline for misconduct that occurs off school property when such misconduct includes acts that lead to: (1) an adjudication of delinquency or a conviction for an offense listed in §16.1-260 of the *Code of Virginia* (including unlawful purchase, possession or use of a weapon, homicide, felonious assault and bodily wounding, criminal sexual assault, manufacture, sale, gift, distribution or possession of Schedule I or II controlled substances or marijuana, arson and related crimes, and burglary and related offenses), or (2) a charge that would be a felony if committed by an adult.

When a student exhibits ongoing behavior issues and does not respond to interventions or presents safety concerns, the student may be removed from the classroom or the school for a period of time as outlined in the Code of Student Conduct.

When considering a disciplinary sanction or a removal beyond the recommendations in the Code of Student Conduct, the principal and/or superintendent will consider the student's record (behavioral, academic, attendance, and threat assessments) and the interventions and supports that have been implemented to change inappropriate behavior. Principals and/or superintendents may impose disciplinary sanctions beyond the recommendations in the Code of Student Conduct for students

   i.   Who engage in misconduct which caused serious harm (including but not limited to physical, emotional, and psychological harm) to another person(s) or posed a credible threat of serious harm to another person(s), as determined by a threat assessment; or

   ii.  Whose presence in the school poses an ongoing and unreasonable risk to the safety of the school, its students, staff, or others in the school; or

   iii. Who have engaged in a serious offense that is repetitive (based on student's disciplinary record) and demonstrates unresponsiveness to targeted interventions as documented through an established intervention process

Administrators shall consider mitigating factors before selecting options for addressing misconduct.

Instructional measures, problem-solving options and corrective actions available to school administrators include, but are not limited to those listed in this document.

### Level 1 Responses

Level 1 responses are intended to prevent further behavioral issues while keeping the student in school.

### Instructional Measures and Problem-Solving Options

Instructional measures and problem-solving options available to school administrators include but are not limited to the following:

- Opportunities to reflect on constructive next steps
- Restorative Practices and Problem Solving
- Coaching options
- Skill instruction for self-management, study skills, interpersonal skills, problem-solving
- Structured support plans

Examples are provided below with brief descriptions for each category.

14

### *Opportunities to reflect on constructive next steps*

Supervised Focus and Recovery

"Focus and Recovery" (F.A.R.) provides a supervised time and space arranged to give students the opportunity to compose themselves after a misbehavior and to refocus on constructive next steps. The purpose of this action is to give students the opportunity to reflect and to prepare for re-entry into school activities as soon as possible, rather than spending a full day in "detention" or in-school suspension. Students may also be asked to use this time to prepare to participate in a restorative problem-solving conference.

Counseling

School counselor will discuss the offense and behavior with the student and help the student to select constructive next steps.

Parent Contact

Letter, e-mail or phone call to parent.

### *Restorative Practices and Problem Solving*

School administrators, in coordination with school counselors, parents and other school staff, may implement restorative practices. (e.g., restorative problem-solving conferences, mediation, directed community services, research projects, etc.)

Informal Restorative Problem-Solving Conference

A procedure using restorative prompts for facilitating a problem-solving conversation after a student has engaged in misconduct.

Formal Restorative Problem-Solving Conference

A Formal Restorative Conference is a structured opportunity for improving behavior and problem-solving. School staff may invite students and family members to engage in a formal session with others who were impacted by the behavior. School staff who are trained as Restorative Coaches guide the prescribed steps in the formal procedure. Participants explain points of view in order to better understand concerns and then make plans for improving outcomes. The Formal Restorative Conference procedure is designed to restore trust and mutual cooperation in resolving problems.

Community or School Service

An assigned activity selected to help a student understand through service a more appropriate way of conduct. (e.g. – cleaning the cafeteria after throwing food, assisting custodian with graffiti removal, etc.)

### *Coaching Support*

Basic Check-In/Check-Out (CICO) with Coaching & Monitoring

Basic Check-In/Check-Out (CICO) is a structured coaching support system designed to provide guidance and feedback for students as they work to increase successful outcomes. Students are assigned a school staff member as a Check-In/Check-Out Coach who provides brief sessions reviewing the student's progress on goals. The progress monitoring component provides concrete feedback.

CICO – Self-Monitor Only

As the student participating in CICO meets goals in self-management/self-regulation, the student learns to monitor their own progress and meets with the CICO Coach less often. The student's participation in this Self-Monitoring CICO phase is marked by increasing independence from coaching and external supports.

15

### *Skills Instruction*

<u>Targeted Instruction: Self-Regulation/Self-Management Skills</u>

A school staff member works with the student to identify school situations which are challenging to the students. Together, the student and staff member identify constructive self-regulation and self-management strategies for coping with the challenging situations. Students may benefit from guided practice in strategies for managing anxiety, frustration, distractibility, need for movement, or other self-regulation needs. The specific goals for the self-management/self-regulation strategies may be added to an INDIVIDUALIZED Check-In/Check-Out Support Plan*.  (See Information and Resources section.)

<u>Targeted Instruction: Study Skills</u>

Specific instruction in study skills may improve student behavior. Goals for outcomes in study skills may be added to an INDIVIDUALIZED Check-In/Check-Out Support Plan.

<u>Targeted Instruction: Interpersonal Skills, Problem-solving, or for Specific Need</u>

Instruction may be provided for building interpersonal skills, problem-solving skills, conflict resolution skills, or skills to address a specific need. The goals for outcomes in these skills may be added to an INDIVIDUALIZED Check-In/Check-Out Support Plan.

### *Structured Support Plans*

<u>Attendance/Graduation Support Plan</u>

The Graduation Case Manager assigned to the school may work with school staff to develop an Attendance/Graduation Support Plan if the school determines that improving attendance and/or planning for credit recovery is needed to improve the student's ability to achieve graduation. The Graduation Case Manager and/or school staff will work with the student and the student's family to coordinate supports.

<u>Response to Intervention (RTI) Support Plan/Function-based Support Plan</u>

A Function-based Support Plan is an individualized behavior plan designed to clearly define and address a student's individualized behavior concerns.

<u>Formal FBA/BIP</u>

A formal Functional Behavior Assessment (FBA) may be conducted where staff members with specialized skills formally collect and analyze data to better understand the factors such as setting conditions, antecedent situations, triggers, skill sets, and responses that impact a student's behavior. Based upon the Functional Behavior Assessment (FBA), staff at the school with specialized skills will develop a Behavioral Intervention Plan (BIP) individually designed to address a student's specific needs.

<u>FAPT/Wraparound Support Plan</u>

If a school determines that a student's behavior is significantly impacted by factors beyond the direct control of the school, school staff may explore supports that could help the student and the student's family to address those factors. School staff may work together with the student's family to develop a network of supports called a Wraparound Support Plan*. When appropriate, school staff may also coordinate with the student's family to make use of the Family Assessment and Planning Team (FAPT) to connect the family to community services which may assist in addressing individualized needs.

<u>Threat/Risk Assessments (ref. policy 7-5.6)</u>

Violence Threat Assessment:  In the case that a student has expressed or engaged in threatening behaviors, a threat assessment will be initiated to determine risk level and determine the appropriate response and management plan.  However, in the event that the school threat assessment team determines the student

poses a high risk to the safety and well-being of others that cannot be addressed solely by school policies and procedures, direct supervision will be provided and law enforcement will be notified.

Suicide Risk Assessment: The school threat assessment team shall investigate, document, and take appropriate action in instances where a student is believed to pose a risk of self-harm. However, in cases where the team determines the student poses a high risk to self which cannot be addressed solely via school policies and procedures, further evaluation by a qualified mental health provider will be requested.

### Level 2 Responses

Administrative responses and interventions that are designed to prevent further behavior issues and keep the student in school. Depending upon the severity of a student's behavior, short-term removal of a student from the classroom may be appropriate. Level 2 responses **also** may include administering Level 1 responses.

### Corrective Actions

Corrective measures available to school administrators include but are not limited to the following:

#### *Student Contracts*
A written contract between a student and teacher/administrator agreeing to engage in appropriate behavior and the rewards/consequences for appropriate or inappropriate behavior.

#### *Time Out*
A student may be asked to briefly separate from an activity where inappropriate behavior has occurred to give the student time to calm down and return to the activity exhibiting more appropriate behavior.

#### *Warning*
Teachers, principals or a designee will discuss the offense with the offender in an attempt to resolve the issue.

#### *Before or After-School Detention*
Where appropriate, a student may be detained for a reasonable period of time before or after class and may be required during this time to engage in controlled and constructive activities as may reasonably contribute to better behavior. Parents of students assigned to detention time shall be notified at least one school day prior to the time to be served in order that there may be an opportunity to make transportation arrangements. Because the student remains in attendance, the Code of Conduct provides no appeal process beyond the decision of the principal. Before or after-school detention given by the principal's designee may be appealed to the principal whose decision is final.

#### *In-School Suspension*
In-school suspension (ISS) may be given for a number of hours or days (not to exceed 10 days per offense) at the discretion of the principal or designee. Because the student remains in attendance, School Board policy provides **no appeal process beyond the decision of the principal**. ISS given by the principal's designee may be appealed to the principal whose decision is final.

#### *Parent Conference*
A formal conference with parent (student if age appropriate) and teachers/administrators to discuss inappropriate behavior and possible solutions.

#### *Restitution*
Students may be expected to pay monetary restitution for vandalism, theft or other damage to school property. (e.g., damage to computers resulting from tampering, graffiti, etc.)

### *Retained in Office*
Students may be briefly sent to the office to speak to a school administrator about inappropriate behavior and to be given an opportunity to calm down and reflect on their behavior.

### *Saturday School*
A student may be assigned to Saturday School and may be required during this time to engage in controlled and constructive activities as may reasonably contribute to better behavior. Parents of students assigned to Saturday School shall be notified at least one school day prior to the time to be served in order that there may be an opportunity to make transportation arrangements. Because the student remains in attendance, the Code of Conduct provides no appeal process beyond the decision of the principal. Saturday School assigned by the principal's designee may be appealed to the principal whose decision is final.

### *Suspension from Extracurricular or Co-curricular Activities*
A student's privilege to participate in all or certain extracurricular or co-curricular activities and/or other school sponsored activities may be suspended for a fixed period of time or until certain specified conditions have been fulfilled. Suspension from extracurricular or co-curricular activities may be imposed in conjunction with other penalties. Parents shall be notified of activity suspension in writing. Activity suspension assigned by the principal's designee may be appealed to the principal whose decision is final.

### *Teacher Removal of Student from Class*
Teachers have the initial authority to remove students from class for disruptive behavior. Disruptive behavior is defined as a violation of School Board regulations governing student conduct that interrupts or obstructs the learning environment. (*Code of Virginia* §22.1-276.2)

### *Bus Suspension*
A student's privilege to ride in a school vehicle may be suspended by the school principal, assistant principal or, in their absence, a designee (except as cited in §22.1-221 of the *Code of Virginia*, "Transportation of children with disabilities.")

## Level 3 Responses

Depending upon the severity, chronic nature of a behavior, and/or safety concerns, Level 3 responses may result in a student's short-term removal from school. Level 3 responses may also include administering Level 1 responses.

### *Out-of-School Suspension*
A student's privilege to attend school may be suspended for 1 – 10 days by the school principal, assistant principal, or in their absence, a designee, according to all applicable law and to the procedures set out in this *Code of Student Conduct* and for the offenses contained herein. Students will receive credit for work done while on suspension when the work is received no later than the day the students return to school. Students are not permitted on any FCPS property while suspended. Except as provided in § 22.1-277.07 or 22.1-277.08 *of the Code of Virginia*, **no student in preschool through grade three shall be suspended for more than three school days or expelled from attendance at school, unless** (i) the offense involves physical harm or credible threat of physical harm to others, or (ii) the division superintendent or his designee finds that aggravating circumstances exist, as defined by the Department of Education.

## Level 4 Responses

Level 4 responses require a report to the Superintendent or his designee. Level 4 responses include, but are not limited to, all out-of-school suspensions; threat assessment reports; and, physical restraint reports. Level 4 responses may **also** include administering Level 1 responses.

### *Recommendation for Long-Term Suspension*
A student's privilege to attend school may be suspended for 11-45 days by the division superintendent or his designee, according to all applicable law and to the procedures set out in this *Code of Student Conduct* for the offenses contained herein. A long-term suspension may extend beyond a 45-school-day period but shall not exceed 364 calendar days if (i) the offense is one described in § 22.1-277.07 or 22.1-277.08 of the *Code of Virginia* or involves serious bodily injury or (ii) the school board or division superintendent or his designee finds that aggravating circumstances exist, as defined by the Department of Education. A principal may recommend long-term suspension, but the decision to long-term suspend a student must be made by the Superintendent or his designee.

## Level 5 Responses

Level 5 responses are reserved for those behaviors that require a referral to the Superintendent or his designee. Level 5 responses may **also** include administering Level 1 responses.

### *Long-Term Suspension*
A student's privilege to attend school may be suspended for 11-45 days by the division superintendent or his designee, according to all applicable law and to the procedures set out in this *Code of Student Conduct* for the offenses contained herein. A long-term suspension **may extend beyond a 45-school-day period but shall not exceed 364 calendar days if** (i) the offense is one described in § 22.1-277.07 or 22.1-277.08 of the *Code of Virginia* or involves serious bodily injury or (ii) the school board or division superintendent or his designee finds that aggravating circumstances exist, as defined by the Department of Education.

### *Expulsion*
A student may be expelled from school by the School Board. Expulsion is defined as removal from school for 365 days or more. If expelled, a student may only return if granted permission to do so by the School Board.

### *Mandatory Expulsion*
The *Code of Virginia* §§22.1-277.07 and 22.1-277.08 mandate expulsion for firearm possession or use or possession of a controlled substance, imitation controlled substance, marijuana, synthetic cannabinoid, as defined in Chapter 34 of Title 54.1 and §18.2-247 of the *Code of Virginia*, on school property or at a school sponsored activity. The division superintendent may determine, based on the facts of the case that special circumstances exist and another form of disciplinary action is appropriate. Nothing in this section shall be construed to require a student's expulsion regardless of the facts of the particular situation.

### *Referral to Alternative Education Program*
The School Board may, in accordance with the procedures set forth in this section and upon a finding that a student has been (i) charged with an offense relating to the Commonwealth's laws or with a violation of School Board policies regarding weapons, alcohol or drugs, or intentional injury to another person; (ii) found guilty or not innocent of a crime that resulted in or could have resulted in injury to others, or for which the disposition ordered by a court is required to be disclosed to the division superintendent pursuant to the *Code of Virginia* §16.1-305.1; (iii) found to have committed a serious offense or repeated offenses in violation of school board policies; (iv) long-term suspended pursuant to the procedures in this section; or (v) expelled from school attendance pursuant to the procedures in this section, require the student to attend an alternative education program as provided in *Code of Virginia* §§22.1-209.1:2 or 22.1-277.2:1.

### *Participation in a Drug, Alcohol, or Violence Intervention, Prevention or Treatment Program*
Participation may be required at parent expense or at school division expense as part of a superintendent or School Board disciplinary decision.

## Administrative Requirements for Addressing Bullying, Harassment and Misconduct

School administrators are required to investigate all allegations of bullying, harassment and threat and to document their investigation using FCPS form 7-3.1 F2.  A copy of the form will be retained by the administrator and copies forwarded to the building principal and the Executive Director for Student and Special Education Services.

School administrators are required to refer any student to the formal FCPS Response to Intervention (RtI) process for the following:

1. Multiple incidents of in-school suspension that equal or exceed seven days of in-school suspension.

2. Multiple incidents of out-of-school suspension that equal or exceed five days of out-of-school suspension.

Requests to waive this requirement must be submitted to the Executive Director for Student Services. (Ref 7-3.1)

## Corporal Punishment

No teacher, principal or other person employed by the School Board shall subject a student to corporal punishment.  For the purposes of this section, "corporal punishment" means the infliction of, or causing the infliction of, physical pain on a student as a means of discipline.  This definition shall not include physical pain or discomfort caused by participation in practice or competition in an interscholastic sport, or participation in physical education or an extracurricular or co-curricular activity.  In addition, this definition shall not include physical pain, injury or discomfort caused by the use of incidental, minor or reasonable physical contact or other actions designed to maintain order and control or the use of reasonable and necessary force permitted by the *Code of Virginia* §22.1-279.1. (Ref 7-3.1)

**Conduct Violations and Accompanying Consequences (7-3.1 A)**

The following list of conduct violations and accompanying consequences is not meant to be all-inclusive. *The School Board or appropriate school official may invoke disciplinary measures for conduct not listed, but which, by common understanding, a student would know or reasonably should have known would be conduct detrimental to the maintenance of good order and/or the academic process.* The building principal or designee has the discretion to implement any administrative option for addressing misconduct as defined herein he/she deems appropriate for Level 1 – Level III offenses. Additionally, the School Board may, upon the recommendation of the superintendent, approve a consequence up to and including expulsion for any offense that is so egregious in nature as to warrant a consequence greater than is specified otherwise in this code in any case where sufficient cause exists for such discipline. Conversely, a principal may also seek to obtain a waiver with regard to the assignment of required consequences in light of extenuating circumstances in order to provide appropriate disciplinary alternatives.   The waiver request shall be submitted to the superintendent in writing.

### *Level 1 Offenses*

The principal, with the approval of the division superintendent has the authority to promulgate school rules consistent with the rules contained herein and to administer such rules.  **A student's failure to follow published school rules may result in any administrative option or combination of options for addressing misconduct up to and including a maximum of three (3) days suspension from school.  *For example*:**

  a. Classroom disruption
  b. Disrespectful behavior
  c. Defiance: Insolence directed at a staff member to include insubordination or disregard of a verbal instruction or direction
  d. Dress code violation
  e. Failure to follow school rules
  f. Minor safety violation
  g. Possession of personal items banned by published school rules

### *Level 2 Offenses*

**The following misconduct may result in any administrative option for addressing misconduct or combination of options up to and including a maximum of five (5) days suspension from school:**

  a. <u>Electronic devices</u>: Unauthorized use of cellular telephones, smartphones, laptop computers, tablets, personal digital assistants, portable music or video players, and/or other portable communication and electronic devices as defined in Prohibited Behaviors herein
  b. <u>Intentionally causing a computer to malfunction</u>: or altering, or erasing any computer data, computer programs or computer software, or downloading unauthorized programs in a manner resulting in an <u>extraordinary disruption</u> of a school program
  c. <u>Making</u>: or causing to be made an unauthorized or <u>illegal copy,</u> in any form, of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network that <u>significantly compromises school or student records</u>
  d. <u>Misrepresentation</u>:  Falsifying signatures on notes, excuses, or other school documents (includes producing false notes, excuses or other school documents by computer; cheating; lying)
  e. <u>Technology violations</u>:  Unauthorized or illegal use of computers or computer networks, including any violation of the Fauquier County Public Schools Technology Acceptable Use Policy (includes both classroom and distance learning environments)

     f.     <u>Vandalism</u>:  Purposefully cutting, defacing, tampering with or otherwise damaging in any way property belonging to the school division or to other persons. (Includes confirmed intent to vandalize or tamper with property.)

### *Level 3 Offenses*

**The following infractions may result in any administrative option for addressing misconduct or combination of options up to and including a suspension for a maximum of ten (10) days:**

     a.     <u>Assault and Battery</u>: Offensive and intentional touching or striking of an individual against his or her will, which may also include mutual participation in a fight where a participant intentionally inflicts pain or causes bodily harm without the use of a firearm or weapon.

     b.     <u>Bullying</u>:  Repeated, negative, aggressive behaviors intended to frighten, cause harm, or embarrass, which may include, but are not limited to verbal, electronic or written threats, teasing or physical harm.  This includes cyber-bullying (e-mail, social media, etc.) that occurs off school property that impacts the orderly operation of school and the safety and well-being of students while on school property or is reasonably foreseeable to cause a substantial disruption on school property. (See definition in Prohibited Behavior section on page 4.)

     c.     <u>Computer invasion of privacy</u>: Unauthorized or illegal use of a computer, computer network, or personal electronic device to examine personal information relating to another person.

     d.     <u>Computer tampering</u>:  Temporary or permanent removal of or downloading of computer data, computer programs, or computer software from or to a computer or computer network, resulting in a disruption to a school program.

     e.     <u>Fighting</u>: Any physical confrontation involving two persons that may result in no injury or minor injury, including kicking, shoving, pushing, and hitting.

     f.     <u>Fighting</u> (group): Any mutual physical confrontation involving three or more persons that may result in no injury or minor injury, including kicking, shoving, pushing, and hitting.

     g.     <u>Fire alarm/electronic surveillance equipment/building access equipment</u>:  Tampering with fire alarm system, keyless entry system and/or other electronic surveillance equipment.

     h.     <u>Harassment</u>:  Annoying or attacking a student or group of students or personnel that creates an intimidating or hostile educational or work environment. This includes engaging in verbal, written or electronic abuse such as name-calling, ethnic or racial slurs, or derogatory statements addressed publicly to others that may precipitate disruption of the school program or incite violence.  Harassment may also be non-verbal and may include, but is not limited to, embarrassing others; photographs that are offensive to others, etc.

     i.     <u>Minor physical altercation</u>:  Includes horseplay, scuffles that do not rise to the level of a fight

     j.     <u>Profanity/pornography</u>:  Use of vulgar acts, gestures, or profane language directed toward others and/or possession of pornographic or sexually explicit material.  This includes images taken or shared on a personal electronic device.

     k.     <u>Safety violations</u>:  Behavior that threatens the safety of students or staff.

     l.     <u>Sexual harassment and/or assault, unwelcome sexual advances</u>:  Engaging in conduct involving offensive, unwelcome, indecent, lewd, behavior including gender-based harassment that creates an intimidating, hostile or offensive environment.

     m.     <u>Sexual offenses without force</u>:  Lewd behavior, inappropriate sexual behavior and/or sexual contact on school property without force or threat. (This includes consensual sexual behavior.)

     n.     <u>Stalking</u>:  Stalking means willful, malicious and repeated following or similarly harassing a person over an extended period. Stalking can also include cyber-stalking (see Prohibited Behaviors) and seeking and obtaining the person's personal information in order to contact them.

o.     Theft:  Any theft of money or personal or public property and/or theft involving breaking and entering, including lockers (includes knowingly possessing stolen property and unauthorized or illegal use of school property including computer services).

p.     Trespassing while suspended or expelled: Students are not permitted on school property at any time while suspended or expelled without express permission from the Superintendent or as defined in Prohibited Behaviors herein.   This includes athletic events, dances, graduation ceremonies and all other FCPS activities on school property or in other counties or locations. Trespassing on school property during long-term suspension or expulsion will be reported to the Superintendent and School Board and will be considered when determining whether a student who has been long-term suspended or expelled may return to his/her base school.

q.     Tobacco (nicotine product) use/possession:  (includes nicotine vapor products and look-alikes) or distribution of tobacco or tobacco products, including nicotine vapor products.


## *Level 4 Offenses*

Serious Offenses

The following serious infractions may result in any administrative option for addressing misconduct or combination of options up to and including expulsion:

a.     Arson (deliberately setting a fire on school property)

b.     Bomb threat

c.     Campus/classroom disruption (major):  Creating a disruption or inciting other students to seriously disrupt the orderly operation of the classroom or school.

d.     Imitation Alcohol or Imitation (look-alike) Dangerous or Illegal Drugs: Use and/or Possession:  This includes nonalcoholic malt beverages, imitation anabolic steroids and other substances represented as dangerous or illegal drugs.

       First Offense: Up to ten (10) days out-of-school suspension, participation in a substance abuse evaluation, and up to 45-calendar days exclusion from participation and attendance in all extracurricular or co-curricular activities.  Failure to comply with the terms of the penalty may result in additional disciplinary consequences.

       Second Substance Abuse Offense of Any Kind:  Recommendation for expulsion, unless special circumstances exist and another form of discipline is deemed appropriate by the superintendent or his designee.

e.     Serious significant verbal, written or electronic threat to the safety and well-being of student(s) and/or staff (includes text message threats, social media threats, threats to use weapons (e.g., guns, knives) against students or staff)

f.     Hazing, as defined in *Code of Virginia* §18.2-56

g.     Gang activity of a serious nature

h.     Brandishing or threatening to use a weapon or use of a weapon not defined by the *Code of Virginia* as a firearm or knife. (E.g. pepper spray, or misuse of items such as pencils, keys, nails, chains, belts, to harm or threaten another person)

i.     Assault and battery (Egregious):  To include any assault on school personnel

23

j.    Threat and/or Intimidation: Placing a person in fear of bodily harm through physical, verbal, written or electronic threats without displaying a weapon or subjecting the person to actual physical attack.

k.    Use and/or possession of an incendiary device:  To include fireworks, firecrackers or similar devices.

l.    Weapon:  Possession of a device that does not meet the definition of "weapon" or "destructive device" as defined elsewhere in the Code of Student Conduct, but which may be used as a weapon or which might present a danger to others.  This includes, but is not limited to, a knife having a metal blade shorter than three (3) inches, box cutters, razor blades, or ammunition.

Nothing in this section shall be construed to require a student's expulsion regardless of the facts of the particular situation.

### *Level 5 Offenses*

**The violation of the following offenses shall result in suspensions or expulsions as indicated: Level 1 responses may be used in addition to Level 5 responses.**

Drugs, Alcohol and Anabolic Steroids

The *Code of Virginia* §22.1-277.08 states that the School Board shall expel from school attendance any student determined to have possessed a controlled substance, imitation controlled substance, or marijuana on school property, at a school-sponsored activity, or in a Drug-Free School Zone. The *Code* also provides provisions that authorize the School Board to invoke other disciplinary actions.  Nothing in this section shall be construed to require a student's expulsion regardless of the facts of the particular situation.   In Fauquier County, the School Board has approved the following consequences for the following violations:

a.    Drugs-Distribution:  Selling, supplying, or bringing to school to share with others, (or intent to sell, supply, or share with others), dangerous or illegal drugs or substances, which include anabolic steroids, marijuana, Schedule I & II drugs, inhalants, drug paraphernalia, synthetic cannabinoids, or over-the-counter drugs and look-alike drugs or prescription medication.

First Offense: Recommendation for expulsion, unless special circumstances exist and another form of discipline is deemed appropriate by the superintendent or his designee.

b.    Alcohol-Distribution:   Selling, supplying, or bringing alcohol (or substances represented as alcohol) to school to share with others.

First Offense: Recommendation for expulsion, unless special circumstances exist and another form of discipline is deemed appropriate by the superintendent or his designee.

c.    Alcohol-Use, Under the Influence and/or Possession, Solicitation of Alcohol:

First Offense: Up to ten (10) days out-of-school suspension, participation in a substance abuse evaluation, and up to 45-calendar days exclusion from participation and attendance in all extracurricular or co-curricular activities.  Failure to comply with the terms of the penalty may result in additional disciplinary consequences.

Second Substance Abuse Offense of Any Kind:  Recommendation for expulsion, unless special circumstances exist and another form of discipline is deemed appropriate by the superintendent or his designee.

d.  <u>Drug-Use, Under the Influence and/or Possession of Dangerous or Illegal Drugs, or Paraphernalia, Solicitation of Drugs</u>:  This includes, but is not limited to, anabolic steroids, Schedule I & II drugs, the possession of drug paraphernalia, inhalants, synthetic cannabinoids, inappropriate use or possession of OTC or prescription medication:

First Offense: Up to ten (10) days out-of-school suspension, participation in a substance abuse evaluation, and up to 45-calendar days exclusion from participation and attendance in all extracurricular or co-curricular activities.  Failure to comply with the terms of the penalty may result in additional disciplinary consequences.

Second Substance Abuse Offense of Any Kind:  Recommendation for expulsion, unless special circumstances exist and another form of discipline is deemed appropriate by the superintendent or his designee.

<u>Substance Abuse Counseling and Drug Testing</u>

Students who have been disciplined for a substance abuse infraction and subsequently long-term suspended or expelled may be required to participate in group counseling at Southeastern Alternative School and may be required by the School Board to submit to random drug testing for the duration of the discipline sanction.

<u>Interscholastic Athletics and Anabolic Steroid Use</u>

In addition to the consequences listed above, a student who is a member of a school athletic team will be ineligible for two years to compete in interscholastic athletic competition if the school principal and the superintendent determine that the student used anabolic steroids during the training period immediately preceding or during the sport season of the athletic team, unless such steroid was prescribed by a licensed physician for a medical condition.
(FCPS Regulation 7-3.1A)

<u>Weapons</u>

The *Code of Virginia* §22.1-277.07 states that a student who is determined to have possessed a 'firearm," "destructive device," "firearm muffler" or "firearm silencer' or a 'pneumatic gun' as defined in this document or by applicable law, on school property or to a school-sponsored activity shall be expelled.  The *Code* also provides provisions that authorize the School Board to invoke other disciplinary actions.  Nothing in this section shall be construed to require a student's expulsion regardless of the facts of the particular situation.  In Fauquier County, the School Board has approved the following consequences for the below-stated violations:

Additionally, any student who brings or possesses a weapon, as defined within this section, to or on school property may be referred to the criminal justice or juvenile justice system as required by the *Code of Virginia.*

e.  <u>Carrying, use or possession of any firearm, dangerous device, or weapon in any school building, on school grounds, in any school vehicle or at any school-sponsored event</u> any of the items listed below.

First Offense: Recommendation for expulsion, unless special circumstances exist and another form of discipline is deemed appropriate by the superintendent or his designee.

This includes:

- Any stun weapon
- Any knife having an exposed metal blade three inches in length or longer
- Any pistol, shotgun, stun gun, revolver, or other firearm listed in Code of Virginia §22.1-277.07 (E) designed or intended to propel a missile of any kind, including a rifle
- Any dirk, bowie knife, switchblade, ballistic knife, or razor type knife, slingshots, spring sticks, brass or metal knuckles, or blackjacks (this does not include razor blades or box cutters)
- Any flailing instrument consisting of two or more rigid parts connected in such a manner as to allow them to swing freely, which may be known as nunchahka, nun chuck, shurikan, or fighting chain
- Any disc of whatever configuration, having at least two points or pointed blades, and which is designed to be thrown or propelled and which may be known as a throwing star or oriental dart
- Unloaded firearms in closed containers
- Any pneumatic gun designed to expel a BB or pellet by action of pneumatic pressure. This includes, but is not limited to, air rifles, Airsoft guns, BB guns, paintball guns, toy guns or look-alike guns
- Any weapon of like kind as those enumerated above including look-alike weapons

### *Exceptions*

Curriculum - An exception to this policy may be made for students participating in an authorized part of the curriculum, extracurricular or co-curricular activity or team involving the use of firearms, or in any organization permitted by the school to use the premises.

Food Preparation or Service - A student possessing a knife, which is (1) customarily used for food preparation or service and (2) is possessed by the student for the sole purpose of food preparation or service shall not be subject to mandatory expulsion. However, the student may be subject to the appropriate disciplinary action for the possession and/or misuse of any knife.
(FCPS Regulation 7-3.1A)

## Search and Seizure

To maintain order and discipline in the schools and to protect the health, safety and welfare of students and school personnel, school authorities may search a student, a student's purse or book bag, a student's personal electronic devices (phones, tablets, computers, etc.), student lockers or student automobiles and may seize any illegal, unauthorized, or contraband materials discovered in the search, consistent with applicable law.

Lockers and other storage facilities made available to students for temporary storage of their personal possessions remain under the joint control of students and the school administration. The school administration has the right to search lockers, desks, and other storage facilities for items which violate law, school policies and regulations, or which may be harmful to the school or its students. Lockers and other storage facilities are subject to periodic searches for any reason at any time without notice, without student consent, and without a search warrant.

To ensure a drug-and-alcohol-free learning environment for students and staff, school officials may, at their discretion, request assistance from a variety of available resources, including the Fauquier County Sheriff's Department, substance abuse counselors, the Fauquier County Health Department, and the active and passive canine teams coordinated by the local law enforcement agencies.

The school administration has the right to search any student when there is a reasonable suspicion that the student possesses an item which violates law, school policies and regulations, or which may be harmful to the school or its students In no event shall strip-searches of students be conducted.

At times, at the principal's discretion and in accordance with School Board policy and all applicable law, metal detectors may be used to assist school staff in ensuring the safety of students, school staff, and guests.

The student's individual right to privacy and freedom from unreasonable search and seizure is balanced by the school's responsibility to protect the health, safety, and welfare of all persons within the school community. Should illegal materials be found during a search, law enforcement officials will be notified. Any contraband seized by school personnel pursuant to FCPS regulation 7-3.3 may be admissible in any subsequent criminal proceeding. The student or employee in violation of the policies, rules and regulations of the Fauquier County School Board shall be disciplined in accordance with the rules of the regulations of the School Board, regardless of whether criminal proceedings are pursued.
(FCPS Policy and Regulation 7-3.3)

## Use of Metal Detectors

Weapons or explosives of any kind are prohibited on school property, in school buildings or at school-related functions. Possession of weapons or explosives is a violation of School Board policy, federal and state law and will subject an individual to disciplinary action and possible criminal penalties.

The administration possesses the authority to take all reasonable, necessary and proper steps, including but not limited to the use of stationary or mobile metal detectors, provided by law and School Board policies and regulation to safeguard students, employees and property of Fauquier County Public Schools.
The purpose of the metal detector scan is to prevent and deter individuals from carrying weapons and explosive devices onto School Board property. At all times, the degree and nature of the inspection are not to exceed that which is necessary to allow staff to discharge their responsibility in ensuring the safety of persons and property.

Procedures governing the use of metal detectors are set forth below.

1. The division superintendent or building principal in a non-delegable duty shall approve the use of metal detectors in school, on school property or specific school activities.

2. Only personnel trained in the use of metal detectors shall be authorized to conduct metal detector screenings. Training for personnel shall be arranged through the division superintendent's office.

3. In the event metal detectors are to be used, signs shall be posted to notify all persons that, as a condition of entrance to the school or school-related activity, they will be required to pass through or submit to a metal detector screening.

4. When a metal detector is being used, all individuals who wish to enter the school or school-related activity shall use only the facility entrances designated.

5. School officials may search a particular individual(s) when there is a reasonable suspicion that the individual(s) is in possession of weapons or explosives.

6. If a metal detector activates on an individual, the individual will have the option of removing the item that caused the alarm and being scanned with a hand-held wand, or receiving a refund and exiting the premises. Individuals failing to comply with the safety procedures prescribed for Fauquier County Public School's events will be refused entry.

7.      Any briefcase, knapsack, purse, personal electronic device, parcel or other package causing the activation of a metal detector shall be subject to inspection.

8.      All property removed from a person as a result of this procedure and not defined as contraband shall be returned to the person.  Property that is defined as contraband, even though it may not have been capable of activating the metal detector, shall be confiscated and turned over to the local law enforcement or other appropriate agency for proper handling.  Any contraband seized by school personnel pursuant to FCPS regulation 7-3.3 may be admissible in any subsequent criminal proceeding.  The student or employee in violation of the policies, rules and regulations of the Fauquier County School Board shall be disciplined in accordance with the rules of the regulations of the School Board, regardless of whether criminal proceedings are pursued.

9.      Any student or employee who refuses to cooperate with personnel performing their duties under this regulation may be subject to discipline in accordance with School Board policy and regulation and required to leave school property.  Any person who refuses to cooperate with personnel performing their duties under this regulation shall be required to leave school property.
        (FCPS Regulation 7-3.3)

## Investigations and Questioning of Students

### *School Incidents*

Disciplinary actions are primarily the responsibility of the principal.  The school division uses the school resource officer (SRO) to assist the principal with disciplinary responses for school-related incidents.  The SRO is a sworn deputy sheriff and may be assigned by the principal to investigate suspected violations of the *Code of Virginia*.  The principal or designee may interview students without parental consent if the student is capable of consenting, and does consent, to the interview.  The SRO will only interview students who are suspected of having violated the *Code of Virginia*. The SRO may interview students without parental consent if the student is capable of consenting and does consent to the interview.  The SRO must report all findings to the principal.  The principal will inform the parent of school disciplinary decisions. Appropriate due process will be followed as specified herein.

Where an incident occurs on school grounds during the school day that is potentially a felony under Virginia law, the principal shall immediately contact local law enforcement, or an SRO. Law enforcement will follow all appropriate legal procedures in terms of advising students of their rights and conducting a thorough investigation.  The principal shall follow applicable School Board policy according to the *Code of Student Conduct* in determining the involvement of a student or students in the incident and the type of disciplinary action to be taken on the part of the school.

Certain misconduct that may constitute just cause for suspension or expulsion may also constitute probable cause that a state or federal law has been violated.  A principal shall impose penalties provided by School Board policy for misconduct and may seek, through the appropriate legal means, criminal adjudication of the misconduct.   School administration and law enforcement officials will make every effort to work cooperatively with the least possible disruption to either the schools or local law enforcement.

### *Non-school Incidents*

Social Services - Principals shall allow a child protective services worker with proper identification to interview a student who is an alleged victim of abuse and/or neglect.  A private setting should be provided. Parental notification is the responsibility of the Department of Social Services and should not be made by school personnel.

Law Enforcement – During the school day, on school grounds, law enforcement officers may question students without the permission of the parents or guardian, provided that the officer ascertains that the

student is capable of consenting to, and does consent to, the interview. The principal shall be contacted immediately, and shall make a reasonable effort to contact the parent or guardian. If the parent or guardian cannot be present for the conference, then the principal shall be present throughout the interview.

The student shall be called or escorted to the office by the principal. Under dangerous circumstances, the principal may ask the law enforcement officer to accompany him/her to the classroom to escort the student to the office. A private place shall be provided for the conference/interview. The parent, child, and/or law enforcement officer may request that a staff member be present as an observer while the student is being questioned. If the law enforcement officer removes the student from the school grounds, the principal shall immediately contact the parent or guardian of the student and the superintendent's office.

The Fauquier County School Board encourages law enforcement officers, when possible, to make all reasonable attempts to conduct such interviews during non-school hours and off school premises to avoid disrupting the school operations and to avoid removing students from class.
(FCPS Policy 7-3.1)

## Expectations and Consequences for School Bus/Vehicle Passengers

While on school property or while under the supervision of school authority (including going to and from school), no student shall violate any laws or regulations of the School Board and the school. The use of the term "bus" herein encompasses all school vehicles used to transport students. Students who become a serious discipline problem on the school bus or consistently demonstrate inappropriate behavior shall have their riding privileges suspended by the principal. In such cases, the parents of the suspended student shall be responsible for transporting their child to and from school.

The *Code of Virginia*, §22.1-176, permits School Boards to provide transportation for students; however, the law does not require that transportation be provided except as cited in §22.1-221, "Transportation of children with disabilities." Riding a school bus is a privilege. Students and their parents will be informed that violations of standards set forth in the *Code of Student Conduct* on school buses will be cause for a referral to a school administrator and shall result in appropriate disciplinary penalties. School buses are considered School Board property, and students who fail to meet the expectations of the *Code of Student Conduct* may have their riding privileges revoked for a specified time or permanently.

Bus conduct rules shall apply to all students in all situations in which the use of school buses is permitted, such as: regular transportation to and from school; field trips; athletic trips; special after-school activities; transportation from base schools to locations where specialized educational programs are available; and any trip involving the use of a school bus to transport students for a school activity.

### *Expectations for Behavior of Bus Passengers*

Proper behavior is required of students to and from school, at bus stops and while riding the bus to assure that the rights of others are respected. The driver of the bus has the authority and the responsibility to maintain order and safe conditions on the bus. When the driver requires assistance to resolve a potentially harmful situation, the schools served by the driver will render assistance. On the first day of school, drivers shall discuss school bus safety and proper bus behavior with students.

The following expectations for bus passengers are not all inclusive. The School Board or principal may invoke disciplinary measures for conduct not listed here, but which, by common understanding, would be considered detrimental to the safety of all bus riders and drivers.

Bus passengers shall:

1. Arrive at assigned stop at least five (5) minutes before scheduled pickup, and in the event the student does not arrive at the assigned stop as scheduled and misses the bus, the student is responsible for providing his/her own transportation;
2. Stand back from the road while waiting for pickup and at all times the bus is in motion;
3. Follow safe boarding procedures by only crossing roadways after the bus has activated its signals and all vehicles in both directions are completely stopped, and the driver signals that it is safe to cross;
4. Show respect for fellow students and the driver;
5. Follow directions the first time they are given;
6. Keep all objects and themselves inside the bus;
7. Refrain from throwing objects;
8. Remain seated while the bus is in motion;
9. Use assigned seats; however, seat assignments may change at the discretion of the school division;
10. Obey the driver;
11. Provide a written request from parents or guardians, subject to approval of school principal, to go home on an alternate route;
12. Meet all expectations stated in the *Code of Student Conduct*.

Bus passengers shall NOT:

1. Run beside or after a moving bus;
2. Curse, swear, talk loudly or tease;
3. Push, shove or fight;
4. Litter or damage the bus. If damage is determined, students will pay for any damage to the bus and/or equipment caused by the student;
5. Eat;
6. Smoke, chew or use tobacco products or use nicotine vapor products (electronic cigarettes);
7. Chew gum;
8. Use personal electronic devices in violation of the Acceptable Use Policy or the *Code of Student Conduct*;
9. Use personal electronic devices that interfere with the safe operation of the school bus;
10. Use personal electronic devices to photograph or video other students;
11. Carry large items on the bus that will not easily fit on the student's lap.

NOTE: Bus passengers are permitted to bring water in an unbreakable container (no glass) on the school bus.

To create an effective countywide system of bus discipline, and to maintain fair, uniform, and consistent enforcement of School Board expectations for bus conduct, each school will assign an administrator to address bus discipline referrals and use a countywide bus referral form.
(FCPS Policy 7-3.1)

## Teacher Removal of Students from Class

The teacher shall have initial authority to remove a student from class for disruptive behavior that interrupts or obstructs the learning environment as provided by *Code of Virginia* §22.1-276.2. This policy is not applicable to referrals whereby students are sent from class to meet with the school administrators about a particular issue or are sent from the classroom for a limited duration of time. Nor is this policy applicable to student suspensions or expulsions. Removal from the classroom is part of a continuum of interventions available to address problems of student conduct.

Nothing herein shall preclude the immediate removal of a student for behavior that might warrant suspension or expulsion from school nor limit or restrict other regulations related to maintaining student behavior and discipline.

30

A teacher may initially remove a student from class using the following criteria:

1.    The removal of the student by a teacher is necessary to restore a learning environment free from interruptions or obstructions caused by the student's behavior.

2.    The removal of a student by a teacher occurs only after teacher or administrative interventions have failed to end the student's disruptive behavior. Whenever possible, teachers should seek to involve parents when disruptive behaviors are first identified.

3.    The removal of a student by a teacher is an appropriate response to student behavior that violates this *Code of Student Conduct*.

4.    The teacher gives written notice of the student's behavior to the parent.
      (FCPS Policy 7-3.1)

### Suspensions and Expulsions

The School Board may suspend or expel students from attendance at school for sufficient cause.

#### *Activity Suspension*

Activity suspension is generally limited to the number of days a student is suspended from school. Building administrators have the authority to impose an activity suspension of a longer or shorter duration than the length of suspension from school. In such instances, the building administrator will provide in writing his/her rationale for the modified activity suspension.

Students on suspension for a *first time incident* for the use and/or possession of alcohol and/or illegal drugs are not allowed to participate nor attend extracurricular or co-curricular activities for the period of the suspension and for a maximum period of up to 45 calendar days from the time of the infraction as determined by school administration.

Because the student remains in attendance at school, School Board policy provides **no appeal process beyond the decision of the principal**. Activity suspension given by the principal's designee may be appealed to the principal whose decision is final.

#### *In-School Suspension*

In-school suspension (ISS) may be given for a number of hours or days (not to exceed 10 days per offense) at the discretion of the principal or the principal's designee. Because the student remains in attendance, School Board policy provides **no appeal process beyond the decision of the principal**. ISS given by the principal's designee may be appealed to the principal whose decision is final.

#### *Short-Term Suspensions (1-10 days)*

A student may be suspended for not more than ten (10) school days by either the school principal, any assistant principal, or, in their absence, a designee. The principal or assistant principal may suspend the student after giving the student oral or written notice of the charges against him/her and, if the student denies the grounds for the charges, an explanation of the facts as known to school personnel and an opportunity to present the student's version of what occurred. In the case of any student whose presence poses a continuing danger to persons or property, or whose presence creates an ongoing threat of disruption, the student may be removed from school immediately and the notice, explanation of facts, and opportunity to present his/her version shall be given as soon as practicable thereafter. Except as provided in § 22.1-

277.07 or 22.1-277.08 of the *Code of Virginia*, **no student in preschool through grade three shall be suspended for more than three school days or expelled from attendance at school, unless** (i) the offense involves physical harm or credible threat of physical harm to others, or (ii) the division superintendent or his designee finds that aggravating circumstances exist, as defined by the Department of Education.

Upon suspension of any student, the principal, or assistant principal responsible for such suspension shall report the facts of the case in writing to the superintendent, and to the parent or guardian of the student suspended.

Any notice to the parent or guardian of a student who is suspended for not more than ten (10) days shall be in writing and shall include the following information:

1. The length of the suspension;
2. The student's right to return to regular school attendance upon the expiration of the suspension;
3. The right to appeal the suspension; and,
4. Information regarding the availability of community-based educational programs, alternative education programs or intervention programs.

The costs of any community-based educational, alternative education, or intervention program that is not a part of the educational program offered by the Fauquier County Public Schools that the student may attend during his suspension shall be borne by the parent(s) or guardian of the student.

### *Sending Students Home*

Short-term suspension normally will take effect on the day after the misconduct. Where the student's presence poses a continuing danger to persons or property or an ongoing threat of disruption, the principal shall attempt to reach the student's parents and request that they come to the school for the student on the day of the offense.

### *Suspension and School Closings*

Days when school is not in session due to scheduled closings and/or emergency closings such as inclement weather do not count toward completion of a student's assigned suspension.

### *Responsibility for School Work*

Any student who is suspended shall be given the opportunity to make up missed work. It shall be the responsibility of the student to initiate the effort necessary for making up work missed. Students will receive credit for work done while on suspension when the work is received no later than the day the student returns to school. Schools will provide direction and assistance to students in completing make-up work, quizzes/tests, and projects affecting their grade.

### *Trespassing*

Students who are suspended are not permitted on school property for any reason without the express permission of the building principal or superintendent.

### *Short-Term Suspension Appeals Process (Suspensions of 10 days or less)*

The parent or guardian has three (3) school days following written notice of suspension in which to appeal the suspension to the superintendent. Upon receipt of a written request for appeal, (Petition for Review or Hearing), the superintendent will give the principal an opportunity to address the appeal. If the appeal is not resolved by the principal, the superintendent shall review the action taken by the principal and uphold, modify or deny such action based on an examination of the record of the student's behavior. The

superintendent will determine if there is agreement regarding the material facts as reported by school administration and whether the discipline consequence assigned by school administration aligns with the *Code of Student Conduct.* The building principal will determine whether the student will be placed in class, in-school detention or will stay at home pending the appeal determination. The decision of the superintendent is final.

### *Long-Term Suspensions (11-45 days)*

A long-term suspension is any disciplinary action whereby a student is not permitted to attend school for more than ten (10) school days, but fewer than 46 calendar days. A long-term suspension may extend beyond a 45 school day period, but shall not exceed 364 calendar days if (i) the offense is one described in § 22.1-277.07 or 22.1-277.08 of the *Code of Virginia* or involves serious bodily injury or (ii) the school board or division superintendent or his designee finds that aggravating circumstances exist, as defined by the Department of Education. A student may be suspended from attendance at school for more than ten (10) school days after the student and his parent or guardian have been provided written notice of the proposed action and the reasons therefore and of the right to a hearing before the superintendent. Once a principal determines that a suspension of more than ten (10) school days is warranted, the principal shall suspend the student for ten (10) school days and forward to the superintendent a written request that the suspension be for more than ten (10) school days and a recommendation for the length of the long-term suspension.

The student will remain at home until the superintendent has made a determination regarding the long-term suspension. The superintendent may deny, alter or uphold the principal's recommendation. Board policy allows the superintendent to require students suspended long-term to attend an alternative education program provided by the School Board for the term of the suspension. The superintendent shall notify the student and the student's parents in writing within ten (10) school days regarding the decision of the superintendent. This notice shall include the following information:

1. The length of the suspension;
2. Whether the student will be required to attend an alternative education program;
3. That the student or parent(s) or guardian may appeal the superintendent's decision regarding the long-term suspension or alternative placement to the School Board;
4. Information regarding the availability of community-based educational programs, alternative education programs or intervention programs; and,
5. The student's right to return to regular school attendance upon the expiration of the suspension.

The costs of any community-based educational, alternative education, or intervention program that is not a part of the educational program offered by the Fauquier County Public Schools that the student may attend during his/her suspension shall be borne by the parent(s) or guardian of the student.

If the student or parent or guardian is satisfied with the alternative education placement, the decision of the superintendent shall be final.

### *Long-Term Appeals Process - First Level of Appeal (Appeal of Principal's Recommendation)*

Following receipt of written notice of the proposed suspension from the principal by the student and his/her parent(s) or guardian, a hearing before the superintendent may be requested. This request must be in writing and made within five (5) school days of the date of receipt of the notice.

Within five (5) school days of the date of the parent'(s) or guardian's request for a hearing, the superintendent shall notify the parent(s) or guardian and student of the following:

1. The time and place of the hearing;

2.   The student's right to be represented by his/her legal counsel at the hearing, the cost of which services shall be borne by the parent(s) or guardian;

3.   The student's right to produce witnesses and present evidence at the hearing; and,

4.   That the student and parent must appear at the hearing or the appeal will be deemed to have been waived.

5.   That the student will remain on suspension until the superintendent has made a determination on the appeal.

Within two (2) school days, (or as soon as practicable thereafter), following the hearing before the superintendent, the parent or guardian and student will be orally notified of the decision of the superintendent to support the recommendation of the principal, or to increase or decrease the length of the suspension.  A written determination letter will follow within ten (10) school days.

### *Long-Term Appeals Process - Second Level of Appeal (Appeal of Superintendent's Decision)*

If the student or parent(s) or guardian is dissatisfied with the decision of the superintendent, they may request a review of the record by the School Board by submitting a written petition to the superintendent within five (5) school days after receipt of the written decision of the superintendent. The student will remain under suspension while the appeal is pending unless the recommended time period for the suspension reflected in the decision of the superintendent expires.  The School Board will have thirty (30) days from the date the written appeal is received in which to render its decision regarding the appeal of the superintendent's decision.

### *Expulsions (365 days or more)*

An expulsion is any disciplinary action imposed by the School Board or a committee thereof, whereby a student is not permitted to attend school within the school division and is ineligible for readmission for 365 calendar days after the date of the expulsion.  Once a principal determines that expulsion is warranted, the principal shall suspend the student for ten (10) school days and forward to the superintendent a written request that the student be expelled.  The superintendent shall conduct a hearing on the matter and may uphold, alter or deny the principal's recommendation.  Every attempt will be made to schedule the superintendent's hearing during the ten (10) school day suspension. The student will remain at home until the superintendent has made a determination/recommendation regarding the expulsion. School administrators, the student and the student's parent(s)/guardian will attend the hearing; however, if the student and parent(s) fail to attend the hearing, it shall be conducted in their absence. The superintendent shall notify the student and the student's parent(s) orally within two (2) school days, (or as soon as practicable thereafter), and in writing within ten (10) school days regarding the decision. If the request for expulsion is upheld, the student and his/her parent or guardian will be provided with written notice of the proposed action and the reasons therefore and that a hearing before the School Board will be conducted. The written notice shall contain the following information:

1.   The superintendent's hearing decision and recommendation to the School Board;

2.   The notice of a hearing before the School Board, including time, date and location;

3.   The right to representation at the hearing;

4.   The right to appeal the superintendent's decision to the School Board (student and parent must attend.)

5.   The right to attend the School Board hearing and notice that attendance is not required if the expulsion is not disputed;

6.   The right to complete homework while the School Board hearing is pending.

7.   That the student will remain suspended at home until the School Board has rendered a decision.

If the student and parent(s) or guardian(s) disagree with the proposed expulsion, a written request for an appeal hearing before the School Board must be submitted to the superintendent within five (5) school days

34

after receipt of written notice of the proposed expulsion. The School Board shall conduct a hearing on the proposed expulsion within thirty (30) calendar days thereafter. **Regardless of whether a student exercises his or her right to a hearing before the School Board, the School Board shall confirm or disapprove every proposed expulsion.** The School Board may permit or require students expelled from school to attend an alternative education program provided by the School Board for the term of the expulsion. Within two (2) business days of the School Board hearing, the superintendent shall orally notify the student and student's parents of the School Board decision. Written notice of the School Board decision shall be provided within thirty (30) calendar days of the decision. The written notice shall contain the following information:

1. The School Board's determination on the recommended expulsion;
2. Information concerning the availability of community-based educational programs, training programs, and intervention programs;
3. Whether the student is eligible to attend an appropriate alternative education program approved by the School Board, or an adult education program offered by Fauquier County Public Schools, during the expulsion, and the terms or conditions of readmission;
4. The student's right to petition the School Board for readmission to be effective one (1) calendar year from the date of expulsion, and the conditions, if any, under which readmission may be granted, if the School Board determines that the student is ineligible to attend an alternative education program or adult education program during the expulsion; and,

The costs of any community-based educational, alternative education, or intervention program that is not a part of the educational program offered by the Fauquier County Public Schools that the student may attend during his expulsion shall be borne by the parent(s) or guardian of the student.

If the School Board expels a student, written notice shall advise the parent of such student that the student may petition the School Board for readmission to be effective one (1) calendar year from the date of his/her expulsion, and of the conditions, if any, under which readmission may be granted. The decision of the School Board may be appealed to the Fauquier County Circuit Court within thirty (30) calendar days of the date of the school board decision.

### *Readmission following Expulsion*

A student who has been expelled may make an application for readmission no later than 45 calendar days prior and no earlier than 60 calendar days prior to one calendar year from the date of his/her expulsion. Should the application not be granted, the School Board will indicate when the student may reapply for readmission.

Board policy allows the School Board to permit or require students returning from expulsion to transition through an alternative education program before attending regular classes. Before requiring a student to attend such a program, the superintendent will provide written notice to the student and parent(s) or guardian that includes the following information:
1. That the student will be required to attend an alternative education program; and
2. That the student or parent(s) or guardian may participate in a hearing to be conducted by the superintendent regarding such placement.

**The School Board shall confirm or disapprove every request or recommendation for readmission.**
FCPS Policy 7-3.2
### Exclusion and Alternative Placement

### *Exclusion*

In accordance with *Code of Virginia* §22.1-277.2, the School Board has the authority to deny school admission to a student who has been expelled or has been placed on a long-term suspension of more than

35

thirty (30) calendar days by another School Board or private school, either in Virginia or another state, or from whom admission has been withdrawn by a private school in Virginia or another state.  In excluding such a student from school attendance, the School Board may accept or waive any or all conditions for readmission imposed by the sending school board pursuant to *Code of Virginia* §22.1-277.06.  The School Board may not impose additional conditions for readmission to school.  The School Board may permit excluded students to attend an alternative education program for the term of such exclusion.

Before a student may be excluded from attending Fauquier County Public Schools, the superintendent shall conduct a hearing on the matter. School administrators, the student and the student's parent(s)/guardian will attend the hearing; however, if the student and parents fail to attend the hearing, it shall be conducted in their absence.  The superintendent shall issue written notice to the student and parent(s) or guardian that includes the following information:

1.      That the student may be subject to exclusion and the reasons therefore;
2.      That, in the event of such exclusion, the student and his or her parent(s) or guardian have the right to appeal the decision at a hearing before the School Board; and
3.      That the superintendent has conducted a review of the case and will make a recommendation to the School Board, including whether the student may attend alternative school, regarding the proposed exclusion.

If the student and parent(s) or guardian disagrees with the recommended exclusion, a written request for an appeal hearing before the School Board must be submitted to the superintendent within five (5) business days after receipt of written notice of the recommended exclusion.  The School Board shall conduct a hearing on the recommended exclusion within thirty (30) calendar days thereafter.

**Regardless of whether a student exercises his or her right to a hearing before the School Board, the School Board shall confirm or disapprove every recommended exclusion.**  As noted above, the School Board may permit or require students excluded from attendance at school to attend an alternative education program provided by the School Board for the term of the exclusion.

The School Board shall orally notify the student and his or her parent(s) or guardian of its decision within two (2) business days following the hearing. Written notice of the School Board decision shall be provided within thirty (30) calendar days of the decision.  The written notice shall contain the following information:

1.  The length of the exclusion;
2.  Whether or not the student is eligible to return to regular school attendance or to attend an appropriate alternative education program approved by the School Board, or an adult education program offered by Fauquier County Public Schools, during or upon the expiration of the exclusion, and the terms or conditions of such readmission;
3.  The student's right to petition the School Board for readmission; if admission is denied, within (1) calendar year from the date of exclusion, and the conditions, if any, under which readmission may be granted, if the School Board determines that the student is ineligible to return to regular school attendance or to attend an alternative education program or adult education program during the exclusion;
4.  Information concerning the availability of community-based educational programs, training programs, and intervention programs; and,
5.  The right to appeal the decision of the School Board to the Fauquier County Circuit Court.

The costs of any community-based educational, alternative education, or intervention program that is not a part of the educational program offered by the Fauquier County Public Schools that the student may attend during his exclusion shall be borne by the parent(s) or guardian of the student.

### *Alternative Placement - Criminal Matters*

The *Code of Virginia* §22.1-277.2:1 states that the School Board may require any student who has been charged with an offense relating to the Commonwealth's laws or with a violation of School Board policies, on weapons, alcohol or drugs, or intentional injury to another person, found guilty or not innocent of a crime that resulted in or could have resulted in injury to others, or of an offense that is required to be disclosed to the division superintendent pursuant to *Code of Virginia* §16.1-260(G), to attend an alternative education program. The School Board may require such student to attend such programs regardless of where a non-school related crime occurred. The School Board has delegated the authority to alternatively place students charged or found guilty or not innocent of a crime to the superintendent.

If the student and parent(s) or guardian disagrees with the recommended alternative placement, a written request for an appeal hearing before the School Board must be submitted to the superintendent within five (5) business days after receipt of written notice of the recommended alternative placement. The School Board shall conduct a hearing on the appeal within thirty (30) calendar days thereafter.

### *Alternative Placement – Discipline Matters*

School Board policy and state law allow the School Board and superintendent to require students suspended pursuant to *Code of Virginia* §22.1-277.05 (Long-term suspensions), expelled pursuant to *Code of Virginia* §§22.1-277.06 (Expulsions), 22.1-277.07 (Expulsions in compliance with Gun-Free Schools Act) or subsection B of 22.1-277, or found to have committed a serious offense or repeated offenses in violation of school board policies, to attend an alternative education program provided by the School Board.

If the student and parent(s) or guardian disagrees with the recommended alternative placement, a written request for an appeal hearing before the School Board must be submitted to the superintendent within five (5) business days after receipt of written notice of the recommended alternative placement. The School Board shall conduct a hearing on the appeal within thirty (30) calendar days thereafter.

Additionally, upon a finding that a student presents a danger to the school community of Fauquier County Public Schools, the student may be placed in an alternative academic setting. The superintendent considers such placements on a case-by-case basis.
(FCPS Policy 7-3.1)

### Reporting Procedures

Except as otherwise may be required by federal law, regulation, or jurisprudence, and as required by *Code of Virginia* §22.1-279.3:1, the principal of each school shall collect and maintain information on the events which occur on school property, on a school bus, or at a school sponsored activity, and shall report the information semiannually to the division superintendent on dates established by the division superintendent. The division superintendent shall submit annually to the Virginia Department of Education, on forms provided by the Department, an aggregate report of such incidences as prescribed by the Department. In submitting reports of such incidents, principals and the division superintendent will accurately indicate any offenses, arrests or charges as recorded by law-enforcement authorities and required to be reported by such authorities pursuant to applicable law. Fauquier County Public Schools principals shall report to local law enforcement officials such incidents as are prescribed by applicable law and policy.

### Conduct: Extracurricular/Co-curricular Activities

Extracurricular activities are those activities that supplement the regular school curriculum, do not carry credit towards graduation, and are joined voluntarily by students. Extracurricular activities are generally developed according to the needs and interests of students and may take the form of special interest groups, honor societies, publications, athletic teams, and other extensions of classroom work. All extracurricular activities are designed to promote character-building qualities of participation and leadership.

All school rules and regulations are in effect during extracurricular and co-curricular activities, whether held on campus or away from school. (Co-curricular activities are activities directly related to classroom instruction, such as choral or band concerts/presentations.) Students are not permitted to participate in organizations and engage in related activities to the detriment of their classroom work. All student organizations and extracurricular and co-curricular activities are under the supervision of the school principal and are officially recognized and sanctioned by the Fauquier County School Board.

The School Board anticipates that students who represent the school division as participants in extracurricular or co-curricular activities will conduct themselves in a responsible and respectful manner at all times generally, and specifically abstain from the use of alcohol, tobacco products (including nicotine vapor products), and illegal drugs. Further, the School Board expects coaches, activity sponsors, and administrators to work in unison to promote proper student behavior by clarifying the rules governing student participation in athletics and activities and uniformly enforcing consequences for students who fail to meet them.
(FCPS Policy 7-3.1)

### _Guidelines for Student Participation in Extracurricular and Co-curricular Activities_

1.  Students suspended from school are excluded from extracurricular or co-curricular activities as defined in the Conduct Violations and Accompanying Consequences section herein. Students may not participate in nor attend extracurricular or co-curricular activities if they are under suspension for violations of the _Code of Student Conduct_.

2.  Students suspended from school will be excluded from participation in extracurricular and co-curricular activities in accordance with the suspension consequences specified herein. Students on suspension for the use and/or possession of alcohol and/or illegal drugs are not allowed to participate nor attend extracurricular or co-curricular activities for the period of the suspension and for a period of up to 45 calendar days from the time of the infraction as determined by the principal.

3.  The principal and/or activities director will establish rules governing student participation in athletics and activities, which will be distributed and discussed with participants prior to the beginning of the activity. Students are expected to comply with these rules and may forfeit their eligibility through noncompliance.

4.  Students must attend all scheduled classes or an approved school activity on the day of competition/activity to be eligible to participate in extracurricular or co-curricular activities on that day. The principal may make exceptions to this standard for students with extenuating and/or unusual circumstances.

5.  For grades 9-12, students assigned to detention by teachers and/or administrators must report the detention to the coach or sponsor. The principal, the activities director, and the coach/sponsor will determine if any additional action is to be taken concerning the student's participation in the scheduled activity.

6.  For grades 9-12, students assigned to In-School Detention lose the right to participate in competitions or performances on the days that they serve; however, students may participate in practices/rehearsals on days they are assigned to ISD. The student must report the disciplinary action to the coach/sponsor.

7.  For grades K-8, students assigned to In-School Detention lose the right to participate in extracurricular activities on the days that they serve.

8.     Students in grades 9-12 participating in interscholastic competition in any and all activities governed by Virginia High School League (VHSL) rules shall meet the eligibility requirements of the VHSL.

9.     Students in grades 6-8 must attend four of the seven periods in the school day to participate with the athletic team that day. In extenuating circumstances, the principal may grant an exception. The principal's decision is final in the determination of a student being eligible for participation in extracurricular and co-curricular activities.
(FCPS Regulation 7-3.1B)

### *Eligibility Relative to Court Disciplinary Action(s)*

1.     School officials may suspend a student from participation in extracurricular and co-curricular activities who has been charged with a misdemeanor or felony involving violence, assaults on other individuals, use or possession of a weapon(s), possession/use and/or distribution of alcohol, and/or illegal drugs until disposition of the charges by the court.

2.     Within 48 hours of being charged with an offense described above, the student must report the incident to the coach/sponsor who will present the facts as known to the school administration to determine eligibility for participation.

3.     School officials may deny participation in all extracurricular or co-curricular activities to any student convicted or found "not innocent" of a misdemeanor involving violence, assault on other individuals, use or possession of weapons, use/possession and/or distribution of alcohol and/or illegal drugs. The student may appeal to the principal for reinstatement in other activities for the following season.

4.     Students found guilty or "not innocent of" any felony charges may be denied participation in extracurricular or co-curricular activities.

5.     The principal's decision is final in the determination of a student being eligible for participation in extracurricular or co-curricular activities.
(FCPS Regulation 7-3.1B)

## Compulsory Attendance

### *General Requirements*

It is the duty of every parent, guardian, or other person in Fauquier County having control or charge of any child who has reached his/her fifth birthday on or before September 30 of any school year and who has not passed his/her eighteenth birthday to ensure that child shall attend a public, private, denominational, or parochial school, be taught by tutor or teacher meeting the qualifications prescribed by the Board of Education and approved by the superintendent, or be provided home instruction as described in *Code of Virginia* §22.1-254. Principals and the superintendent shall follow all legal requirements with regard to the compulsory school attendance reporting requirements of state law. Non-compliance with the state regulations will lead to disciplinary action, where appropriate, by the principal and the superintendent. Note: In accordance with §22.1-277(a) of the *Code of Virginia*, no student may be suspended from school only for instances of truancy.

### *Exemptions*

All students age 5 to 18 shall attend school regularly as set forth in §22.1-254 of the *Code of Virginia*, except those granted an exemption from school attendance under the provisions of state law.

1.   The School Board may release students from school in compliance with state law and Virginia Board of Education regulations, including but not limited to those students who:

   a.   satisfy all legal requirements for home schooling;
   b.   are enrolled in qualified alternative programs;
   c.   have received a high school diploma or its equivalent;
   d.   the School Board determines, in accordance with regulations of the State Board of Education, cannot benefit from education at school;
   e.   together with their parents and by reason of bona fide religious training or belief, are conscientiously opposed to attendance at school;
   f.   based on a recommendation from the Fauquier County Juvenile and Domestic Relations District Court, should be excused by reason of concern for the students' health, as verified by competent medical evidence, or by reason of the students' reasonable apprehension for personal safety when such concern or apprehension in those students' specific cases is determined by the Court, upon consideration of the recommendation of the principal and superintendent, to be justified; or
   g.   are excused by the Fauquier County Juvenile and Domestic Relations District Court following the Court's determination that they cannot benefit from education.

2.   Compulsory attendance regulations shall not apply to children under 10 years of age who live more than two miles from a Fauquier County Public School, unless public transportation is provided within one mile of the place where they live; nor to children between 10 and 17 years of age who live more than two and one-half miles from a public school, unless public transportation is provided within one and one-half miles of the place where the children live.  Compulsory education distances shall be measured or determined by the nearest practical routes usable for either walking or riding from the entrance to the school grounds, or from the nearest school bus stop to the residence of the children.

3.   The School Board may allow the compulsory attendance requirements to be met pursuant to an individual student alternative education plan developed in conformity with guidelines prescribed by the Board of Education under the following conditions:

   a.   The student must be at least sixteen years of age.
   b.   There shall be a meeting of the student, the student's parents, and the principal to develop the plan, which must include career guidance counseling, mandatory enrollment and attendance in a general educational development preparatory program or other alternative education program approved by the School Board with attendance reported to the principal, counseling on the economic impact of failing to complete high school, and procedures for re-enrollment.
   c.   A student for whom such an individual student alternative education plan has been granted but who fails to comply with the conditions of the plan shall be deemed in violation of the compulsory attendance laws, and the superintendent or attendance officer shall seek immediate compliance with the compulsory attendance laws.
   d.   Any child who will not have reached his sixth birthday on or before September 30 may be exempted from school attendance until the following year if the parent notifies the School Board, or its designee, because the child, in the opinion of the parent or guardian, is not mentally, physically or emotionally prepared to attend school.

4.   Children suffering from contagious or infectious diseases shall be exempt from compulsory attendance when the physical incapacity is established by a written statement from a physician or nurse practitioner treating the child, giving the reason(s) for the student's inability to attend school.

5.   Children whose immunizations against communicable diseases have not been completed may be excluded from school attendance unless such children have been exempted from immunization requirements.  Any parent, guardian or other person having control or charge of a child being

exempted or excused from school attendance shall comply with the immunization requirement provided in §32.1-46 of the *Code of Virginia* in the same manner and to the same extent as if the child has been enrolled in and is attending school.

6.   The School Board may, in accordance with the procedures set forth in *Code of Virginia*, §22.1-276.01 et seq. and School Board policy and upon a finding that a school-age child has been (i) charged with an offense relating to the Commonwealth's laws, or with a violation of School Board policies, on weapons, alcohol or drugs, or intentional injury to another person; (ii) found guilty or not innocent of a crime that resulted in or could have resulted in injury to others, or of an offense that is required to be disclosed to the Superintendent of the School Division pursuant to *Code of Virginia*, §16.1-260(G); (iii) suspended pursuant to *Code of Virginia*, §22.1-277.05; or (iv) expelled from school attendance pursuant to *Code of Virginia* §§22.1-277.06, 22.1-277.07, or subsection B of §22.1-277, require a student to attend an alternative education program as provided by *Code of Virginia*, §22.1-209.1:2 or §22.1-277.2:1.

All other exemptions from compulsory attendance granted by the School Board shall be in accordance with state law.

### *Requesting Exemptions*

Any request for exemption from attendance shall be presented annually in writing to the superintendent.

### *Attendance Philosophy*

Attendance is one of the most significant factors affecting student achievement and on-time graduation. It is the responsibility of every parent, educator and stakeholder to address attendance concerns as they arise. Communication between school and families is essential for student success and problem-solving. **It is important that parents/guardians contact the school any time their student will be absent. Absences are considered to be unknown/unverified until the parent/guardian contacts the school with an explanation for the absence.** School personnel and division level Graduation Case Managers assist students and families struggling with attendance issues.

### *Other Attendance Requirements*

For absences of any description, schools will implement the following actions:

1.   For middle and high schools, when students accumulate six (6) absences, the school shall:
     a.   If the parent has not made contact, call the parent/guardian, documenting such contact in the attendance file
     b.   (Optional) Schedule a conference with parent/guardian to resolve any potential chronic absenteeism issues
     c.   Provide the parent/guardian the student's attendance history and Fauquier County Public Schools attendance policy information

2.   For all schools, when students accumulate ten (10) absences, the school shall:

     a.   Send a letter to the parent/guardian and attempt personal contact.
     b.   (Optional) Schedule a conference to develop a plan for attendance improvement. At a minimum, a phone conference should be held and documented.
     c.   Inform the parent/guardian of the attendance policy to attend school all day, every day

3.   For all schools, when a student accumulates fifteen (15) absences, the school shall:

     a.   Send a letter to parent/guardian stating:

     (1) Absences have been determined chronic due to:
        (a) failure of parent to cooperate with the attendance improvement plan, and/or
        (b) parent has been unable to control/supervise the child with regard to school attendance; or
     (2) Absences have been determined <u>not</u> to be a chronic issue because of
        (a) cooperation of the parent/guardian, and/or
        (b) extenuating circumstances show absences to be reasonable and not contrary to compulsory attendance law. Parents may be asked to provide medical documentation for ongoing absences.

    b.  If absences are considered a failure to comply with compulsory attendance law, a referral will be sent to Student Services, and one or more of the following actions will occur:
     (1) referral to a Student Support Team (SST) or other appropriate intervention;
     (2) initiation of court proceedings against the child (Child in Need of Supervision); and/or
     (3) initiation of court proceedings against the parent/guardian (*Code of Virginia*, Sections 18.2-371, 22.1-279.3)

### *Truancy*

4.    When attendance issues are considered to be truancy, in that parents are unaware or not supporting the student's absences, a plan will be developed on the fifth (5th) absence. If the student is absent for more than one additional day, a conference will be held no more than ten (10) days after the 10th absence. Additional absences will result in continued monitoring and interventions which may result in a referral to the Graduation Case Manager and the initiation of court proceedings.

6.    Building administrators shall make a referral to Student Services as specified in §§ 22.1-258 and 22.1-262 of the *Code of Virginia* (see chart on next page.)

| Less Than 5 Days Unexcused/Unknown | 5 Days Unexcused/Unknown | 7 to 10 Days Unexcused/Unknown | Monitoring | 10 or More Days Unexcused/Unknown |
|---|---|---|---|---|
| School attempts to contact parent to obtain explanation for absences<br><br>Focus on prevention | School shall make effort to obtain explanation for pupil's absence.<br><br>Joint development of an intervention plan at 5 unexcused absences | School-based attendance conference<br><br>Conference must be completed within 10 days of the 10th absence and may include community service providers. | School-based monitoring and possible additional intervention. | If parent is <u>intentionally noncompliant</u> with compulsory requirements attendance **or** the pupil is resisting parental efforts to comply with attendance requirements, the school shall make a referral to the attendance officer.<br><br>The attendance officer shall schedule a conference with the pupil and his parent within 10 school days<br><br>Attendance Officer may file a complaint with the courts. |

## _Additional Attendance Requirements_

1. Fauquier County Public Schools will treat tardiness, early dismissals, late arrivals to class, and failure to attend all assigned classes (class cuts) with the same seriousness as the school division addresses truancy.
2. Course credit in high school must be based on a minimum of 140 clock hours of instruction, pursuant to 8 VAC 20, 131-110, Standards for Accrediting Public Schools in Virginia. Therefore, any student who misses more than 10 days in a class may fail due to absences.
3. Once a student arrives on school property, he/she may not leave without administrative permission prior to the end of the regularly scheduled day.

Any parent aggrieved by a decision of the superintendent may appeal his or her decision to an independent hearing officer in accordance with §22.1-254.1(E) of the _Code of Virginia_.
(FCPS Policy 7-2.1)

43

## NON-DISCRIMINATION CLAUSE/EQUAL EDUCATIONAL OPPORTUNITIES

The Fauquier County Public Schools' educational programs and services shall be designed to meet the varying needs of all students and shall not discriminate against any individual for reasons of race, religion, color, gender, national origin, disability, or on any other basis prohibited by law. Further, no student shall, on the basis of gender, be excluded from participating in, be denied the benefits of, be limited in the exercise of any right, privilege or advantage, or be subjected to discrimination under any educational program or activity conducted by the school division. The School Board encourages school division employees, patrons and students to report promptly all incidents of alleged discriminatory conduct.  Inquiries regarding compliance may be directed to the Executive Director of Student Services, (540) 422-7141; Title IX Coordinator, (540) 422-7141; or Section 504 Coordinator, (540) 422-7143.  These inquiries may also be addressed by sending a written request to the appropriate contact at 430 E. Shirley Avenue, Warrenton, VA 20186.



# Fauquier County Public Schools

**Nicholas Napolitano Executive Director of Student Services and Special Education**
430 East Shirley Avenue, Bldg. B
Warrenton, VA 20186
(540) 422-7141

*Excellence by Design*                                                      www.fcps1.org

Friday, May 19, 2023

Mr. Steven Cosby
Ms. Amy Lifson

███████████████

RE:   Suspension of ██ N.C. ██
      Suspension Appeal Determination

Dear Mr. Cosby, Ms. Lifson and N.C.

On May 10th, 2023 N.C. was suspended from Kettle Run High School for 3 days for using slurs, vandalism, and being in an unauthorized area. On May 16th you submitted a timely appeal to my office and stated you wished to appeal the suspension.

When considering appeals, the Superintendent or his designee determines if there is agreement regarding the material facts as reported by school administration, whether process was followed, and whether the discipline consequences assigned by school administration aligns with the Code of Student Conduct.

As the Superintendent's designee, I have reviewed the record of the incident and your appeal documents and I have determined the following:

1. The three-day suspension was an appropriate consequence for N.C.'s actions. The suspension is upheld.

2. In regards to the activity suspension there is no appeal process beyond that of the building principal. The decision of the building principal is final.

In accordance with School Board policy, the decision of the Superintendent or his designee regarding suspensions of ten day or less is final.

If you have concerns regarding this issue or any other matter, please feel free to call me at (540) 422-7141 or send me an e-mail at nnapolitano@fcps1.org



**EXHIBIT**

3

Respectfully,

Nicholas Napolitano, M.Ed
Executive Director for Student Services and Special Education

NN/mw

Cc:    Dr. David Jeck, Division Superintendent
        Ms. Meaghan Brill, Principal, Kettle Run High School

Timothy M. Purnell, Esq.
David G. McKennett, Esq.
Phillip J. Menke, Esq.

Donald E. Coulter, Esq.
Mark D. Bailey, Esq.
Geoffrey J. O'Brien, Esq
Cameron W. Calder, Esq.



**PURNELL, MCKENNETT & MENKE**
——————— PC ———————
www.manassaslawyers.com

E. Ralph Coon, Jr., Esq.
(1925-2012)

William H. McCarty, Jr., Esq.
Of Counsel
Admitted in VA, PA, FL, NJ

September 7, 2023

Deputy Superintendent/
Principal Meaghan Brill and              And
Assistant Principal Jesse Rivera
Kettle Run High School
7403 Academic Avenue
Nokesville, Virginia 20181

And

Dr. Major R. Warner Jr./                  And
Dr. David Jeck (former)
Division Superintendent
Director of Dept of Ed.
Fauquier County Public Schools
320 Hospital Drive
Warrenton, VA 20186

And                                       and

Fauquier County School Board
320 Hospital Drive, Suite 40
Warrenton, VA 20186

Sharon H. Lawrence
Acting State Comptroller, Dep. of Accounting
James Monroe Building
101 North 14th Street, 2nd Floor
Richmond VA 23219-3638

Mr. Nicholas Napolitano
Ex. Dir. For Student Services
Fauquier County Public Schools
320 Hospital Drive
Warrenton, VA 20186

Dr. Lisa Coons,
Va. Superintendent of Public Instruction
Attn: Rebecca Askew
James Monroe Building
25th Floor, 101 N. 14th Street,
Richmond, VA 23219

Athletic Director Paul Frye
Kettle Run High School
7403 Academic Avenue
Nokesville, Virginia 20181

## Notice of Claim and of Anticipated Legal Action
## Under Virginia Code Section 2.2-814 and under all other Virginia and Federal Tort
## Claims Notice Acts Which May Apply.

Dear Ms. Brill, Mr. Napolitano, Mr. Warner/Jeck and The Va. Superintendent of Public
Instruction and To Whom it May Concern:

EXHIBIT
tabbies
4

Please be advised that this firm, and the undersigned, represent Mr. Steven Cosby, Ms. Amy Lifson, and their son ███ N.C. ███ with regard to the inappropriate 3 day suspension, a full year activity suspension (though unofficially reduced to six months by email) and the wholly capricious nature of the disciplinary procedures (which were in fact capricious because the school boards policies were not followed), the lack of due process and equal protection under the school's own policies, and the unconstitutionality of the original allegations that were levied against him.

As some of you know, the following allegations were the only allegations that were used to support the suspension and activity suspension of ███ N.C. ███ (They are quoted directly from Principal Brill's justification to Mr. Napolitano dated May 15, 2023.)

- Kettle Run High School (KRHS) participated in a boy's lacrosse game at Meridian High School (MHS) on Monday, May 8, 2023.
- JV Players were instructed, by their coach, to stay on the field unless a parent/guardian was picking them up and to use the outdoor restroom, if necessary.
- After the JV Lacrosse game concluded and during the varsity game, N.C. was provided building access by the security guard for the purpose of using the restroom.
- When he did not return, MHS staff attempted to locate him.
- Upon entry into a staff lounge the following morning (Tuesday, May 9th), the word "nigger" was found written on the whiteboard twice.
- In reviewing surveillance footage, three JV KRHS lacrosse players were seen throughout the upper level of MHS at approximately 8:30 pm on May 8th, 2023; N.C. was one of the student athletes visible via camera.
- There were no other occupants of the building during the time this incident occurred.

While the above acts are fully contested, the school, the individuals in question and the school district cannot rise above their own alleged facts.

Additionally, the school has noted in the FCPS – Office Discipline Referral that "the racial epithets were found by staff members, who first entered the space at 7:50 am on Tuesday May 9th." Additionally, the Discipline Referral notes that "when questioned about the racial slurs, N.C. stated that he is not allowed to use that word and that he and another student were not responsible for what was written on the board." The school then opines that "Although he was present when the words were written, he could not indicate which student was responsible." Finally, the school admits that "In speaking with the administration at MHS, the night security guard did grant N.C. access to the building for the purpose of using the restroom."

It is important to note at this point that my client did not write the racial slurs on the board. This of course was already known to all involved as no one has ever alleged that N.C. actually wrote the slurs in question, just that he was in the room. It is also very important to understand that N.C. is disabled, suffers from and has been diagnosed with a 504 federally recognized disability. Hence, the entire discipline scheme changes and N.C. is to be subject to the "least restrictive environment" at the school as one of his accommodations is to have "teacher check-ins to initiate work and check for understanding." In this case, my client's

2

disability was summarily dismissed, and no accommodation was given. Instead, he was denied his right to education for three days and his right to participate in after school activities for six months (originally a year), without a single mention attempt to determine if he actually participated in the alleged action or to accommodate his disabilities.

Regardless of his disability, the recitation of facts brings us to the charges that were brought against ███ N.C. ███ by the school. Initially the school, through Vice Principal Danielle Tapscott, informed ███ N.C. ███'s parents, in a telephone call, that he was being suspended for three days from school for going into Meridian High School without authorization but could not provide exact charges that ██ N.C. ██ was accused of. Mr. Cosby and Mrs. Lifson immediately objected, noting that they had never received a single written document about this situation from the school; noted their appeal; and requested a hearing with school officials and a review by the Principal.

In an email dated May 12, 2023, Principal Meaghan Brill changed the charges against ███ N.C. ███ despite his parent's objection stating that he was being suspended for three days and suspended from school activities for nearly a full year for "unauthorized entry into Meridian High School and hate speech written on the white board while he was inside the building" (again no attempt was made to accommodate my clients disability or even to explain proper behavior before punishment was levied). One should note that this is just the second of three such charge revisions (which were necessary as each preceding charge was simply invalid and factually inaccurate.) It is important to note that no notice of suspension had been provided to Mr. Cosby or Ms. Lifson at this time.

Mr. Cosby and Ms. Lifson objected by email noting that there was no unauthorized entry; that their son had not written anything on the board; and that even if he had, it was not hate speech, and that even if he had written the offensive language, it would have been protected by the First Amendment.

On May 15, 2023, a written notice of the suspension was provided to Mr. Cosby and Ms. Lifson. Interestingly, the allegations were once again changed from the unsupportable hate speech and unauthorized entry to the following alleged violations of the student Code of Conduct: "level 3, letter h: Harassment (engaging in verbal, written or electronic abuse such as name calling, ethnic or racial slurs, or derogatory statements), level 1, letter e: Failure to follow school rules, and level 2 letter f: Vandalism." These allegations were also the allegations that were officially entered into the Schools Report of Facts Dated May 15, 2023 (despite the fact that the school had decided to suspend ██ N.C. ██ on May 10, 2023, before the determination of facts was made.)

These continuous changes to support the already determined penalty clearly demonstrate that the school officials in question had absolutely no interest in following the school code of conduct as did their ignoring my client's disability in the entire situation. Nor did the school officials in question have any interest in the truth, Principal Brill and Athletic Director Paul Frye had clearly determined that they would punish ███ N.C. ███ and were determined to turn the facts and allegations to accomplishing that goal. In fact, Mr. Cosby and Ms. Lifson's FOIA request to the state Department of Education has made it clear that Principal Brill and Director Fry had

3

determined N.C.'s punishment before any investigation was done and before knowing any of the facts and that they have reported him to state databases (despite promising that this had not and would not cause N.C. to be reported in any state database).

Upon receiving the school's letter by email, Mr. Cosby or Ms. Lifson immediately appealed, in writing, noting that the facts did not support a single one of these allegations. They specifically noted that there was no damage to property even assuming that all charges were true so vandalism was simply untrue; that no one even saw the alleged slurs, other than a teacher, so no one could have been harassed (not to mention First Amendment freedom of speech protections which are absolute unless the offensive words are used in a situation or manner that causes a clear and present danger, which this most assuredly did not); and that he broke no rule as he was admittedly allowed into the building by the security guard.

N.C.'s parents attended a meeting with Principal Brill, but she had no interest in listening to the facts. Instead, she simply read her prewritten statement which was the same wording as what was transmitted to Mr. Nick Napolitano, (Executive Director of Student Services and Special Education) as her justification for N.C.'s suspension. Her statement of facts in that letter is generally quoted above as the alleged facts.

Ms. Brill's allegations and justifications at the appeal hearing and in her justification letter to Mr. Napolitano were simply a restating of the charges, and slightly expanding to include a bit more of the language of the code of conduct, claiming that there had been:
- Level 1, Offense E – Failure to follow school rules.
- Level 2, Offense F – Vandalism (Purposefully cutting, defacing, tampering with or otherwise damaging in any way property belonging to the school division or to other persons. Includes confirmed intent to vandalize or tamper with property).
- Level 3, Offense H – Harassment (Annoying or attacking a student or group of students or personnel that creates an intimidating or hostile educational or work environment. This includes engaging in verbal, written or electronic abuse such as name-calling, ethnic or racial slurs, or derogatory statements addressed publicly to others that may precipitated disruption of the school program or incite violence. Harassment may also be non-verbal and may include, but is not limited to, embarrassing others; photographs that are offensive to others, etc.)

It is one of our founding principles that a person is innocent until proven guilty. Incredibly, however, Assistant Principal Jesse Rivera attended this meeting and demonstrated that the legal situation was turned completely backwards by the school. No better example could be given to demonstrate the lack of due process being given to N.C. than when Mr. Rivera stated that my clients "could not prove N.C.'s innocence". This is of course backwards as the state (in this case the school) must always prove guilt, not the other way around. Nearly as bad, he continued to completely misstate the law and the standard of free speech when he stated there is no free speech if persons are offended.

Nevertheless, on May 19, 2023, Mr. Napolitano, Executive Director for Student Services and Special Education, sent Mr. Cosby and Ms. Lifson a letter stating that he determined that he deemed the three-day suspension appropriate and stating that the activity suspension has no

appeal process beyond the building principal. Once again, no consideration was given to ██N.C.██'s disability.

As the so called "harassment" charge (which is the only charge that could support either suspension) is based entirely on written speech, any action by the school necessarily requires that the school comply with my clients' rights to free speech under the First Amendment of the Constitution.

Additionally, the actions of the school and particularly Ms. Brill are, and were, in violation of the Fauquier County Public Schools Code of Conduct. As the school did not follow its own policies, which are generally well written, did not actually provide the adjudication process required, did not take proper steps based on my client's disability, and set forth charges clearly contradicted by their own evidence, the school also violated the due process and equal protection clauses of the Constitution, which will be addressed further shortly.

Finally, the actions of Ms. Brill, Mr. Rivera, and Mr. Frye are so negligent or intentionally improper that they rise to the level proscribed by U.S. Code 42 USC §1983 and Ms. Brill, Mr. Fry, and the Fauquier County Public School District, the superintendent, Mr. Napolitano and the School Board should be held liable to my clients for their damages, both monetary and reputational, as well as ordered and enjoined to repudiate both the inappropriate school and activity suspensions.

First, as the school's counsel certainly knows, the First Amendment of the United States Constitution protects the free speech and expression of all citizens of this country. That freedom of expression may not be impinged upon by any governmental entity, including a school system, outside of very defined circumstances.

The United States Supreme Court has repeatedly held that artistic and written expression, even those expressions that are repugnant to most individuals, falls under the protection of the First Amendment and that unless the expression incites others to violence to such a degree as to create a clear and present and imminent danger or to substantially disrupt school activities, such expression is absolutely protected and any law, regulation, or interpretation violating those First Amendment Rights is void as unconstitutional.

This situation leaves Kettle Run High School and the Fauquier County School Board with a serious problem that has only three potential factual outcomes.

First, and in my legal opinion, the proper course of action for the School to take is to simply admit that Ms. Brill is wrong and that there is no prohibition against the simple drawing of an erasable word, especially when ██N.C.██ did not write the alleged words on the board, and was never accused or charged with writing the words, and to remove any notation on ██N.C.██'s permanent record that addresses such a charge; revoke both suspensions; and to provide the school administrators with a memorandum from school counsel that simply clarifies that the Harassment policy does not and cannot be read to impinge on First Amendment protected actions such as writing of words not directed as a threat to any individual.

In support of this outcome, the Supreme Court has expressly noted that School Boards and teachers are not above the Constitution and in fact it has opined it is more important to hold them accountable. In *West Virginia v. Barnette*, the Supreme Court noted that the amendments of the constitution (in that case the 14th amendment) "protects the citizen against the State itself and all of its creatures -- Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." 319 U. S. 624, 637 (1943).

Having carefully read the policy, I can confidently state that there is absolutely no prohibition in the School Code of Conduct that lists use of any particular word as harassment. In fact, because the Code of Conduct is written intentionally to avoid, or at least skirt, constitutional issues, it takes great care not to state in the harassment section that any particular language is prohibited. Instead, the School Code of Conduct prohibits verbal, written, or physical actions and words that create an intimidating, hostile or offensive environment, though even that language skirts constitutionality as the actual test set out in *Tinker v. Des Moines Independent Community School District* by the US Supreme Court is that "for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint". 393 U.S. at 509. It is important to note that the Supreme Court has made it very, very clear that a fear that some expression might be deemed offensive or might cause a hostile, or an intimidating environment is absolutely not a sufficient reason to punish a student's expression. It must actually create such an environment.

In fact, ever since *Tinker* and as recently as 2021 the Supreme Court has been very clear that a school may only regulate speech if there is a substantial disruption or an actual threatened harm to the rights of others (not a potential one). In 2021 the Supreme Court struck down a suspension of a student for using profanity about a school cheerleading team/coach to others in Mahanoy Area Sch. Dist. v. B.L., 141 S. Ct. 2038, stating, "But we can find no evidence in the record of the sort of "substantial disruption" of a school activity or a threatened harm to the rights of others that might justify the school's action." The Court even noted that, it might be tempting to dismiss B. L.'s words as unworthy of the robust <u>First Amendment</u> protections discussed herein. But sometimes it is necessary to protect the superfluous in order to preserve the necessary. See Tyson & Brother<u> v. Banton, 273 U. S. 418, 447, 47 S. Ct. 426, 71 L. Ed. 718 (1927)</u> (Holmes, J., dissenting). "We cannot lose sight of the fact that, in what otherwise might seem <u>[***21]</u> a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated." Cohen<u>, 403 U. S., at 25, 91 S. Ct. 1780, 29 L. Ed. 2d 284</u>. *Id at 2048.*

Specifically, the Court has stated that, "In our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our

Constitution says we must take this risk, *Terminiello v. Chicago*, 337 U. S. 1 (1949); and our history says that it is this sort of hazardous freedom -- this kind of openness -- that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969)

In this case, the very clear reason the Code of Conduct is drafted with the wording used is because the Supreme Court has found that the First Amendment protects free speech unless it actually creates a threat or disturbance to a particular person and not a theoretical or possible threat. Hence, the test even in the School Code of Conduct is not the use of any particular word, but to question whether an offensive or vulgar word or action was <u>actually</u> directed at a person in a way that was <u>actually</u> threatening to them or whether it <u>actually</u> created a disruptive and dangerous atmosphere - not if such language could have done so.

In this case, even assuming that the allegations of the school are absolutely accurate (though that is denied) N.C.'s alleged actions were not threatening and did not give rise to fear of any imminent danger as no one, other than a teacher at another school, ever even saw the alleged words. This fact is easily seen in the email to the school in which the Meridian staff merely let Kettle Run staff know what had happened. They had no fear or concern and in fact did not even ask for punishment. In sum, this is simply a matter of the Kettle Run High School principal searching frantically for some charge that she could shoehorn into her preconceived punishment, due perhaps to some misplaced personal embarrassment or agenda. The school's actions are clearly and unambiguously unconstitutional. Therefore, the first option, as I have set out above, is unquestionably the proper course of action for the school to take.

However, the other potential legal outcomes with regard to the harassment charge are: Second, the Schools harassment policy does include something, which I cannot find, that bars the use of writing the word "nigger" as automatically being harassment. This would be a clear bright-line textbook violation of a policy that violates the First Amendment on its face and the portion of the policy that states such a bar would, therefore, be absolutely and uncontrovertibly unconstitutional. In conjunction with this, if such a prohibition against such writing is what the policy means, or was intended to mean, it would almost certainly also be unconstitutional as a vague and unenforceable regulation. I will not go into the constitutional history of the vagueness and unenforceability decisions of the Court but will note that it is a zero-sum-game. If the policy is as claimed by Ms. Brill, it is either unconstitutional under the First Amendment, or if there is some clear and present danger savings argument, the regulation would be unconstitutionally vague for not setting out those issues in the body thereof.

Third, the final potential legal situation is that the harassment policy is constitutional as written, as it does not on its face bar the use of any particular word, but the application made by Ms. Brill if it is consistent with the interpretation of the school and the school board, is unconstitutional under the First Amendment and the vagueness decisions of the Court. The analysis of this situation would be the same as that for the previous situations and would require either a reversal of the interpretation or a striking down of the interpretation of the harassment policy by a court of competent jurisdiction.

Though harassment (though originally labeled amorphously as hate speech) was the main allegation made by the school, I must also address the alleged Vandalism and failure to follow the school's rules.

First, Vandalism is defined, even by the School District's own Code of Conduct, as "purposefully cutting, defacing, tampering with or likewise damaging in any way property belonging to the school division or to other persons." The plain language of the definition requires that there be actual damage to property. The school's own internal writing notes that there was no damage to any property. The alleged "vandalism" was simply the writing of the racial slur on an erasable white bord with an erasable pen (which once again was without question not written by N.C. ). There was no damage to any property. The word was easily erased the next morning before any student even saw the alleged slur. In fact, there has been no allegation that anyone even intended to cause any damage. As a matter of simple jurisprudence, the record does not support the charge and any court will immediately and without question find that forcing such a clearly inapplicable charge on a student violates his due process rights and his rights to equal protection of the laws.

These rights are not as commonly discussed as the right to free speech may be, but they are absolutely and without question just as important, and any time any governmental body seeks to deprive an individual of their rights, due to some alleged action by the accused, the government entity must not deprive the individual of their right to due process of the law or the equal protection of the law. The Fifth Amendment requires that the Government provide due process before punishing or denying someone their rights. The Fourteenth Amendment has extended that protection to all government actors (including schools, teachers, and school boards/districts). See *Gross v. Lopez* 419 U.S. 565. Similarly *Brown v. Board of Ed.* and its progeny have required schools to apply the law equally to all students (Equal Protection).

As yet another example of the lack of proper due process, my clients' appeal was sent to Mr. Napolitano, who is not the proper recipient of an appeal under the Fauquier Code of Student Conduct. The code of conduct specifically requires that appeals be decided by the Superintendent. In this case it appears that the proper person to determine the appeal would at that time have been Dr. David Jeck. Thus, my clients were once again denied their rights of due process and the simple rubber stamp sent by Mr. Napolitano demonstrates again the sham nature of the so-called appeals process set forth by the school.

Similarly, Page 32 of the Code of Conduct state under short term suspensions that "the principal or assistant principal may suspend the student after giving the student oral or written notice of the charges against him and, if the student denies the grounds for the charges, an explanation of the facts are known to school personnel, and an opportunity to present the student's version of what occurred." In N.C. 's case, the suspension and activity suspension were levied before the charges were determined as he and his parents were informed of the suspension via phone and email on May 12, while the charges were not determined until May 15, 2023. It is impossible to properly follow the school's Code of Conduct if the penalty is decided before the charge.

In the end, the school representatives simply ignored their own rules and made up charges to fit the predetermined punishments. However, the made-up charges are not even slightly supported by the evidence. Thus, despite having a sham hearing, and an alleged appeal before the wrong official, the student has been deprived of his rights under both parts of the Fourteenth Amendment's protections, and the School ignoring its own rules and procedures is per-se in violation of its Constitutional obligations. Worse, it, and its representatives, are acting either so negligently or intentionally, in a manner that hurts and deprives a child of his rights that their personal liability is now in question. In this case, there is no question that no vandalism took place. This allegation is false, even under the facts as set out by the school, and the charge and the improper punishments must be removed.

Finally, the school has alleged that ███ violated a school rule. This is noted as a level one offense which only supports a minor repercussion (not suspension or removal from after school activities). However, even this charge is not enforceable.

Interestingly, the school has not identified the rule, nor any single rule, that ███ allegedly broke. There can be no due process, or equal protection under the law, as noted above without identifying the violation alleged. Here no such rule is identified by the school. The only potential statement to support the charge, is that Ms. Brill alleges that the JV coach instructed his team to "stay on the field unless a parent/guardian was picking them up and to use the outdoor restroom, if necessary." While my clients strenuously argue that the word "outdoor" was never used by the coach, even if it was, this is not the violation of a rule. Instead, the question is one of whether a simple verbal instruction of a school authority figure was followed. However, any verbal instruction by one school official can be countermanded, or amended, by another school official, and in this case, a uniformed and armed school official (of the school where the game was taking place) told ███, even under Kettle Run's own evidence, that he could use the indoor bathroom when the outdoor bathroom was unsanitary.

As he was given express permission by a uniformed school official, ███'s actions were not a violation of his instructions, and he should not be punished for listening to one school official over another. Admittedly, this issue is more of a judgment call and not a situation of clear constitutional inapplicability such as the two larger allegations. Regardless the severity of this charge can support only a level one response which includes only punishments of:

- Opportunities to reflect on constructive next steps,
- Restorative Practices and Problem Solving
- Coaching options,
- Skill instruction for self-management, study skills, interpersonal skills, problem-solving
- Structured support plans

Thus, even if the School insists on finding that ███ violated a (still undisclosed) rule, the punishment levied is a violation of the equal protection of the laws as it is not allowed for under the School's own policies.

In the end, my impression of this situation is that it has been perpetuated by a simple misunderstanding by the administrators in question as to the actual legal rights of the school in

this situation. Also, it unfortunately appears that there is some kind of personal and knowing animus toward my clients. On the other hand, I would expect that the school's counsel, the superintendent, and the majority of the school board understands their constitutional limitations and that, after a review of the facts, this matter will be disposed of as I suggested above.

However, if for some reason Kettle Run High School does not take the constitutionally approved road in this situation, please be aware that my clients will file suit on behalf of their son against the School, the Virginia Department of Education (through the Superintendent of Schools if necessary), the Fauquier County School Board, Mr. Warner as Superintendent, Ms. Brill personally and as principal, and Mr. Frye personally for an injunction, declaratory judgment as to the constitutionality of the regulation (interpretation), and for the monetary damage to N.C.'s reputation, record, prospects, and mental state. This will require many of the individuals involved to expend significant time on pleadings, depositions, and trials; to expend funds for their own counsel, for those potentially personally liable; as well as being subjected to stress and disruption for a matter that has clearly been handled inappropriately and for which a simple solution exists.

As the law is so well established in this area, and as the suspension worthy claims are without question unfounded and constitutionally unsupportable, especially considering my clients disabilities, the only way that Ms. Brill's interpretation could be allowed to stand would be a grossly negligent, or an intentional decision by Ms. Brill, the School Board, the Superintendent and the School District to violate my client's constitutional rights and deny him his rights to education, to the agreed accommodations, and afterschool activities and to cause damage to his reputation. Also, as it appears that Ms. Brill and Mr. Frye have systematically attempted to force their punishment of N.C., despite having to continually invent new charges, suits will be brought against all of the above entities and individuals under Virginia Law and United States Code 42 USC §1983 for my clients' damages, punitive damages, and under the Civil Rights Attorney's Fees Awards Act of 1976 my clients' attorney's fees, necessitated by the proposed actions. Those fees alone, if this matter must be tried and appealed, could easily exceed hundreds of thousands of dollars.

**Please take notice that this letter shall constitute Notice of a Claim under Virginia Code Section 2.2-814 of a claim under all other Virginia and Federal Tort Claims notice acts which may apply.**

Of course, if suit must be filed, I would likely need to associate with some of the larger entities that handle these actions, such as the Alliance Defense Fund of which I am a Blackstone member, the Rutherford Institute or the Thomas Moore society, any of which I am sure would be quite interested in handling this matter.

Before taking such steps, however, I think it would be wise for us to sit down on a conference call and work this matter out. The law is clear, as is the policy. I see no need to embroil the County in a large-scale litigation over something we can fix in thirty minutes.

Nevertheless, this letter is a notice of a potential claim and if the School Board, and Kettle Run High School personnel have no interest in discussion, my clients intend to proceed

with legal action. Please give me a call as soon as possible as I am certain that resolving this matter without legal action is in the best interest of all parties. I am,

Sincerely Yours,
Purnell, McKennett & Menke, PC

David G. McKennett, Esq.